PAID

ORIGINAL

FILED

2022 AUG -2 PM 2:43

1   MICHAEL (MOSHE) PERRY
    23705 VANOWEN ST. # 262
2   WEST HILLS, CA, 91307
    (747) 224-9515
3

4               IN THE UNITED STATES DISTRICT COURT
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
5   LACV22-5378-FLA-MAAx

|  | District Court No.: |
|---|---|
| 6   MICHAEL (MOSHE) PERRY | **Plaintiff Does Not Stipulate To A District Court Magistrate Judge.** |
| 7         Plaintiff | |
| 8         vs. | **Plaintiff's Verified Civil Complaint With Claims And Alternative Statements Under FRCP 8(d)(2)[2] In Support of The Complaint:** |
| 9   NP PARC CHATEAUX, LLC. (AND INC.), | (1)   Request For Temporary and Permanent Injunctive Relief Against The State California Supreme Court with declaratory, equitable relief Pursuant to 28 U.S.C. §1651, and punitive damages against the landlord NP Parc Chateaux, LLC. (and Inc.), and the Los Angeles County Sheriff's Department. |
| 10  MANAGING COMPANY/IES GRAYSTAR- | |
| 11  ALLIANCE RESIDENTIAL (ALLRESCO"); | |
| 12  CHRISTINA ROMERO, MANAGER PARC | |
| 13  CHATEAUX LLC., , "KEVIN," MANAGER | |
| 14  PARC CHATEAUX LLC.;  TANIA KIM | |
| 15  CARDOSO; HOLLENBECK & CARDOSO LLP.; | (2)   Parc Chateaux LLC.'s Reprehensibility In Working Alongside With The State of California Superior Court To Commit Procedural Fraud Of Due Process By Violated Federal Law 28 U.S.C. §1447(c) By Using An Electronic Transmittal Letter of Remand As Remand, Instead of Waiting To The District Court "**Certified**" Remand Enabled The State Court To Prematurely "Grabbed" Jurisdiction From The District Court And Issue A Void Default, default Judgment and Writ of Execution. |
| 16  CHANDLER HOYT, SANTA CLARITA CITY | |
| 17  TOWING INC. ("SCCTOW"); SHERIFF ALEX | |
| 18  VILLANUEVA IN HIS OFFICIAL AND | |
| 19  INDIVIDUAL CAPACITIES AS COUNTY OF | |
| 20  LOS ANGELES SHERIFF'S DEPARTMENT, | |
| 21  CHIEF JUSTICE OF THE CALIFORNIA | |
| 22  SUPREME COURT TANI GORRE CANTIL- | |
| 23  SAKAUYE AS CHAIR OF THE CALIFORNIA | (3)   The landlord and the Los Angeles Sheriff Department substantively violated the Federal Moratorium Laws, CARES Act, by serving Mr. Perry on August 23, 2020 with only 3-days Notice-To-Vacate, instead 30 days under Section 4024 of the CARES Act (15 U.S.C. §9058)(b)&(c) (15 U.S.C. § 9001 et seq.)),[3] as amended by the Rescue Plan Act of 2021. |
| 24  JUDICIAL COUNCIL AND THE CALIFORNIA | |
| 25  OFFICIAL WHO ADMINISTERED THE | |
| 26  VEXATIOUS LITIGANT LISTING AND | |
|     ORDERS, IN THEIR OFFICIAL, | |
| 27  ADMINISTRATIVE CAPACITIES,[1] | |
| 28 | (4)   California's Tenant Relief Act (CTRA) of |

---

[1]   _Wolfe v. Strankman_, 392 F. 3D 358 (2004).

1

Defendants,

September 1, 2020.

(5)     Violated Section 4024 of the CARES Act and the staff had served Mr. Perry with only 3-days Notice-To-Vacate on August 23, 2020. Landlord failed to give Plaintiff 30 days Notice-To-Vacate pursuant to.  Landlord and the sheriff Department had forced Plaintiff to live in hotels for over one year, because landlord Parc Chateaux had informed other landlords (Plaintiff applied to) not to rent to Plaintiff.

(6)     Sheriff Department and the landlord staff refusal to wear masks maliciously infected Mr. Perry with COVID-19, Coronavirus that made him gravely ill that it almost killing him.   Sheriff Department deputies refused to yield to warning by the Los Angeles Inspector General Max Huntsman's letter of August 21, 2020 to wear protective masks, had infected Mr. Perry on August 27, 2020 with COVID-19 Coronavirus that made him gravely ill that it almost killed him, had damage to Mr. Perry's liver and infected his heart with Myocarditis[4] During the wrongful eviction on August 27, 2020. (Ref. "RELIEF ACT" S.4519 of August 10, 2020 providing tenants a Private Right of Action) Is remedied under the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983, California Senate Bill 3088;

(7)     For Federal Question Jurisdiction Under 28 U.S.C.  §  1331[5]  in  Claim  Against  The  Sheriff's

---

[2]     FRCP 8(d)(2): Alternative Statements of a Claim or Defense: **A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient**. *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).

[3]     28 U.S.C. § 1658: Time limitations on the commencement of civil actions arising under Acts of Congress.  (a) Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues. *Sandwich Isles Comms., Inc.*, FCC18-172, 2019 WL 105385, at *39 (F.C.C. Jan. 3, 2019); see also *Garvey v. Hale,* 1997 WL 566262, at *1 (N.T.S.B. Aug. 29, 1997) (stating that section 1658(a) applies to "certain civil actions in federal court."

[4]     Myocarditis infection is an inflammation of the heart muscle.  Myocarditis is also common after COVID-19 infection than vaccination.   COVID-19 as a Possible Cause of Myocarditis and Pericarditis. https://www.acc.org/latest-in-cardiology/articles/2021/02/05/19/37/covid-19-as-a-possible-cause-of-myocarditis-and-pericarditis.
Read  more: https://www.newscientist.com/article/mg25133462-800-myocarditis-is-more-common-after-covid-19-infection-than-vaccination/#ixzz78YSSWQtT.

[5]     The substantial inquiry looks "**to the importance of the issue to the federal system as a whole**," not to the parties in the particular suit. Gunn v. Minton, 568 U.S. 251, 260(2013). See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005): "[F]ederal-question jurisdiction....will lie over some state-law claims that implicate significant federal issues,  see, e.g.,

Department Enforcing Challenge And Execution of The Eviction Orders that violated the 30 days Notice-To-Vacate under Section 4024 of the CARES Act (15 U.S.C. §9058)(b)&(c). Is remedied under the Fourteenth Amendment and 42 U.S.C. § 1983;

(8)     For Federal Question Jurisdiction under 28 U.S.C. § 1331 and the judge-made cause of action recognized in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) for declaratory and injunctive relief for a facial and as applied constitutional Challenge to the vexatious litigant statutes §391.7 (and §§391 et. seq.) is unconstitutional as applied When the California Supreme Court forced Mr. Perry as a defendant to file form "**VL-110 Request to File New Litigation by Vexatious Litigant**" that was meant for a plaintiff, (which they always deny to him as a defendant for lacking merits) unwillingness to address Mr. Perry's grievance that the Sheriff and landlord had violated his rights for 30 days Notice-To-Vacate under Section 4024 of the CARES Act (15 U.S.C. §9058)(b)&(c) to deprive him due process and equal protection of the law violate the Fourteenth Amendment.[6] Is remedied under 42 U.S.C. § 1983. (Exhibits Are Attached)

**DEMAND FOR JURY TRIAL**

Smith v. Kansas City Title & Trust Co., 255 U. S. 180. Such federal jurisdiction demands not only a contested federal issue, but a substantial one. And the jurisdiction must be consistent with congressional judgment about the sound division of labor between state and federal courts governing §1331's application. These considerations have kept the Court from adopting a single test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties. Instead, the question is whether the state-law claim necessarily stated a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing a congressionally approved balance of federal and state judicial responsibilities. Pp. 3–6."

[6]     The Fourteenth Amendment Section 1: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws…" Section 5: "The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." [Constitution of the United States, Amendment XIV, Sections 1–5].

# I.   **TABLE OF CONTENTS**

I.     TABLE OF CONTENTS................................................................4

II.    PARTIES .................................................................................7

III.   JURISDICTION AND VENUE ...................................................7

IV.    THE DEFENDANTS PARC CHATEAUX ARE JOINTLY AND SEVERALLY LIABLE WITH THE LOS ANGELES SHERIFF'S DEPARTMENT..............................................8

V.     BACKGROUND ......................................................................9

VI.    ALLEGATIONS.......................................................................19

FIRST CLAIM FOR RELIEF ..............................................................19
[Cause of Action Under 42 U.S.C. § 1983 And Injunctive Relief Against The California State Courts Pursuant to 28 U.S.C. §1651, With Declaratory, Equitable Relief For Deprivation of Rights And An Ultra Vires Claim Challenging The State of California Unlawful Detainer Courts In Depriving Mr. Perry Due Process And Equal Protection Under the 14th Amendment And In Violations of Federal Laws On The Moratorium Against Eviction Under Section 4024 of the CARES Act (15 U.S.C. §9058(b)&(c)) 28 U.S.C. §§1357; §1343(4); 2201 And 2202 California Penal Code §396(f), For Failing To Give Mr. Perry The 30 Days "Notice-To-Vacate" Before The Eviction on August 27, 2020 Violated Section 4024(b)&(c) Under The CARES Act (15 U.S.C. 9058(b)&(c)). Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successes or/s; Landlord's Counsel Tania Kim Cardoso, And Law Firm Hollenbeck & Cardoso LLP]     19

SECOND CLAIM FOR RELIEF ..........................................................21
[Right of Action Under The "RELIEF Act" S.4519 of August 10, 2020 ("Rent Emergencies Leave Impacts on Evicted Families Act) For The Wrongful Eviction On August 27, 2020 Was In Violation of The CARES Act And The Notice-To-Vacate Requirements Under Section 4024 (15 U.S.C. 9058); For Violation of The California Tenant Relief Act (CTRA)of September 1, 2020; Violation of Due Process Under California Constitution, Article I, Sections (1)&(4) And the Equal Protection Clause of the 14th Amendment to the United States Constitution For Depriving Mr. Perry's Rights As  a HUD Tenant Under 42 U.S.C. § 1437d(k) For A Trial De Novo Under 24 C.F.R. § 966.57 For A "Covered Tenant", With Request For Injunctive, Declaratory, Equitable Relief And Monetary, Punitive Damages Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successor/s; The Los Angeles County Sheriff's Department, And The Los Angeles Superior Court In Chatsworth, California.]..............................................21

THIRD CLAIM FOR RELIEF ..............................................................24
[A Cause of Action Under 42 U.S.C. § 1983 For Procedural Fraud of Due Process Against The Landlord (Parc Chateaux LLC, and Any Managing Company, And Other Successor/s, And Their Counsel Tania Kim Cardoso, Along With The State of California Superior Court In Chatsworth Judge Tricia Taylor, And The State of California Supreme Court By Prematurely "Grabbing" Jurisdiction From The District Court On February 21, 2020 Based Only On A "Transmittal Letter of Remand" Instead of "Certified" Remand Order 28 U.S.C. §1447(c)].....................................24

FOURTH CLAIM FOR RELIEF ..........................................................27
[For Breach of Contract; Lack of Proper Notice In Violation of Due Process And Civil Rights Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successor/s,]......................................................................................27

FIFTH CLAIM FOR RELIEF ...............................................................29

[A Cause of Action Against The Landlord Parc Chateaux LLC. In Special Relationship With Los Angeles Sheriff's Department Had Both Caused Endangerment of Mr. Perry's Life, Health And Safety By Infecting Him With  COVID-19, Coronavirus That Made Him Gravely Ill That It Almost Killed Him During The Eviction on August 27, 2020; The Sheriff Department Violation of Cal. Gov. Code §26602 In violation of The CARES Act And The Housing Act of 1937 42 U.S.C. §§1437-137r (1987) Against The Landlord (Parc Chateaux LLC, and Any Managing Company, And Other Successesor/s.]........................................................................................29

SIXTH CLAIM FOR RELIEF ........................................................................................33

[Violation of Civil Rights And 42 U.S.C. § 1983 And An Ex Parte Young Action Agasint The California Supreme For Depriving Mr. Perry's Rights To Defend  Himself Under the Equal Protection Clause of the 14th Amendment to the United States Constitution And California Constitution, Article I, Section (1) In Any State Court.  Mr. Perry Is Entitiled To Obtain Any Relief, Injunctive With Declaratory, Equitable Relief Against The California State Supreme Court Pursuant to 28 U.S.C. §1651 After They Forced Him As Defendant Under Cal. Code. of Civ. Proc. §391.7 (§§ 391 et. seq) To File Form "VL-110 Request To File New Litigation By Vexatious Litigant" That Was Intended To A Plaintiff.] ....................................................................33

SEVENTH CLAIM FOR RELIEF....................................................................................36

[For Harassment And Housing Discrimination of Mr. Perry In Violation of Cal. Gov't Code §12955(in seq.) Against The Landlord (Parc Chateaux LLC, and Any Managing Company, And Other Successesor/s.]........................................................................................36

EIGHTH CLAIM FOR RELIEF .....................................................................................39

[Violation of 18 U.S. Code § 241 - Conspiracy Against Rights Under Section 4024(b) And (c) of the "CARES Act" (15 U.S.C. 9058(b)&(c)) Against The Landlord Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/s and The Los Angeles Sheriff's Department, and The California State Courts)]................................................................39

NINTH CLAIM FOR RELIEF ........................................................................................41

[For Trespass And Conversion And A Private Right of Action Under Vehicle Code § 22658 of Mr. Perry's 2007 Range Rover Apartment; In The Wrongul Trespass Into Mr. Perry's Home On August 27, 2020 Was In Violation of The CARES Act Who Along With The State Court Committed Fraud In Violation of 28 U.S.C. § 1447(c) By Prematurely "Grabbing" Jurisdiction On February 21, 2020 From The United States District Court Based Only of An Electronic "Letter of Transmittal - Remand To Superior Court (Civil)" Instead of The Actual "Certified" Remand Order That Was Never Mailed By The District Court, That Defendants Had Never Received Any Remand Order. Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/S; Chandler Hoyt, Santa Clarita City Towing Inc. ("SCCTOW")] .................41

[An Implied Right of Action For Intentional Discrimination In HUD Housing Under Title VI of the Civil Rights Act of 1964, Section 601 Which Is Include Enforcement of section 4024 of the "CARES Act" (15 U.S.C. 9058) And In Congress Passing of "RELIEF Act" on August 10, 2020 (Bill S. 4519 (116 Congress)) [Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/s And The Los Angeles County Sheriff Department].................................................................................................................43

TENTH CLAIM FOR RELIEF........................................................................................45

[Implied Cause of Action The Los Angeles Sheriff's Department Refusing Wear Masks To Prevent And Stop COVID-19 Coronavirus Infection Endangered Mr. Perry And Created Life-Threatening Circumstances, Bordering CriminalityWhile Knowingly Violating The California Constitution, Article I, Section (1) And Government Code §26602: "[t]he spread of any contagious or communicable disease" Against The Los Angeles Sheriff's Department As The Eviction Jointly

Done And Supervised On August 27, 2020 By Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/s]. ...................................................45

ELEVENTH CLAIM FOR RELIEF .............................................................................47
[Defendants Violation of The California Tenant Relief Act (CTRA) of September 1, 2020 After Violation of The 30 Days Notice-To-Vacate Under Section 4024 of the "CARES Act" And 15 U.S.C. §9058((b)&(c) On August 27, 2020 Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/s And The Sheriff Departments]......................47

TWELFTH CLAIM FOR RELIEF ...............................................................................48
[For Deprivation of Hearing For HUD Dwelling In Violations 42 U.S.C. 3601-3619 et. seq. 24 C.F.R. 966 et. seq.; 24 CFR C.F.R. 5.150-5.168 24 CFR C.F.R. PART 100; Title VIII of the Civil Rights Act of 1968 (As Amended); 42 U.S.C. §2000d-1;  Section 109 of Title I of the Housing And Community Development Act of 1974, 42 U.S.C. §5309; The Fair Housing Act And Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794; Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§12181 – 12189; Executive Order 11063 (1962), Executive Order 12892 (1994) In Concert With Violation of Section 4024 of the "CARES Act" (15 U.S.C. 9058) and Under The "Rent Emergencies Leave Impacts on Evicted Families Act" or the "RELIEF Act" S.4519 of August 10, California Penal Code §396(f)]........48

THIRTEENTH CLAIM FOR RELIEF ..........................................................................50
[For Intentional, Severe Physical And Emotional Distress Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/s And The Los Angeles Sheriff Department]..............................................................................................................50

FOURTEENTH CLAIM FOR RELIEF.........................................................................51
[Retaliatory Eviction Under The Unlawful Business Practice And An Act of Unfair Competition ("UCL") Retaliatory Towing Embezzlement, Thievery,  Conversion of Mr. Perry's Luxury 2007 Range Rover After Mr. Perry Paid For Carport #410, Is Within The Meaning of Section 17200 of the Business and Professions Code) Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/s; Chandler Hoyt, Santa Clarita City Towing Inc. ("SCCTOW")]...........................................................................................................51

FIFTEENTH CLAIM FOR RELIEF .............................................................................53
[Defendants Violation of the California Fair Debt Collection Practices ("CFDCP"), Cal. Civil Code § 1788.2(c) et seq., and the Fair Debt Protections Collection Act (FDCPA), (15 U.S.C. § 1692, et. seq.) Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/s; Landlord's Counsel Tania Kim Cardoso, And Law Firm Hollenbeck & Cardoso LLP]     53

EIGHTEENTH CLAIM FOR RELIEF..........................................................................56
[For For Declaratory Relief and Monetary Damages Pursuant To The Fourteenth Amendment For Violation of Title II of the Americans with Disabilities Act ("ADA") And Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 Meant To Enforce Eviction and Cause Mr. Perry Homelessness]......................................................................................................56

NINETEENTH CLAIM FOR RELIEF ..........................................................................57
[A Judge-Made Cause of Action Invoked Under EX PARTE YOUNG , 209 U.S. 123 (1908) For Facial And As Applied Constitutional Challenge of the State of California Vexatious Litigant Statutes §391.7 (And §§391 et. seq.) As Unconstitutional When Applied By The California Supreme Court As Mr. Perry As A Defendant That Was Meant For A Plaintiff, Forcing Him To File Form "VL-110 Request To File New Litigation By Vexatious Litigant" Which They Always Deny To Blocking Him Access To State Courts Defend And Prosecute His Claims Under Section 4024 Of The "CARES Act" (15 U.S.C. 9058)]...................................................................57

TWENTIETH CLAIM FOR RELIEF ............................................................................59

(Violations of the California Consumers Legal Remedies Act (CLRA) For Conversion Pursuant to
Cal. Civ. Code §1780(a) Cal. Civ. Code §1750 et. seq. §1770(a), §1761(a)-(b))]........................59
TWENTY FIRST CLAIM FOR RELIEF ................................................................................62
[The Los Angeles Sheriff's Department Aiding and Abetting With Parc Chateaux LLC, And Any
Managing Agent/Representatives, And Other Successesor/s To Commit Tort, Assault And Battery
And Undue Stress And Hardship On Plaintiff During The Eviction of August 27, 2020.]..........62
VII.    DECLARATORY PRAYER FOR RELIEF ALLEGATIONS.................................................62
VIII.   PRAYER FOR RELIEF ........................................................................................................64
IX.    DEMAND FOR JURY TRIAL .................................................................................................66
X.    RESERVATION OF RIGHTS TO AMEND THIS COMPLAINT .........................................66
XI.    VERIFICATION ......................................................................................................................67
XII.    CERTIFICATE OF SERVICE.................................................................................................68

## II.   PARTIES

1)    Plaintiff MOSHE (MICHAEL) A. PERRY is an Israeli-American man. At all relevant times, Mr. Perry has resided at the PARC CHATEAUX LLC. Apartment Complex ("the Premises"), at Constitution Avenue, Stevenson Ranch, California 91381 ("Unit 225").

2)    Defendant Parc Chateaux LLC., is a New York Corporation ("Parc Chateaux LLC."). Parc Chateaux LLC., owns Unit 225 in Stevenson Ranch.

3)    Defendant GRAYSTAR- ALLIANCE RESIDENTIAL, and acts as the property management company for the Premises. Parc Chateaux LLC., does business in the State of California and does business at its office, located at 300 Ardito Avenue, Kings Park, New York 11754.

4)    Defendant CHRISTINA ROMERO is the property manager at the Premises and is an agent of Parc Chateaux LLC. As set forth in paragraph 6, Parc Chateaux LLC and Christina Romero are referred to collectively as the "Parc Chateaux Defendants."

5)    Defendant "KEVIN" is PARC CHATEAUX LLC maintenance man at all relevant times lived and resided at Parc Chateaux Apartments.

6)    Defendant LOS ANGELES SHERIFF'S DEPARTMENT ("Sheriff's Department"), at all relevant times are the….that served the Notice-To-Vacate and evicts the tenants following service of the Notice-To-Vacate.

7)    Defendant Counsel TANIA KIM CARDOSO; HOLLENBECK & CARDOSO LLP are the counsels and law firm representing the Defendant PARC CHATEAUX defendants.

8)    Defendant HOYT, Santa Clarita City Towing Inc. ("SCCTOW")

9)    Defendant SHERIFF ALEX VILLANUEVA in his official and individual capacities as County of Los Angeles Sheriff's Department.

10)    Defendant Judge Tricia Taylor of the Chatsworth Courthouse, and CHIEF JUSTICE OF THE CALIFORNIA SUPREME COURT TANI GORRE CANTIL-SAKAUYE As Chair Of The California Judicial Council And The California Official Who Administered The Vexatious Litigant Listing And Orders, In Their Official, Administrative Capacities.

## III.   JURISDICTION AND VENUE

11)    This lawsuit is brought pursuant to the "The Civil Rights Act of 1964" and 42 U.S.C. §

1983, Provision of Federal Law under 28 U.S.C. §1447(c) and Section 4024 of the CARES Act (15 U.S.C. §9058)(b)&(c) (15 U.S.C. § 9001 et seq.)),[7] as amended by the Rescue Plan Act of 2021, and the "RELIEF ACT" S.4519 of August 10, 2020 providing tenants a Private Right of Action), confers jurisdiction on this Court who has jurisdiction of Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law. *Fort Bend County v. Lois M. Davis*, No. 18–525 (June 3, 2019).

9)      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4); § 1357 (Injuries under Federal laws); 28 U.S.C. §§ 2201 and 2202, with diversity jurisdiction under 28 U.S.C. §1332 and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with their federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

10)      Venue is proper in California, and Defendants are subject to the personal jurisdiction of, this Court because Defendants maintain facilities and business operations in this District, and all or most of the events giving rise to this action occurred in this District, with venue under 28 U.S.C. § 1391(b).

11)      The racial and national origin discrimination[8] action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

## IV.   THE DEFENDANTS PARC CHATEAUX ARE JOINTLY AND SEVERALLY LIABLE WITH THE LOS ANGELES SHERIFF'S DEPARTMENT.

12)      At all relevant times, Defendant Christina Romero, Defendant "Kevin" were agents and/or employees of Defendant Parc Chateaux LLC. And Tania Kim Cardoso; Hollenbeck & Cardoso LLP are the counsel and law firm representing the Defendant Parc Chateaux defendants are all jointly and

---

[7]     28 U.S.C. § 1658: Time limitations on the commencement of civil actions arising under Acts of Congress.  (a) Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues. *Sandwich Isles Comms., Inc.*, FCC18-172, 2019 WL 105385, at *39 (F.C.C. Jan. 3, 2019); see also *Garvey v. Hale,* 1997 WL 566262, at *1 (N.T.S.B. Aug. 29, 1997) (stating that section 1658(a) applies to "certain civil actions in federal court."

[8]     Pavon v. Swift Transportation Co., Inc._, 192 F.3d 902 (1999): **"We also reject Swift's contention that Pavon was subjected to discrimination based on his national origin and not his race, and so may not bring a claim under § 1981 which provides relief only for race-based discrimination**.  See St. Francis College v. Al-Khazraji, 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (holding that Congress intended for this statute to protect "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics.").

1  severally liable as well as the Los Angeles Sheriff's Department had no qualified immunity for violating

2  Mr. Perry constitutional rights.  See *Lane v. Franks*, 573 U.S. 228, 243 (2014).[9]

3                                          **V.   BACKGROUND**

4          13)     Mr. Moshe A. Perry is an Israeli-American who had moved into a two-bedroom unit under

5  a HUD subsidized, affordable housing program since August 9, 2016, in Parc Chateaux Apartments, a

6  large complex on Constitution Avenue in Stevenson Ranch, California.  Under the lease, Mr. Perry was

7  responsible for gas and electric, and the landlord was responsible for water, garbage and sewer services.

   Mr. Perry had access to a parking space in front of the building.

8          14)     As Mr. Perry's unit was subject to HUD's subsidized, affordable housing program it was

9  subject to regulations (24 C.F.R. § 966.57[10] and 24 CFR § 966.4 - Lease requirements[11]) and to the laws

10  and the City of Los Angeles HUD Affordable housing regulations and rent-control ordinance, meaning

11  his rent could be raised a maximum of around 3 percent per year and for the first three years Mr. Perry's

12  tent was raised only once from $1535 to $1648.  During his tenancy, the maximum that stabilized rent

13  could be increased was a total of 3 percent per year, whereas the market rent for a two-bedroom, two-bath

   unit in Stevenson Ranch and Los Angeles increased by 255 percent.   After Parc Chateaux had wrongly

14  evicted Mr. Perry, they increased the rent from $1648 to $3877 for his two-bedroom, two-bath apartment.

15          15)     In 2018 one of Parc Chateaux proximate apartment building next to Mr. Perry's building

16  had entirely burned out, and construction had lasted until 2021.  Almost immediately, and for the next 14

17  months until Mr. Perry was forced out, the landlords began to take away various benefits that had

18  ─────────────────
   [9]      *Lane v. Franks*, 573 U.S. 228, 243 (2014). The qualified immunity analysis consists of two

19  prongs: (1) whether the facts the plaintiff alleges make out a violation of a constitutional right; and (2)
   whether that right was clearly established at the time the defendant acted. *Castro v. County of Los*

20  *Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc); *Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir.
   2020).   Whether a right is clearly established turns on whether it is "sufficiently definite that any

21  reasonable official in the defendant's shoes would have understood he was violating it." *Nicholson v. City*
   *of Los Angeles*, 935 F.3d 685, 695 (9th Cir. 2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153

22  (2018)). Regarding the second prong, the Ninth Circuit has explained: "We begin our inquiry into
   whether this constitutional violation was clearly established by defining the law at issue in a concrete,

23  particularized manner." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017). The
   Ninth Circuit also confirmed that it is the plaintiff who bears the burden of showing that the rights

24  allegedly violated were clearly established. Id. at 1118.
   [10]     *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307 (E.D.N.Y. 2012) "[T]he only

25  possible exception would be if the housing court determined that it was entitled to conduct a trial de novo
   under 24 C.F.R. § 966.57, in which case the Plaintiffs would be entitled to raise all legal and equitable

26  defenses, including the constitutional due process and federal claims raised here. Although the Court has
   already held that § 966.57(c) permits the Plaintiffs to assert their federal claims in this court, whether or

27  to what extent they are entitled to raise those claims in the pending state proceeding is for the state court
   to decide." [Citation omitted].

28  [11]     Code of Federal Regulations, Title 24, §§ 247.3, 247.4, 247.5, and 247.6; Code of Public Local
   Laws of Baltimore City, Subtitle 9, § 9-14.

previously been provided to the tenants, ignored or delayed.

16)     In mid 2018 early 2019 the landlord all of a sudden had changed the sewer charges Mr. Perry paid from under $20 to $49 that was based on only $12 of water use.[12]   When Mr. Perry requested the landlord for sewer figures that was based on the RUBS formula, as was noted in the lease agreement addendum of August 9, 2016, the Landlord refused and demanded $49 in sewer charges and $1250 in late fees.

17)     Mr. Perry requested and on May 15, 2019 he was presented by assistant manager with landlord Parc Chateaux Apartment charging HUD tenants over **$55,752.66** in monthly sewer charges. Landlord intentionally ignored the HUD's utilities allowances as mentioned in the lease agreement of August 9, 2016 that was provided for tenants was $48 but never utilized and increased.  The increase of the sewer charge without the allowances was in violation of HUD Regulations.

18)     Mr. Perry experienced an escalating series of problems with the landlord. One of the first things Mr. Perry noticed was that responding to maintenance and upkeep issues, were uncommunicative and uncooperative, and became increasingly hostile to Mr. Perry.  On July 2, 2019, Mr. Perry mailed the landlord a certified mail informing them that in two weeks he is be leaving on a disability retreat in Israel on July 27, 2019, 2007.

19)     Mr. Perry wrote a letter he mailed by a certified mail to the landlord about his trip to Israel and included it with his August rent payment and he paid **$50** in a check for carport space **#410**.  Mr. Perry then parked his blue-gray 2007 all equipped automatic luxury Range Rover.[13]   A day after Mr. Perry left to LAX and flew to Israel on July 27, 2019 the landlord Parc Chateaux harassed and retaliated

---

[12]   In *Apartment Assn. of Los Angeles County. Inc. v. City of Los Angeles* - 74 Cal. App. 4th 681, the court of appeal declared that landlords can't circumvent rent limits by charging extra for water: "**Using this test of reasonable relationship, sewer service charges -- based upon a variety of factors have been upheld as constitutional. Thus, sewer service charges based upon water consumption have been declared valid on the theory that the amount of water that flows into a building is apt to be roughly proportional to what flows out as sewage.**" (*In re City of Philadelphia* (1941) 343 Pa. 47 [21 A.2d 876].)

[13]   The Ninth Circuit requires "proper standing to contest a forfeiture both as a statutory matter and as an Article III and prudential requirement." *United States v. One 1985 Cadillac Seville*, 866 F .2d 1142, 1148 (9th Cir.1989); but see, U.S. v. $57,790 in U.S. Currency, 184 Fed.Appx. 604, 605 (9th Cir. 2006) ("**standing**" in forfeiture actions not synonymous with Article III standing). "The claimant has the burden of establishing, by a preponderance of the evidence, that he has an interest in the property." *U.S. v. Real Property Located at Section 18*, 976 F.2d 515, 520 (9th Cir. 1992), citing *U.S. v. One Parcel of Land*, 902 F.2d 1443, 1444 (9th Cir. 1990). "This interest need not be an ownership interest; it can be any type of interest, including a possessory interest. See $122,043.00 [*United States v. $122,043.00 in United States Currency*, 792 F.2d 1470, 1473 (9th Cir.1986)] 792 F.2d at 1473; *United States v. 1982 Sanger 24' Spectra Boat*, 738 F.2d 1043, 1046 (9th Cir.1984) ('It is not necessary therefore that a claimant under the forfeiture statute allege ownership. A lesser property interest such as possession creates standing.') (citing *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984))." United States v. $191,910.00 in U.S. Currency, 16 F.3d.

against Mr. Perry by towing his 2007 Range Rover vehicle without calling the police, even after he already paid for a carport **#410**.

20)    While Mr. Perry was on his vacation/disability retreat in Israel the landlord Parc Chateaux LLC manager Christina Romero began he mischief after she assigned to Mr. Perry carport # 410, she said by email that the carport belonged to another tenant who was about to move out from Parc Chateaux apartment. Christina knew Mr. Perry was already in Israel and couldn't remove his vehicle.

21)    So, Christina demanded by email that Mr. Perry remove his vehicle. Mr. Perry could not remove his vehicle and he asked her to move his car or tow it to another carport, or give the other tenant who was already about to leave an alternate carport parking for the few days. But Christina refused and ordered a towing company to tow Mr. Perry vehicle from the complex. As a result of the towing Mr. Perry incurred thousands of dollars in various towing fees and storage fees he could not afford, causing Mr. Perry to lose his Range Rover valued at **$18,985** (Bluebook).

22)    When Mr. Perry came back from Israel he was livid and he mailed his landlord a demand letter via USPS certified mail to remedy the loss of his vehicle, but the landlord ignored him. The following months the landlord refused to answer Mr. Perry's questions the whereabouts of his vehicle and he lost his vehicle,

23)    Five months after Mr. Perry returned from his trip to Israel and after he paid all of his rent from August through December 2019, the landlord's manager Christina Romero retaliated when she all of a sudden increased Mr. Perry's rent by **$362** retroactive five (5) months rent increase from August 2019-December 2019, without giving Mr. Perry any previous notice to the increase. But this happened after Mr. Perry had already paid all his rent for August-December 2019.

24)    When Mr. Perry requested a copy of the notice, the landlord's manager Christina Romero promised she will email Mr. Perry the notice but she never did. See *Greene v. Lindsey*, 456 U.S. 444, 450-451 (1982) (**finding notice to tenants of eviction was invalid as matter of due process**); See *Jones v. Flowers*, 547 U.S. 220, 230, (2006) (due process likely requires at least some additional effort to provide actual notice to the tenant).

25)    Instead  and while Mr. Perry was on a short business trip to Las Vegas, the landlord manager Christina Romero had filed an unlawful detainer lawsuit (State case No.: 20CHUD00033), against Mr. Perry on January 9, 2020 asking for forfeiture of the rent agreement based on $362 in 5 months of "**unpaid**" retroactive rent. Even knowing Mr. Perry had already paid his rent for those same months.

26)    Mr. Perry had almost missed the time to file his demurrer and cross-complaint on January

16, 2020.  Mr. Perry fearing the state court discrimination had removed the state case to the federal court on February 6, 2020 in Case No.: **2:20-CV-01207-DFS-SK**, the state court in Chatsworth had ignored Mr. Perry's notice of removal and papers that was served upon them, and the state court judge Tricia Taylor had made nevertheless Orders on February 7, 2020 that violated federal removal laws.

27)     The United States District Court Central District Judge Dale S. Fischer had remanded the case back to the state court On February 21, 2020.  Mr. Perry never received a copy of the order of any remand order electronic "**Letter of Transmittal-Remand To Superior Court (Ci**vil)" until Parc Chateax ex parte motion was served on February 25, 2020 enclosed the copy of the transmittal letter.  So, the very next day in the morning of February 26, 2020 he filed his answer.  But the discriminatory state judge also intentionally ignored Mr. Perry's pleading and citation of Cal. Code of Civ. Proc. § 430.90(a)(1)&(2)(a)&(b) allowing him 30 days to answer as if it was inapplicable to him after he filed a demurrer.[14]

28)     On March 1, 2020 President Donald J. Trump Issued proclamations of a state of emergency and issued an executive order effective March 1, 2020 and March 4, 2020.  Yet, the state court in Chatsworth issued a default, ignoring Mr. Perry's answer and on March 5, 2020 the clerk issued a default judgment against Mr. Perry.  Mr. Perry motions to set aside the default and for reconsideration was arbitrarily denied on March 10, 2020.  Mr. Perry filed an appeal to the Appellate Division of the Los Angeles Superior Court on April 4, 2020.  Mr. Perry's timely appeal was finally heard late until May 11, 2021.

29)     Mr. Perry's fearing judicial discrimination in the state courts attempted a second removal of the state court case to the United States District Court on March 12, 2020, because of COVID-19 Coronavirus he also filed a notice and pre-warning to the Los Angeles Sheriff Department he served upon them by hand, not to arrive at his home to evict him in fear of infection from COVID-19, Coronavirus.

30)     The state of California trial court and appellate courts on May 19, 2021 refused to yield to justice[15]   and fairness and prejudiced Mr. Perry even as a defendant because they claim he was a

---

[14]     Cal. Code of Civ. Proc. § 430.90(a)(2): "If the defendant has not filed an answer in the original court, then 30 days from the day the original court receives the case on remand to do any of the following: (A) Answer the complaint.  (B) Demur or move to strike all or a portion of the complaint if: (i) an answer was not filed in the federal court, and (ii) a demurrer or motion to strike raising the same or similar issues was not filed and ruled upon by the original court prior to the removal of the action to federal court or was not filed and ruled upon in federal court prior to the remand. **If the demurrer or motion to strike is denied by the court, the defendant shall have 30 days to answer the complaint unless an answer was filed with the demurrer or motion to strike.**
[15]     On February 25, 2020 landlord filed a "Request for a Clerk Default" together with the plaintiff's

vexatious litigant defendant.  The Chatsworth Judge deemed Mr. Perry's February 26, 2020 answer as untimely, claiming because he did not file on February 21, 2020.[16]

31)    Over a period of two months before the eviction on August 27, 2020, during May and June of 2020, Mr. Perry saw a Sheriff Department vehicle/s parked for hours across the street, in the Ralphs parking lot, a short distance and in direct view of his apartment front door.  The Sheriff was watching Mr. Perry leaving and going until Mr. Perry's girlfriend had also noticed the Sheriff's vehicle, and told Mr. Perry who finally grabbed his binocular looking at the sheriff vehicle officer who soon left the area.  Both Mr. Perry and his girlfriend could not explain that time why the sheriff had stalked Mr. Perry's apartment?

32)    See the Los Angeles Office of Inspector General Max Huntsman warning letter on August 21, 2020 to the Los Angeles County Sheriff Department ignoring COVID-19 masks health warnings: "**Failure of Sheriff's Department Personal to Obey Face Covering Mandates.**"  The Sheriff Department deputies refusal to wear protective masks to prevent the spread of COVID-19, a contagious and communicable disease.  "LA County sheriff's deputies aren't wearing masks as required, inspector general says Los Angeles County sheriff's deputies aren't following public health orders that require them to wear masks on the job, the Office of Inspector General warned Monday."Tuesday, August 25, 2020. https://abc7.com/los-angeles-county-sheriffs-deputies-la-sheriff-lasd-office-of-inspector-general/6388263/.  "Los Angeles Sheriff's Department won't enforce county mask mandate", By Tori B. Powell, July 17, 2021 / 3:14 Pm / CBS News. https://www.cbsnews.com/news/los-angeles-county-sheriff-mask-mandate-covid/.[17]

---

"Ex Parte Application to "Reinstate" The Order of February 7, 2020."  By doing so landlord had reopened the default that allowed Mr. Perry's answer to be filed.   Yet, the Appellate division of the Superior Court refused to hear Mr. Perry and ignored that the Chatsworth the Chatsworth Judge heard plaintiff's ex parte application and then allowed Mr. Perry's answer to be filed in the morning of February 26, 2020. Additionally, both the landlord and the Chatsworth judge had failed to strike Mr. Perry's answer from the court's file since February 26, 2020, and it was not a nullity.  Yet, the Chatsworth trial clerk ignored Mr. Perry's answer was already filed and the clerk entered a clerk's default on March 4, 2020, and a default judgment[15] on March 5, 2020.  On March 10, 2020, the Chatsworth Judge deemed Mr. Perry's answer as untimely.

[16]    The Appellate Division claimed Mr. Perry's answer was due on February 21, 2020, the day the remand order was mailed to the state court.  Yet, the California Courts ignored fundamental due process requirement of service, the notice and mailing of the remand Order copy to Mr. Perry to inform him the case was remanded back to the state court, so he should file the answer, was extended by five (5) day under CCP. §1013: "shall be extended five calendar days, upon service by mail."

[17]    "[A] court may take judicial notice of public records, government documents, judicial opinions, municipal ordinances, newspaper and magazine articles, and the contents of websites. See, e.g., *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 259 n.2 (9th Cir. 2013); *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012); *Tollis, Inc. v. City of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007); *United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994); *Heidelberg, Inc. v. PM Lithographers, Inc*., No. 17-

33)    See Los Angeles Office of Inspector General Max Huntsman warning letter on June 15, 2021 to the Los Angeles County Sheriff Department: **"[W]e write regarding the Sheriffs Department's repeated failure to cooperate with the Inspector General's requests for documents and information over the last two years."** https://oig.lacounty.gov/Portals/OIG/Reports/6-15-21%20Sheriff%20Alex%20Villanueva%20Letter.pdf

34)    On August 23, 2020 the landlord and the sheriff posted on Mr. Perry's front door a three (3) days "**NOTICE-TO-VACATE**" (See Exhibit # 10) knowing Mr. Perry as "**COVERED TENANT**" living a HUD "**COVERED DWELLING**" living in Parc Chateaux Apartments since 2016, pursuant to Section 4024(a)(1) of the CARES Act and 15 U.S.C. §9058(a)(1).  Mr. Perry was entitled to the 30 days "**NOTICE-TO-VACATE**" but only after the 120 expired.  The Act forbids lumping the 120 days with the 30 days[18] and then evicting tenants.

35)    On August 27, 2020 the landlord and the sheriff's department not wearing COVID-19 masks evicted Mr. Perry wrongfully and forcefully from his Constitution Avenue building to the street only wearing a T-shirt and shorts.  When Mr. Perry looked for an alternate apartment, the landlord would told other landlords not to rent any apartments to Mr. Perry who could not rent an apartment and was forced to live from one hotel to another for over one year.

36)    Parc Chateaux had leased Mr. Perry's two-bedroom, two-bathroom apartment for $3,877 a month, an increase of nearly $2,000 (or almost triple) from $1648 a month Mr. Perry paid for his unit on Constitution Avenue.  The landlords did not return Mr. Perry's security deposit of $400 was never paid back.  Landlord could have used the security deposit for the supposed $362 of retroactive rent they alleged Mr. Perry did not pay, although Mr. Perry made all his rent payments from August-December 2019.

37)    On August 27, 2020 the landlord and the Los Angeles Sheriff's Department arrived and hard and then they pounded the door with a sledge hammer and a crowbar and bent the metal door and broke the lock of Mr. Perry's front door.  Then they violently evicted Mr. Perry from his home with only a T-Shirt and shorts, and told him "Go to the County and ask for shelter.  We housing relief.

38)    During the eviction the Sheriff's Department deputies did not wear masks and infected Mr. Perry with COVID-19 Coronavirus that made him gravely ill, it almost killed him.  The landlord and the Los Angeles Sheriff's Department had violated the "**CARES Act**" and 15 U.S.C. §9058 by evicting

---

CV-02223-AB-AJWx (C.D. Cal. 2017); *U.S. ex rel. Modglin v. DJO Glob., Inc.*, 114 F. Supp. 3d 993, 1008 (C.D. Cal. 2015)."

[18]    Section 4024(b)&(c)(1)&(2) of the CARES Act and 15 U.S.C. §9058(b)&(c)(1)&(2): **"[m]ay not issue a notice to vacate under paragraph (1) until after the expiration of the period described in subsection (b)."**

Mr. Perry a "**COVERED TENANT**" from a "**COVERED DWELLING**."

39)     Congress had passed the Coronavirus Aid, Relief, and Economic Security ("CARES Act") 15 U.S.C. § 9058(b)[19] (15 U.S.C. § 9001 et seq.,) was to limit the spread of COVID-19 Coronavirus was a temporary moratorium on filings and eviction that was meant to protect the public from COVID-19 spread.

40)     The landlord and the Sheriff Department had failed to give Mr. Perry 30 days on July 26, 2020 and they waited until August 23, 2020 to post a 3-days "**NOTICE-TO-VACATE.**" Landlord was not allowed to issue Mr. Perry a notice to vacate until after the expiration of the 120-day period moratorium against eviction had ended. Landlord then could not require Mr. Perry to vacate the covered dwelling unit before the date that is 30 days after the date on which the lessor provides the tenant with a notice to vacate, which was on August 23, 2020.

41)     But landlord did not give Mr. Perry 30 days "**NOTICE-TO-VACATE**" after they gave him 120 days pursuant to Section 4024(b)&(c)(1)&(2) of the CARES Act and 15 U.S.C. §9058(b)&(c)(1)&(2). Under Section 4024. (15 U.S.C. §9058) Time period.-- Moratorium.--During the 120-day period beginning on the date of enactment of this Act, the lessor of a covered dwelling **MAY NOT**--

> (b) (1) make, or cause to be made, any filing with the court of jurisdiction to initiate a legal action to recover possession of the covered dwelling from the tenant for nonpayment of rent or other fees or charges; or
> (2) **charge fees, penalties, or other charges to the tenant related to such nonpayment of rent**.
> (c) Notice.--The lessor of a covered dwelling unit--
> (1) Time period.--**MAY NOT require the tenant to vacate** the covered dwelling unit **BEFORE** the date that is **30 days AFTER the date on which the lessor provides the tenant with a notice to vacate**; and
> (2) **may not issue a notice to vacate** under paragraph (1) **until AFTER the expiration of the period described in subsection (b).**

42)     In the first two weeks after the eviction of August 27, 2020 Mr. Perry endured hardship and while living in a hotel he developed symptoms of Coronavirus, and he suffered weeks of grave sickness, fearing for his life, he suffered diarrhea, fever, chills, severe coughing, sore throat; congestion, runny nose; nausea; tightening of his chest; shortness of breath difficulty breathing; persistent, sharp, stabbing chest pain that may travel to the left upper shoulder and neck with constant pressure in his chest

---

[19]     See *Bailey v. U.S.,* 516 U.S. 137, 145 (1995) ("**The meaning of statutory language, plain or not, depends on context.**"); see also id. ("The difference between the two provisions demonstrates that, had Congress meant to broaden application of the statute beyond actual 'use,' Congress could and would have so specified, as it did in [the other provision]").

and his heart; fatigue;  body aches and muscle aches head to toe, back, legs, arms, and pain in his stomach, internal organs; headaches, migraines, loss of taste or smell, bleared vision.  After the eviction on August 27, 2020 Mr. Perry could not hold any food and lost nearly 40 pounds of his weight.  Over a period of two months Mr. Perry's girlfriend had nursed him back to health, while living in the hotel they were staying.

43)     Parc Chateaux lease identifies their property as one in a federally-subsidized housing program, Mr. Perry has sufficiently alleged that defendant's property is a "**COVERED DWELLING**" under the CARES Act.   Mr. Perry has attached to the complaint the addendum to lease between plaintiff and defendant, entitled "**AFFORDABLE HOUSING ADDENDUM**."   It specifies that plaintiff's rents are "subject to the program rent restrictions as governed by HUD and/or IRS."[20]  Exhibits 5-6 to Complaint.

44)     Other documents Mr. Perry signed with the landlord in additional to the addendum to the lease agreement states: **"The Affordable Housing Program provides for a specific maximum income as determined by HUD,"** which applies to properties that are applying to or receiving assistance from HUD. (See 24 C.F.R. § 8.2).

45)     A "**COVERED DWELLING**" is one that participates in a covered housing program, the rural housing voucher program or has a federally backed mortgage or multifamily mortgage loan. 15 U.S.C. § 9058(a)(2). One such program is the low-income housing tax credit under Section 42 of the Internal Revenue Code. See 15 U.S.C. § 9058(a)(2)(A)(i).   The Act also prohibited such landlords from charging late fees or penalties for late payment of rent.   Section 4024 of the "**CARES Act**" of March 26, 2020 and 15 U.S.C. §9058(b)(2).

46)     On August 10, 2020, Congress passed the "Rent Emergencies Leave Impacts on Evicted Families Act" or the "**RELIEF Act**" (Bill S. 4519 (116 Congress)), which provide tenants a "Private Right of Action" can obviously be inferred[21]as a cause of action from Congress passing of "**RELIEF Act.**" When Mr. Perry brought the matter to the attention of the California appellate Division on May 11, 2021, that the landlord and the Los Angeles Sheriff's Department had violated the 30 days "**NOTICE-TO-VACATE**" under Section 4024 of the CARES Act (15 U.S.C. §9058)(b)&(c) (15 U.S.C. § 9001 et

---

[20]     See Title VI of the Civil Rights Act of 1964, the Fair Housing Act, section 504 of the Rehabilitation Act of 1973, and title II of the Americans with Disabilities Act of 1990.

[21]     One exception applies to "[**Inferences of intent drawn from the statutory scheme as a whole**." _Block v. Community Nutrition Inst._, 467 U.S. 340, 349 (1984); another exception applies "**in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply**.'" _Citizens to Preserve Overton Park, Inc. v. Volpe_, 401 U.S. 402, 410 (1971) (citing S.Rep. 79-752 (1945)).

seq.)[22]

47)     But the appellate division judges refused and ignored Mr. Perry's arguments to enforce federal moratorium laws (and as amended by the Rescue Plan Act of 2021) by stating: "**As the enumerated asserted errors arose after the filing of the notice of appeal, they are not properly at issue in the present appeal**." (Citation).[23]

48)     The Appellate Division also ignored that the landlord along with the state of California superior court had committed procedural fraud of due process by violated federal law 28 U.S.C. §1447(c) by using an electronic "**Transmittal Letter of Remand**" as a remand order to prematurely "**grabbed**" jurisdiction from the district court and issue a void default, default judgment and writ of execution. The District Court never mailed the state court any "**Certified**" Remand Order to the state court to the present day, which means it still has exclusive jurisdiction over the case removed.

49)     The discriminatory state judge in the Chatsworth courthouse also intentionally ignored Mr. Perry's pleading and citation of Cal. Code of Civ. Proc. § 430.90(a)(1)&(2)(a)&(b) allowing him 30 days to answer as if it was inapplicable to him after he filed a demurrer.[24]

50)     When Mr. Perry presented the Appellate Division judges with evidence that the Chatsworth Courthouse had violated federal law 28 U.S.C. §1447(c) by using an electronic "**Transmittal Letter of Remand**" as a remand order to prematurely "**grabbed**" jurisdiction from the district court, he also submitted the appellate division with copies of his "**COVID-19 Rapid Antibodies Test**" results that the Sheriff Department infected him with Coronavirus infection.  Upon hearing the news the despicable judges cut off oral arguments, and rushed out of the court.  They care less for Mr. Perry's health or to the health and safety of California's tenants as Mr. Perry.  Likely because many of the California's judges are

---

[22]     *Sandwich Isles Comms., Inc.*, FCC18-172, 2019 WL 105385, at \*39 (F.C.C. Jan. 3, 2019); see also *Garvey v. Hale,* 1997 WL 566262, at \*1 (N.T.S.B. Aug. 29, 1997) (stating that 28 U.S.C. § 1658 1658(a) applies to "certain civil actions in federal court.".

[23]     California has adopted the "**One Judgment Rule**" (Cal. Rules of Court, Rule 8.821(A)(2)) Construing the Notice of Appeal Liberally.  See *Lemaire v. All City Employees Assn.*, 35 Cal.App.3d 106 (2nd District, 1973): "YES. California has adopted the "one judgment rule." This rule mandates that under California procedure there is ordinarily only one final judgment in an action….A judgment is final when it terminates the litigation between the parties on the merits of the case. (*Sjoberg v. Hastorf*, 33 Cal. 2d 116 [199 P.2d 668]; *Evans v. Dabney*, 37 Cal. 2d 758 [235 P.2d 604]; *Fleuret v. Hale Constr. Co.*, 12 Cal. App. 3d 227 [90 Cal. Rptr. 557]; *County of Sacramento v. Assessment Appeals Bd*. No. 2, 32 Cal. App. 3d 654 [108 Cal. Rptr. 434].)

[24]     Cal. Code of Civ. Proc. § 430.90(a)(2): "If the defendant has not filed an answer in the original court, then 30 days from the day the original court receives the case on remand to do any of the following: (A) Answer the complaint.  (B) Demur or move to strike all or a portion of the complaint if: (i) an answer was not filed in the federal court, and (ii) a demurrer or motion to strike raising the same or similar issues was not filed and ruled upon by the original court prior to the removal of the action to federal court or was not filed and ruled upon in federal court prior to the remand. **If the demurrer or motion to strike is denied by the court, the defendant shall have 30 days to answer the complaint unless an answer was filed with the demurrer or motion to strike.**

partners to apartment owners and landlords.

51)     God only knows how many tenants have died because the Sheriff Department deputies' sick with Coronavirus did not care to put protective masks, while they evicted California's tenants. Mr. Perry knows of anyone who would be so passive to allow such criminal activity by a lawless landlord who also almost caused him to die from COVID-19, Coronavirus.

52)     The Appellate Division judges had abandoned any rule of law and refused to enforce federal law and state's tenants' rights that were meant to protect tenants from the infection of COVID-19 Coronavirus, in their bias for protecting landlords' rights. Using any conceivable procedural trickery and delays that prevent him from getting any relief or properly defending himself or in his appeal.

53)     See *In re Rose*, 22 Cal.4th 430, 93 Cal. Rptr. 2d 298, 993 P.2d 956 (Cal. 2000), California Justice Janice Rogers Brown, then was an associate Justice of the California Supreme Court from 1996 to 2005, served also as a United States Circuit Judge of the United States Court of Appeals for the District of Columbia Circuit from 2005 to 2017, in dissenting had stated the following:

> "**[R]eview by a constitutional court, review by real judges whose allegiance is to the judiciary, to its standards and ideals — to the rule, in short, of law.** Review, moreover, that is seen, observed in the form of reasoned judicial opinions, and in the ritual of oral argument. In combination, these features make up hallowed ground, for they comprise a signal feature of our democracy — the protection of the individual from executive and legislative overreaching by neutral magistrates, magistrates whose decisions are constrained by objective principles of judicial reasoning and by precedent, and whose rulings are an open book. (See Bickel, The Morality of Consent (1975) p. 26 ["**Confined to a profession, the explication of [legal] principle is disciplined, imposing standards of analytical candor, rigor, and clarity.**"].) Lacking, as Alexander Hamilton wrote, "either the sword or the purse," the judiciary exists by virtue of "merely judgment." (Hamilton, The Federalist No. 78 (Rossiter ed. 1961) p. 465; **see also Scalia, The Rule of Law as a Law of Rules** (1989) 56 U. Chi. L. Rev. 1175.) **That is the essence of the judicial function; that is what is missing in this sui generis special proceeding over which we exercise an inherent authority.** (See, maj. opn., ante, passim.) **Judicial judgment — reasoned decisions, rather than decisions with reasons** — is the constitutional counter to the appetitive coordinate branches of government, implicit in the architecture of state as well as federal government."

54)     The Appellate Division opinion of May 19, 2021 stated that California Penal Code §396(f), California Government Code §8665 and Section 4024 of the "CARES Act" of March 26, 2020 and 15 U.S.C. §9058 are unenforceable and ignored the Sheriff Department refusing to wear protective masks in violation of California Government Code §26602,[25] and that they evicted tenants as Mr. Perry

---

[25]     California Government Code §26602: "**[T]he sheriff may execute all orders of the local health officer issued for the purpose of preventing the spread of any contagious or communicable disease.**"

on August 27, 2020 and intentionally infect him with Coronavirus that almost killed him.

55) California Assembly Bill (AB) 3088 enacted that litigating COVID-19 disputes in the small claims court under California Code of Civil Procedure ("CCP") §116.223(b)(4).[26] California Assembly Bill (AB) 3088: "[T]his bill would instead, until February 1, 2025, provide that a small claims court has jurisdiction in any action for recovery of COVID-19 rental debt, as defined, regardless of the amount demanded and would provide that a claim for recovery of a COVID-19 rental debt is exempt from the prohibition on filing more than 2 small claims actions described above." [Citation omitted].

## VI.   ALLEGATIONS[27]

### FIRST CLAIM FOR RELIEF

[Cause of Action Under 42 U.S.C. § 1983 And Injunctive Relief Against The California State Courts Pursuant to 28 U.S.C. §1651, With Declaratory, Equitable Relief For Deprivation of Rights And An Ultra Vires Claim Challenging The State of California Unlawful Detainer Courts In Depriving Mr. Perry Due Process And Equal Protection Under the 14th Amendment And In Violations of Federal Laws On The Moratorium Against Eviction Under Section 4024 of the CARES Act (15 U.S.C. §9058(b)&(c))[28] 28 U.S.C. §§1357; §1343(4); 2201 And 2202 California Penal Code §396(f), For Failing To Give Mr. Perry The 30 Days "Notice-To-Vacate" Before The Eviction on August 27, 2020 Violated Section 4024(b)&(c) Under The CARES Act (15 U.S.C. 9058(b)&(c)]. Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successes or/s; Landlord's Counsel Tania Kim Cardoso, And Law Firm Hollenbeck & Cardoso LLP]

56) Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 above through 288 inclusive, as though fully set forth herein.

---

[26]   **CCP. §116.223(b)(4)**: "[I]t is the intent of the Legislature that landlords of residential real property and their tenants have the option to litigate disputes regarding rent which is unpaid for the time period between March 1, 2020, and January 31, 2021, **in the small claims court**. It is the intent of the Legislature that the jurisdictional limits of the small claims court not apply to these disputes over COVID-19 rental debt."

[27]   FRCP. 8(d) Pleading To Be Concise And Direct; Alternative Statements; Inconsistency. (1) In General. Each allegation must be simple, concise, and direct. No technical form is required. (2) Alternative Statements of a Claim or Defense. **A party may set out 2 or more statements of a claim** or defense **alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.** (3) **Inconsistent Claims** or Defenses. **A party may state as many separate claims** or defenses **as it has, regardless of consistency**.

[28]   28 U.S.C. § 1658: Time limitations on the commencement of civil actions arising under Acts of Congress. (a) Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

57)     On March 27, 2020 Congress had passed the CARES Act, which here is the basis for federal question jurisdiction, and Mr. Perry's Complaint alleges facts establishing the basis 42 U.S.C. § 1983 and any implied cause of action under Section 4024 of the "CARES Act" (15 U.S.C. 9058(b)&(c)) can obviously be reasonably inferred the cause of action from Congress passing of RELIEF Act on August 10, 2020 (Bill S. 4519 (116 Congress)[29]).

58)     Mr. Perry alleges that California public officials in the State Courts are doing something they shouldn't, and refusing to do something that they should do, all in effort to make Parc Chateaux LLC. Win at any cost even if fraudulent.  The State of California superior Court in Chatsworth; the California Supreme Court; the Second Appellate Court of Appeal; and the Appellate Division of the Superior Court all engaged in wide spread procedural fraud and deception on the federal court system, and on Mr. Perry by using an electronic "**Letter of Transmittal-Remand To Superior Court (Ci**vil)" instead of waiting to the district court to mailed "**Certified**" Remand Order pursuant to 28 U.S.C. §1447(c), which was never mailed by the district court to this day, required that district court to issue injunctive relief against the State of California courts pursuant to 28 U.S.C. §1651.

59)     Additionally, the State the Appellate Division of the Superior Court partial reading and refused to failry address Mr. Perry's arguments and deceptive reading of California Penal Code §396(f)[30] and California Government Code §8665[31] was inapplicable to Mr. Perry, in order to mitigate Parc Chateaux and the Sheriff's deputies illegal   activities during emergencies as COVID-19, and the proclamations of state of emergency and against eviction made by California Governor Gavin Newsom and the President of the United Stated Donald J. Trump on March 1, 2020, and on March 4, 2020, do not

---

[29]     "**[T]he equities do not justify depriving the applicants of the District Court's judgment in their favor**. The moratorium has put the applicants, along with millions of landlords across the country, at risk of irreparable harm by depriving them of rent payments with no guarantee of eventual recovery. Despite the CDC's determination that landlords should bear a significant financial cost of the pandemic, many landlords have modest means. And preventing them from evicting tenants who breach their leases **intrudes on one of the most fundamental elements of property ownership—the right to exclude**. See _Loretto v. Teleprompter Manhattan CATV Corp_., 458 U. S. 419, 435 (1982)." [Citations omitted]

[30]     California Penal Code §396(f): "**[I]t is unlawful for a person, business, or other entity to evict any residential tenant of residential housing after the proclamation of a state of emergency declared by the President of the United States or the Governor,…,and for a period of 30 days following that proclamation or declaration, or any period that the proclamation or declaration is extended by the applicable authority"…."It shall not be a violation of this subdivision for a person, business, or other entity to continue an eviction process that was lawfully begun prior to the proclamation or declaration of emergency**."

[31]     California Government Code §8665: "[A]ny person who violates any of the provisions of this chapter or who refuses or willfully neglects to obey any lawful order or regulation promulgated or issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both such fine and imprisonment."  [Amended by Stats. 1983, Ch. 1092, Sec. 131. Effective September 27, 1983. Operative January 1, 1984, by Sec. 427 of Ch. 1092].

apply to Mr. Perry.

60) California Penal Code §396(f) prescribes: "**[a]nd for a period of 30 days following that proclamation or declaration, or any period that the proclamation or declaration is <u>extended</u> by the applicable authority**"; California Penal Code §396(f) was extended within the 30 days by the CARES Act of March 26, 2020. The state courts nevertheless entered a default and default judgment was on March 5, 2020 was contrary to the California Governor and the President proclamations of state of emergency was against evictions, and

61) The California Appellate Division court also claimed that "**<u>continue an eviction process</u>**" had **<u>BEGAN</u>** on January 9, 2020, at the filing and inception on the unlawful detainer proceeding, regardless of Mr. Perry was guilty of unlawful detainer or not.   But the California courts refused to hear or address Mr. Perry's appeal and writ petitions on the issue that the Sheriff's Department and the landlord had violated the 30 days "**<u>NOTICE-TO-VACATE</u>**" under Section 4024(b)&(c) of the CARES Act and 15 U.S.C. §9058(b)&(c) at the **<u>END</u>** of the "eviction process"  they regarded as a "post-appeal issues."   The State of California had exceeded their powers and jurisdiction by ignoring federal moratorium laws.

62) After Parc Chateaux LLC., had wrongly evicted Mr. Perry, they increased the rent for his two-bedroom, two-bath apartment from $1648 to $3877.

63) The harm caused to Mr. Perry by the Landlord Parc Chateaux LLC., and the Sheriff Department was an act and omission constituting willful and criminal misconduct, malicious, wanton, intentional, outrageous misconduct, indifference and endangerment of Plaintiff's Mr. Perry's life, intentional misconduct, and a conscious flagrant indifference to the rights or safety of Mr. Perry.

64) Defendants' unlawful actions were intentional, willful, malicious, and/or done with complete disregard to Mr. Perry, the Plaintiff's welfare, safety, health and rights to be free from deprivation of rights.

65) As a direct, legal and proximate result of the Parc Chateaux LLC.'s reprehensibility intentional discrimination, Plaintiff have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

66) As a direct, legal and proximate result of the intentional acts, Plaintiff had sustained, and will continue to sustain, economic and emotional injuries, plaintiff seeks injunctive, with declaratory relief and equitable relief against the California state courts pursuant to 28 U.S.C. §1651.

### SECOND CLAIM FOR RELIEF
[Right of Action Under The "RELIEF Act" S.4519 of August 10, 2020

("Rent Emergencies Leave Impacts on Evicted Families Act) For The Wrongful Eviction On August 27, 2020 Was In Violation of The CARES Act And The Notice-To-Vacate Requirements Under Section 4024 (15 U.S.C. 9058);[32] For Violation of The California Tenant Relief Act (CTRA)of September 1, 2020; Violation of Due Process Under California Constitution, Article I, Sections (1)&(4) And the Equal Protection Clause of the 14th Amendment to the United States Constitution For Depriving Mr. Perry's Rights As a HUD Tenant Under 42 U.S.C. § 1437d(k[33]) For A Trial De Novo Under 24 C.F.R. § 966.57 For A "Covered Tenant"[34], With Request For Injunctive[35], Declaratory, Equitable Relief And Monetary, Punitive Damages Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/s; The Los Angeles County Sheriff's Department, And The Los Angeles Superior

---

[32]    *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307 (E.D.N.Y. 2012), holding that because the plaintiffs' "ability to litigate their federal claims in the state court eviction proceeding [was] 'more theoretical than real,' and….the state court [was] unlikely to hear their federal claims," the Anti-Injunction Act and the Younger abstention doctrine did not prevent a federal district court from enjoining a state-court eviction proceeding.   **"[A]s set forth below, the Court finds that neither the Anti-Injunction Act, nor Younger abstention prevent the Court from enjoining the state court eviction proceeding.** Furthermore, while the Court finds that the Plaintiffs are not entitled to injunctive relief on their claims asserted pursuant to Section 1983, the Court finds that the Plaintiffs' have met the requisite standard for obtaining preliminary injunctive relief based on their claim that the IHA violated their rights under the FHA,…." [Citation omitted].

[33]    Landlord Parc Chateaux LLC., violation of Mr. Perry's housing rights under the United States Housing Act, 42 U.S.C. § 1437d(k). The United States Housing Act mirrors Goldberg's criteria, requiring HUD regulations to implement an administrative grievance procedure appeal provides six administrative steps afforded to tenants before landlord's eviction takes place. The federal HUD regulations elaborate upon the proper hearing procedures, in part requiring that "[a] grievance hearing shall be conducted by an impartial person or persons appointed by the PHA". 24 C.F.R. § 966.55(b)(1).

[34]    The Plaintiff has filed here also an application for a temporary restraining order and a preliminary injunction, along with his summons and complaint under the United States Housing Act, 42 U.S.C. § 1437d(k).

[35]    The federal Anti-Injunction Act provides that "[a] Court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This Act presents an absolute ban on enjoining any state court proceeding, unless the facts of the case bring the matter within one of the three narrowly construed exceptions. *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977); *Mitchum v. Foster*, 407 U.S. 225, 228–29, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972)"….."[A] federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area pre-empted by federal law, even when the interference is unmistakably clear. Rather, when a state proceeding presents a federal issue, even a preemption issue, the proper course is to seek resolution of that issue by the state court."
*Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 149–50, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988) (internal quotation marks and citations omitted). **The three excepted circumstances are (i) the express provisions of another act of Congress authorizing such an order; (ii) necessity in aid of the federal court's jurisdiction and (iii) the need to protect or effectuate the federal court's judgments."** *Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2d Cir.1990) (citing *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287–88, 90 S.Ct. 1739, 1743–44, 26 L.Ed.2d 234 (1970))." [Citations omitted]

<u>Court In Chatsworth, California.</u>]

67)     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 288 above inclusive, as though fully set forth herein.

68)     When Mr. Perry came back from Israel he was livid and he mailed his landlord a demand letter via USPS certified mail to remedy the loss of his vehicle, but the landlord ignored him.   The following months the landlord refused to answer Mr. Perry's questions the whereabouts of his vehicle and he lost his vehicle,

69)     Five months after Mr. Perry returned from his trip to Israel and after he paid all of his rent from August through December 2019, the landlord's manager Christina Romero retaliated when she all of a sudden increased Mr. Perry's rent by **$362** of five (5) months retroactive rent increase from August 2019-December 2019 after Mr. Perry already paid his rent, the landlord increase without giving prior notice to Mr. Perry.  But this happened after Mr. Perry had already paid all his rent for August-December 2019.

70)     When Mr. Perry requested a copy of the notice, the landlord's manager Christina Romero promised she will email Mr. Perry the notice but she never did.  Instead, while Mr. Perry was on a short business trip to Las Vegas, the landlord manager Christina Romero had filed a summary proceeding (unlawful detainer) against Mr. Perry on January 9, 2020, asking for forfeiture of rights without due process of the HUD lease agreement[36] based on $362 in 5 months of "**unpaid**" retroactive rent, while knowing Mr. Perry already paid his for the five for those same months.

71)     Thus, the California Supreme Court ignoring and refusing to address Mr. Perry's claims under section 4024 of the "CARES Act" (15 U.S.C. 9058), the California Tenant Relief Act (CTRA) of September 1, 2020, and the "RELIEF Act" S.4519 of August 10, 2020 ("Rent Emergencies Leave Impacts on Evicted Families Act").

72)     Mr. Perry lived in a HUD in Parc Chateaux Apartments a "**Covered Dwelling**" as a "**Covered Tenant**" for one the state courts refused to comply or address their violations of the section 4024 of the "CARES Act" (15 U.S.C. 9058) and as extended by state and federal moratorium on evictions].

73)     Mr. Perry, wherein Defendants would provide him the sewer charges based on the RUBS formula as stated in the Utility Addendum, part of the.  But Cross-Defendants NP Parc Chateaux, LLC.,

---

[36]     See Urban Institute, "The CARES Act Eviction Moratorium Covers All Federally Financed Rentals—That's One in Four US Rental Units," UrbanWire (Apr. 2, 2020), on-line at: https://www.urban.org/urban-wire/cares-act-evictionmoratorium-covers-all-federally-financed-rentals-thats-one-four-us-rental-units.

(ALLRESCO) refused to provide the RUBS accounting and instead only showed Mr. Perry a total of sewer tax they paid for the year.  When Mr. Perry requested a copy of the sewer tax Parc Chateaux paid, they refused to provide it to him.

77)    On August 27, 2020 four Sheriff Department deputies (***names unknown***) along with Parc Chateaux maintenance person "***Kevin***" had violently kicked, hit and bent Mr. Perry's metal front door. "***Kevin***" drilled Mr. Perry's front door locks and all the defendants broke Mr. Perry's door and upon entering his resident they violently twisted his arms from both sides and escorted him out of his home with only a T-shirt and shorts.  Both "***Kevin***" and two of the four Sheriff deputies did not wear protective masks.  During the violent eviction, the defendants "***Kevin***" and the unmasked Sheriff deputues maliciously infected Mr. Perry with COVID-19, Coronavirus that made him gravely ill, had infected Mr. Perry liver and infected his heart with Myocarditis[37] that it made him gravely ill that it almost killed him.

78)    The months before August 27, 2020, the Sheriff's Departments had publically advertised their refusal to wear protective masks was advertised on the new media.  The  Sheriff Department deputies refused to yield to warning by the **Los Angeles Inspector General Max Huntsman's** letter of August 21, 2020 to wear protective masks.

79)    As a direct, legal and proximate result of the intentional acts, Plaintiff had sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.  Plaintiff is entitled to a trial de novo under 24 C.F.R. § 966.57 to raise all legal and equitable defenses, including the constitutional due process and federal claims.[38]

80)    Plaintiff is entitled to a reasonable punitive damages in the amount of $100,000,000[39] for pain and suffering, for mental anguish and for loss of earnings, , attorneys' fees if obtained, and the costs of the suit.

### THIRD CLAIM FOR RELIEF
[A Cause of Action Under 42 U.S.C. § 1983 For Procedural Fraud[40] of Due Process Against The Landlord (Parc Chateaux LLC, and Any

---

[37]    Myocarditis infection is an inflammation of the heart muscle.  Myocarditis is also common after COVID-19 infection than vaccination.   COVID-19 as a Possible Cause of Myocarditis and Pericarditis. https://www.acc.org/latest-in-cardiology/articles/2021/02/05/19/37/covid-19-as-a-possible-cause-of-myocarditis-and-pericarditis.
Read  more: https://www.newscientist.com/article/mg25133462-800-myocarditis-is-more-common-after-covid-19-infection-than-vaccination/#ixzz78YSSWQtT.
[38]    "[T]he only possible exception would be if the housing court determined that it was entitled to conduct a trial de novo under 24 C.F.R. § 966.57, in which case the Plaintiffs would be entitled to raise all legal and equitable defenses, including the constitutional due process and federal claims raised here. Although the Court has already held that § 966.57(c) permits the Plaintiffs to assert their federal claims in this court, whether and to what extent they are entitled to raise those claims in the pending state proceeding is for the state court to decide." [Citation omitted].
[39]

Managing Company, And Other Successesor/s, And Their Counsel Tania Kim Cardoso, Along With The State of California Superior Court In Chatsworth Judge Tricia Taylor, And The State of California Supreme Court By Prematurely "Grabbing" Jurisdiction From The District Court On February 21, 2020 Based Only On A "Transmittal Letter of Remand" Instead of "Certified" Remand Order 28 U.S.C. §1447(c)]

81)     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 288 above inclusive, as though fully set forth herein.

82)     Plaintiff Mr. Perry alleged that Parc Chateaux perpetrated fraud upon him by his landlord NP Parc Chateaux, LLC., his landlord's complaint, alleging he did not pay rent from September 2019 through December 2019 to commit a fraudulent eviction of Mr. Perry as a tenant from a HUD affordable housing and rent-controlled apartment to circumvent tenant's rights to his contractual rights because the landlord is retaliated against Mr. Perry by filing a frivolous and malicious unlawful detainer that asserted false and misleading accusations.

83)     The basis of the tenant's action was the fraudulent eviction, but also fraud on the courts, not only the unlawful detainer action, which does not concern possession buy is solely and incorrectly for nonpayment of rent after Mr. Perry had already made his rent payments for the alleged months. [*Clark v. Mazgani* (2009) 170 CA4th 1281, 1286-1290.] But also violation of federal laws during the COVID-19 pandemic.  See the "RELIEF ACT" S.4519 of August 10, 2020 providing tenants a Private Right of Action) Is remedied under the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983, California Senate Bill 3088.

84)     On February 21, 2020 NP Parc Chateaux, LLC., and their counsel Tania Kim Cardoso committed more procedural fraud[41] in violation of federal laws and along with the State of California

---

[40]     See generally *Mathews v. Eldridge*, 424 U.S. 319, 344 (1976) ("procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions").  In order to successfully establish a prima facie case for a procedural due process violation, a plaintiff must show that: (1) there has been a deprivation of the plaintiff's liberty or property, and (2) the procedures used by the defendants and the state courts to remedy the deprivation were constitutionally inadequate. See also *United States v. Estate of Stonehill*, 660 F.3d, 415, 444 (9th Cir. 2011) [holding that procedural fraud of due process is harmful to the integrity of the judicial process].

"[A]t the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir.1998). The focus is on the remedial process, not the government's actions that allegedly deprived the plaintiff of his liberty or property interest. See *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "[C]ertain attributes of "property" interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id.

[41]     See generally *Deitrick v. Greaney*, 309 U.S. 190, 196 (1940) ("It is a principle of the widest application that equity will not permit one to rely on his own wrongful act, as against those affected by it

Superior Court they had intentionally and prematurely "**grabbed**" jurisdiction from the United States District Court on February 21, 2020 based only on a electronic "**Letter of Transmittal-Remand To Superior Court (Ci**vil)" instead of waiting to the district court to mailed "**Certified**" Remand Order pursuant to 28 U.S.C. §1447(c), which was never mailed by the district court to this day.  See *United States v. Estate of Stonehill*, 660 F.3d, 415, 444 (9th Cir. 2011).[42]

85)    The State Court having received only the letter of transmittal of remand February 21, 2020 never served Mr. Perry until NP Parc Chateaux, LLC.'s counsel Tania Kim Cardoso filed s ex parte notice of February 25, 2020 enclosed within it exhibits the letter of transmittal of remand without a "Certified" remand Order.  The defendants prejudiced Mr. Perry as he was caught by surprise from the fraud.  Such procedural fraud is also harmful to the integrity of the judicial process. See United *States v. Estate of Stonehill*, 660 F.3d, 415, 444 (9th Cir. 2011).[43]

86)    The defendants intentionally committed the procedural fraud[44] of due process along with the California state courts manifest injustice flagrantly violated 28 U.S.C. §1447(c), enabled NP Parc

---

but who have not participated in it, to … defeat a remedy which except for his misconduct would not be available.").

[42]    See *United States v. Estate of Stonehill* 660 F.3d, 415, 444 (9th Cir. 2011): "[T]he inquiry as to whether a judgment should be set aside for fraud upon the court under Rule 60(b) focuses not so much in terms of whether the alleged fraud prejudiced the opposing party but more in terms of whether the alleged fraud harms the integrity of the judicial process"…."In re Intermagnetics America, Inc., 926 F.2d 912, 917 (9th Cir.1991)." "Fraud on the court" should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a **fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication."…."[I]n order to show fraud on the court, Taxpayers must demonstrate, by clear and convincing evidence, an effort by the government to prevent the judicial process from functioning "in the usual manner." They must show more than perjury or nondisclosure of evidence, unless that perjury or nondisclosure was so fundamental that it undermined the workings of the adversary process itself.**

[43]    See *United States v. Estate of Stonehill* 660 F.3d, 415, 444 (9th Cir. 2011): "[T]he inquiry as to whether a judgment should be set aside for fraud upon the court under Rule 60(b) focuses not so much in terms of whether the alleged fraud prejudiced the opposing party but more in terms of whether the alleged fraud harms the integrity of the judicial process…. In re Intermagnetics America, Inc., 926 F.2d 912, 917 (9th Cir.1991)." "Fraud on the court" should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a **fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication."…."[I]n order to show fraud on the court, Taxpayers must demonstrate, by clear and convincing evidence, an effort by the government to prevent the judicial process from functioning "in the usual manner." They must show more than perjury or nondisclosure of evidence, unless that perjury or nondisclosure was so fundamental that it undermined the workings of the adversary process itself.**"

[44]    The United States Courts afford procedural protection to pro se as it does affords to attorneys. See the Ninth Circuit in *Jacobsen v. Filler*, 790 F.2d 1362, 1369 (9th Circuit 1985) (Reinhardt, dissenting) ["**Affording pro se litigants the procedural protection of the court serves the interest not only of the litigants but also of the court itself**" because "**courts, no less than the parties to a dispute, have an interest in the quality of justice.**"]

Chateaux, LLC.'s counsel Tania Kim Cardoso, and the state court to prematurely grab jurisdiction from the district court and issue a fraudulent, void default, default judgment and a writ of eviction.

84) This procedural fraud severely prejudiced Mr. Perry when the state court lacking jurisdiction had entered a fraudulent default and default judgment and an illegal eviction of August 27, 2020.

85) The harm caused to Mr. Perry by the Landlord Parc Chateaux LLC., and the Sheriff Department was an act and omission constituting willful and criminal misconduct, malicious, wanton, intentional, outrageous misconduct, indifference and endangerment of Plaintiff's Mr. Perry's life, intentional misconduct, and a conscious flagrant indifference to the rights or safety of Mr. Perry that was harmed by the Sheriff Department.

86) Defendants' unlawful actions were intentional, willful, malicious, and/or done with complete disregard to Mr. Perry, the Plaintiff's civil rights, welfare, safety, health and rights to be free from deprivation of rights.

87) As a direct, legal and proximate result of the Parc Chateaux LLC.'s reprehensibility intentional procedural fraud of due process in violating federal removal laws, Plaintiff have sustained, and will continue to sustain, economic and emotional injuries, resulting in punitive damages of $100,000,000.

## **FOURTH CLAIM FOR RELIEF**

[For Breach of Contract; Lack of Proper Notice In Violation of Due Process And Civil Rights[45] Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successor/s.]

88) Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 288 above inclusive, as though fully set forth herein.

89) Defendants NP Parc Chateaux, LLC., (ALLRESCO) entered into a written lease agreement of August 9, 2016.

---

[45]     *Lindsey v. Normet*, 405 U.S. 56 (1972) Underlying appellants' claim is the assumption that they are denied due process of law"…"[T]he Constitution has not federalized the substantive law of landlord-tenant relations,"…"[I]n other jurisdictions, these claims, if cognizable at all, must be litigated in separate tort, contract, or civil rights suits."…"[B]ut this feudal notion of landlord-tenant law -- rooted in the special needs of an agrarian society has not been a realistic approach to landlord-tenant law for many years, [Footnote 2/13] and has been replaced by what eminent authorities have described as "a **predominately contractual"** analysis of leasehold interests. [Footnote 2/14] This led Judge Wright, in *Javins v. First National Realty Corp*., 138 U.S.App.D.C. at 373, 428 F.2d at 1075, to hold "**that leases of urban dwelling units should be interpreted and construed like any other contract**." Oregon takes the same view, and treats a lease as a contract. *Wright v. Baumann*, 239 Ore. 410, 398 P.2d 119; *Eggen v. Wetterborg*, 193 Ore. 145, 237 P.2d 970.

90)     On July 2, 2019, Mr. Perry mailed the landlord a certified mail informing them that in two weeks he is be leaving on a disability retreat in Israel on July 27, 2019, 2007.

91)     Mr. Perry wrote a letter he mailed by a certified mail to the landlord about his trip to Israel and included it with his August rent payment and he paid **$50** in a check for carport space **#410**.  Mr. Perry then parked his blue-gray 2007 all equipped automatic luxury Range Rover.[46]   A day after Mr. Perry left to LAX and flew to Israel on July 27, 2019 the landlord Parc Chateaux harassed and retaliated against Mr. Perry by towing his 2007 Range Rover vehicle without calling the police, even after he already paid for a carport **#410**.

92)     Without prior notice before Mr. Perry left for his vacation/disability retreat in Israel the landlord Parc Chateaux LLC., manager Christina Romero failed to provide Mr. Perry's notice[47]before he left to Israel, and she began her mischief after she assigned Mr. Perry carport # 410 to park his Range Rover.  See *Jones v. Flowers*, 547 U.S. 220, 230, (2006) at 230 (knowledge that notice pursuant to normal procedure is ineffective triggers obligation to take additional steps to effect notice.).

93)     While In Israel, Parc Chateaux's manager Christina Romero email had states that carport #410 belonged to another tenant who was about to move out from Parc Chateaux apartment.  But Christina knew Mr. Perry was assigned by her staff the carport and was already in Israel and couldn't remove his vehicle.

94)     So, Christina demanded by email that Mr. Perry remove his vehicle.  Mr. Perry could not remove his vehicle and he asked her to move his car or tow it to another carport, or give the other tenant who was already about to leave an alternate carport parking for the few days.  But Christina refused and ordered a towing company to tow Mr. Perry vehicle from the complex.

---

[46]     The Ninth Circuit requires "proper standing to contest a forfeiture both as a statutory matter and as an Article III and prudential requirement." *United States v. One 1985 Cadillac Seville*, 866 F .2d 1142, 1148 (9th Cir.1989); but see, U.S. v. $57,790 in U.S. Currency, 184 Fed.Appx. 604, 605 (9th Cir. 2006) (**"standing" in forfeiture actions not synonymous with Article III standing**). "The claimant has the burden of establishing, by a preponderance of the evidence, that he has an interest in the property." *U.S. v. Real Property Located at Section 18*, 976 F.2d 515, 520 (9th Cir. 1992), citing *U.S. v. One Parcel of Land*, 902 F.2d 1443, 1444 (9th Cir. 1990). "This interest need not be an ownership interest; it can be any type of interest, including a possessory interest. See $122,043.00 [*United States v. $122,043.00 in United States Currency*, 792 F.2d 1470, 1473 (9th Cir.1986)] 792 F.2d at 1473; *United States v. 1982 Sanger 24' Spectra Boat*, 738 F.2d 1043, 1046 (9th Cir.1984) ('It is not necessary therefore that a claimant under the forfeiture statute allege ownership. A lesser property interest such as possession creates standing.') (citing *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984))." United States v. $191,910.00 in U.S. Currency, 16 F.3d.

[47]     See *Jones v. Flowers*, 547 U.S. 220, 230, (2006) ("In prior cases, we have required the government to consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case."), discussing *Robinson v. Hanrahan*, 409 U.S. 38, 40 (1972) (notice of vehicle forfeiture proceeding sent to owner's home address was inadequate when State knew owner was in prison).

95)     Defendants' unlawful actions were intentional, willful, malicious, and/or done with complete disregard to Mr. Perry, the Plaintiff's property rights, and rights to be free from deprivation of rights.

96)     As a direct, legal and proximate result of the Parc Chateaux LLC.'s reprehensibility intentional procedural fraud of the towing Mr. Perry incurred thousands of dollars in various towing fees and storage fees he could not afford, causing Mr. Perry to lose his Range Rover valued at **$18,985** (Bluebook). Plaintiff had sustained, and will continue to sustain, economic and emotional injuries, resulting in an award for punitive damages of $100,000,000, and exemplary damages to be determined by a jury or the court, plus any special, actual, damages.

**FIFTH CLAIM FOR RELIEF**

[A Cause of Action Against The Landlord Parc Chateaux LLC.[48] In Special Relationship[49] With Los Angeles Sheriff's Department Had Both Caused Endangerment of Mr. Perry's Life, Health And Safety By Infecting Him With COVID-19, Coronavirus That Made Him Gravely Ill That It Almost Killed Him During The Eviction on August 27, 2020; The Sheriff Department Violation of Cal. Gov. Code §26602[50] In violation of The

---

[48]     "[L]essors also have the duty to take reasonable steps to prevent injury when the landowner knows of a dangerous situation,.. (_Leakes v. Shamoun_ (1986) 187 Cal.App.3d 772, 776 [ 232 Cal.Rptr. 171]; see e.g., _Uccello v. Laudenslayer,_ supra, 44 Cal.App.3d 504 [a landlord is liable for third persons injured by a dog if the landlord knows the tenant is going to keep a vicious dog on the premises and the landlord has the right to reenter the premises]; _Rosales v. Stewart,_ supra, 113 Cal.App.3d 130 [if the landlord knows his tenant is going to use the rented property as a firing range the landlord may be liable to third persons injured by a bullet].)" [_Mora v. Baker Commodities, Inc._, 210 Cal.App.3d 771, 258 Cal. Rptr. 669 (Cal. Ct. App. 1989) at p. 781, internal citations omitted; "The existence of the landlord's duty to others to maintain the property in a reasonably safe condition is a question of law for the court."

(_Johnson v. Prasad_ (2014) 224 Cal.App.4th 74, 79 [168 Cal.Rptr.3d 196]; "The reasonableness of a landlord's conduct under all the circumstances is for the jury. A triable issue of fact exists as to whether the defendants' maintenance of a low, open, unguarded window in a common hallway where they knew young children were likely to play constituted a breach of their duty to take reasonable precautions to prevent children falling out of the window." (_Amos v. Alpha Prop. Mgmt._ (1999) 73 Cal.App.4th 895, 904 [87 Cal.Rptr.2d 34], internal citation omitted.)

[49]     The Supreme Court has held that "[t]he relationship between a common carrier and its passengers is…a special relationship." (_Lopez v. Southern Cal. Rapid Transit Dist._ (1985) 40 Cal.3d 780, 789 [221 Cal.Rptr. 840, 710 P.2d 907].)

[50]     California Government Code §26602: "The sheriff shall prevent and suppress any affrays, breaches of the peace, riots, and insurrections that come to his or her knowledge, and investigate public offenses which have been committed. **The sheriff may execute all orders of the local health officer issued for the purpose of preventing the spread of any contagious or communicable disease."** Although state may enforce quarantine laws, it the state failed to properly enforce the, the federal court may take over to secure the safety and health of the public.

See _Compagnie Francaise de Navigation a Vapeur v. State Board of Health_, 186 U.S. 380, 387 (1902): ["That from an early day the power of the states to enact and enforce quarantine laws for the safety and the protection of the health of their inhabitants has been recognized by Congress is beyond the question. **That until Congress has exercised its power on the subject, such state quarantine laws and state laws for the purpose of preventing, eradicating, or controlling the spread of contagious or infectious diseases, are not repugnant to the Constitution of the United States,** although their operation affects interstate or foreign commerce, is not an open question"].

CARES Act And The Housing Act of 1937 42 U.S.C. §§1437-137r (1987)[51] Against The Landlord (Parc Chateaux LLC, and Any Managing Company, And Other Successesor/s.]

97)     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 288 above inclusive, as though fully set forth herein.

98)     Plaintiffs wholly explain the supervisorial role of any of the named Defendants and make any allegations of direct participation.  Each and every defendant have a direct involvement necessary to sustain supervisorial liability under section 1983.[52]

99)     Parc Chateaux LLC., their managers Christina Romero; Parc Chateaux LLC.,'S Maintenance Person "*Kevin*" and their attorney Tania Kim Cardoso had acted culpability and deliberate indifference had controlled the wrongful eviction on August 27, 2020, they acted consciously and knowingly[53] with total disregard to the safety and health of Mr. Perry,[54] in spite of the foreseeability[55] of

---

See *United States v. Carolene Products Co.*, 304 U.S. 144, 58 S. Ct. 778, 82 L. Ed. 1234 (1938) citing in *Carolene Products Co. v. Evaporated Milk Ass'n*, 93 F.2d 202 (7th Cir. 1938):  **["W]hile the police power is ordinarily said to be reserved by the states, it is obvious that it extends fully likewise to the federal government in so far as that government acts within its constitutional jurisdiction…The police power referred to extends to all the great public needs…Its dimensions are identical with the dimensions of the government's duty to protect and promote the public welfare."…**"[T]he police power referred to "extends to all the great public needs. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare." *Noble State Bank v. Haskell*, 219 U.S. 104, 31 S.Ct. 186, 55 L.Ed. 112, 32 L.R.A., N.S., 1062, Ann.Cas. 1912A, 487. Its "dimensions are identical with the dimensions of the government's duty to protect and promote the public welfare. The measure of police power must square with the measure of public necessity." It is beyond question, therefore, that the enactment of the law was within the power of Congress unless it is unreasonable and arbitrary. **We may not inquire into the motives of Congress**, *Hamilton v. Kentucky Distilleries Co.*, 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194 **or, in the absence of doubt as to its reasonableness, the wisdom of legislation or the necessity for the exercise of legislative power, the existence of which is beyond doubt, Lottery Case, supra.**" (Internal citations omitted).]
[51]  42 U.S.C. §9902 Definitions.
[52]  "Although there is no pure respondeat superior liability under § 1983, a supervisor [may be held] liable for the constitutional violations of subordinates **'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'**" *Hydrick v. Hunter*, 500 F.3d at 988 (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).
[53]    In *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 927 (1982). plaintiffs shows that the Defendants acted under color of state law. *Howerton v. Garcia*, 708 F. 2d 380, 382 (9th Cir. 1983). "**Actions taken by private individuals may be `under color of state law' where there is `significant' state involvement in the action.** Id.
[54]    The foreseeability of injury when considered along with various other policy considerations such as the extent of the burden to the defendants and consequences to the community of imposing a duty to remedy such danger may lead to the legal conclusion that the defendant 'owes a duty of due care "**to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous.**" ' "(Osborn, supra, 224 Cal.App.3d at p. 121, internal citation omitted.) *Kwaitkowski v. Superior Trading Co.*, 123 Cal.App.3d 324, 176 Cal. Rptr. 494 (Cal. Ct. App. 1981): **"[J]ustice Christian held that the landlord's action or failure to act was the proximate cause of the tenant's injury,…"** Relying on *Kline v. 1500 Massachusetts Avenue Apartment Corp*. (D.C. Cir.

injury or death from COVID-19 Coronavirus infection, the landlord purposely put Mr. Perry in imminent danger[56] by calling on the Sheriff deputies to evict Mr. Perry from his home August 27, 2020.  During the eviction Landlord also helped and contributes to the Sheriff Department breaking Mr. Perry's metal front door.

100)   The Los Angeles Sheriff Department had also publically advertised their refusal to wear protective masks, had caused Mr. Perry to be infected with COVID-19, Coronavirus during the eviction that made him gravely ill, endanger his life and that it almost killed him.

101)   As a result of the infection on August 27, 2020 eviction, Mr. Perry developed symptoms of Coronavirus in first two weeks, and endured hardship and suffered weeks of grave Coronavirus sickness, and fear of threat to his life.  The first sign was diarrhea, fever, chills, severe coughing, sore throat; congestion, runny nose; nausea; tightening of his chest; shortness of breath  difficulty breathing; persistent, stubbing pain in the left upper side of his chest and his heart, with constant pressure in his chest; fatigue;  body aches and muscle aches head to toe, back, legs, arms, and pain in his stomach, internal organs; headaches, migraines, loss of taste or smell, bleared vision, he lost close to 40 pounds of his weight.

102)   Defendants did not exercise at all any reasonable care to prevent the endangerment of Mr. Perry and exposure to COVID-19, Coronavirus, and they did not at all worked promptly correct the behavior that caused Mr. Perry to be infected with COVID-19, Coronavirus that made Mr. Perry gravely

---

1970) 439 F.2d 477, held that, in an urban residential context, the landlord-tenant relationship gives rise to liability under circumstances where landlords have failed to take reasonable steps to protect the tenants from criminal activity"..."[I]n *Totten v. More Oakland Residential Housing, Inc* (1976) 63 Cal.App.3d 538, 543 [134 Cal.Rptr. 29], at page 546, we noted that where there is a special relationship between the parties, there is a "common law duty to protect against the criminal attack of third persons."

See *Kwaitkowski v. Superior Trading Co*., 123 Cal.App.3d 324, 176 Cal. Rptr. 494 (Cal. Ct. App. 1981): "[R]elying on Restatement Second of Torts, section 302B, this court in O'Hara, supra, noted at page 804, that the criminal act of a third person is a superseding cause **unless the landlord actor at the time of his negligent conduct realized or should have realized the likelihood that his conduct created an opportunity for the commission of crimes** and that a third person might avail himself of the opportunity, relying on Restatement Second of Torts, sections 448 and 449, set forth below, so far as pertinent.

[55]   "[I]t is foreseeable that even an obvious danger may cause injury, if the practical necessity of encountering the danger, when weighed against the apparent risk involved, is such that under the circumstances, a person might choose to encounter the danger. The foreseeability of injury, in turn, when considered along with various other policy considerations such as the extent of the burden to the defendant and consequences to the community of imposing a duty to remedy such danger may lead to the legal conclusion that the defendant 'owes a duty of due care "to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous." ' ". (Osborn, supra, 224 Cal.App.3d at p. 121, internal citation omitted.)

[56]   The "relative culpability" of the parties— i.e., which party created the dangerous situation and which party is more innocent— may also be considered in determining the reasonableness of the force used. Espinosa v. City & County of San Francisco, 598 F.3d 528, 537 (9th Cir. 2010) (citing Scott, 550 U.S. at 384).

ill that it almost killed him.

103)   More so, because the sheriff department deputies had previously publically advertised their refusal to wear protective masks.[57] "LA County sheriff's deputies aren't wearing masks as required, inspector general says Los Angeles County sheriff's deputies aren't following public health orders that require them to wear masks on the job, the Office of Inspector General warned Monday."Tuesday, August 25, 2020.   https://abc7.com/los-angeles-county-sheriffs-deputies-la-sheriff-lasd-office-of-inspector-general/6388263/.   "Los Angeles Sheriff's Department won't enforce county mask mandate", By Tori B. Powell, July 17, 2021 / 3:14 Pm / CBS News. https://www.cbsnews.com/news/los-angeles-county-sheriff-mask-mandate-covid/.[58]

104)   The Los Angeles Sheriff deputies asymptomatic not wear protective masks had nevertheless violently infected Mr. Perry with COVID-19 Coronavirus, while evicting him from his home on August 27, 2020.   It would not take a genius that such predicament would occur by the Sheriff's deputies infecting and likely killing innocent tenants.

105)   The harm caused to Mr. Perry by the defendants and the Sheriff Department was an act and omission constituting willful and criminal misconduct, malicious, wanton, intentional, outrageous misconduct, indifference and endangerment of Mr. Perry's life, intentional misconduct, and a conscious flagrant indifference to the rights or safety of Mr. Perry.

106)   As a direct result of Defendants' action and proximate result of the infecting Mr. Perry with COVID-19, Coronavirus, Plaintiff had sustain health problems and will continue to suffer physical damages and emotional distress, resulting in economic and emotional and physical injuries for punitive damages in an amount to be proven at trial.

---

[57]     *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9thCir. 2008) at 1210. If reasonable jurors could believe that the defendant violated the plaintiff's constitutional right, and the right at issue was clearly established, the case should proceed to trial. Id.; see also *LaLonde v. County of Riverside*, 204 F.3d 947, 953 (9th Cir. 2000) ("If…there is a material dispute as to the facts regarding what the officer or the plaintiff actually did, the case must proceed to trial, before a jury if requested."). "Though we may excuse the reasonable officer for…a mistake, it sometimes proves necessary for a jury to determine first whether the mistake, was, in fact, reasonable." *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1168 (9th Cir. 2013) (citations omitted); see also *Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003) (explaining that if determining reasonableness of officer's action depends on disputed issues of fact—i.e., which version of facts is accepted by jury—this is question of fact best resolved by jury). When a case proceeds to trial, qualified immunity is no longer an "immunity from suit"; rather, it effectively becomes a defense. Torres, 548 F.3d at 1211 n. 9.
[58]     "[A] court may take judicial notice of public records, government documents, judicial opinions, municipal ordinances, newspaper and magazine articles, and the contents of websites. See, e.g., *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 259 n.2 (9th Cir. 2013); *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012); *Tollis, Inc. v. City of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007); *United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994); *Heidelberg, Inc. v. PM Lithographers, In*c., No. 17-CV-02223-AB-AJWx (C.D. Cal. 2017); *U.S. ex rel. Modglin v. DJO Glob., Inc.*, 114 F. Supp. 3d 993, 1008 (C.D. Cal. 2015)."

107)   Defendants' unlawful actions were intentional, willful, malicious, and done with total disregard to Plaintiff' right for equal protection of the laws and to be free from discrimination of application of federal laws based on national origin.

108)   Plaintiff is entitled to their reasonable punitive damages, for loss of earnings, for pain and suffering, for mental anguish, attorneys' fees if obtained, and costs of suit.

109)   As a direct, legal and proximate result of the harm, Plaintiff had sustained over $132,875 in economic, compensatory damages from all the defendants for Mr. Perry's soon to be 1 year of hotel rental expenses, outside food expenses, storage expenses for his belonging, and for other expenses that he will continue to sustain, to be proven at trial.

110)   Plaintiff further seeks reasonable punitive damages in the amount of $100,000,000 for endangering Mr. Perry's life, health and safety by infecting him with  COVID-19, Coronavirus that made him gravely ill that it almost killed him during the eviction on August 27, 2020, for pain and suffering; for loss of earnings and for special compensatory damages; for mental anguish is entitled to liquidated damages for all those willful violations, as well as other compensation for violation of the CARES Act and 15 U.S.C. §9058 and for violation of the HUD Affordable Housing lease agreement jhe signed with Parc Chateaux LLC. Plaintiff also seeks for all other injunctive, declaratory, and monetary relief available for the violations at trial 28 U.S.C. § 1651.

## SIXTH CLAIM FOR RELIEF

[Violation of Civil Rights And 42 U.S.C. § 1983 And An Ex Parte Young Action Agasint The California Supreme For Depriving Mr. Perry's Rights To Defend  Himself Under the Equal Protection Clause of the 14th Amendment to the United States Constitution And California Constitution, Article I, Section (1) In Any State Court. Mr. Perry Is Entitled To Obtain Any Relief, Injunctive With Declaratory, Equitable Relief Against The California State Supreme Court Pursuant to 28 U.S.C. §1651 After They Forced Him As Defendant Under Cal. Code. of Civ. Proc. §391.7 (§§ 391 et. seq) To File Form "VL-110 Request To File New Litigation By Vexatious Litigant" That Was Intended To A Plaintiff.]

111)   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 288 above inclusive, as though fully set forth herein.

112)   42 U.S.C. § 1983 which provides a cause of action to a party subjected to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law in the wrongful application of a state's statute Cal. Code. of Civ. Proc. (CCP.)  § 391.7 (§§ 391 et. seq).   In regard to Mr. Perry's allegation under 42 U.S.C. § 1983 action

is "**ripe**" agasint the State of California Suptreme Court by the improper use of .  (See the Ninth Circuit in *Wolfe v. George*, 486 F.3d 1120 (9th Cir. 2007)).[59]

113)   When Mr. Perry explained to the California Supreme and Second Distrct Court of Appeal that he is a defendant, they forced him  by letter (mailed or emailed) to first file form "**VL-110 Request to File New Litigation by Vexatious Litigant**" under CCP. § 391.7 that was clearly designed and intended to plaintiffs vexatious litigants.  But when Mr. Perry submitted form VL-110 to the California Supreme Court, they would always deny form VL-110 asking for writ relief as lacking merits.

114)   To conceal their malicious intents the California Supreme and Second District Court of Appeal used letters instead of "<u>**Orders**</u>" demanding Mr. Perry first file form "<u>VL-110 Request to File New Litigation by Vexatious Litigant</u>" under CCP. § 391.7.  However, such letters by the California courts are construed as orders. See the United States Supreme Court's held in *BP P.L.C. v. Mayor And City Council of Baltimore* (19-1189, 05-17-2021) decided May 17, 2021:

> "**[T]o our minds, the first telling clue lies in the statute's use of the term "<u>order</u>." Whether we look to the time of §1447(d)'s adoption or amendment, a judicial "order" meant then what it means today: a "written direction or command delivered by…a court or judge."[1]**"

> 1   Black's Law Dictionary 1322 (11th ed. 2019); see also id., at 1206 (9th ed. 2009); id., at 1247 (rev. 4th ed. 1968) ("**Every direction of a court or judge made or entered in writing, and not included in a judgment**"); id., at 1247 (4th ed. 1951) (same); id., at 1298 (3d ed. 1933) (same)."

115)   The California Supreme had violated Mr. Perry's civil rights and any declaratory decree guaranteed to him under California Constitution, Article I, Sections (1)&(4) and the Due Process And Equal Protection Clause of the 14th Amendment to the United States Constitution. The California Supreme Court discriminatory and malicious use of CCP. § 391.7 against Mr. Perry as a defendant was meant to stop Mr. Perry's ability to defend himself in any California state court.  California Supreme and Court of Appeal violated California Constitution, Article I, Section (3)(b)(2)[60] by broadly construing CCP. § 391.7 to limit Mr. Perry's the right of access to the courts.[61]

---

[59]   *Wolfe v. George*, 486 F.3d 1120 (9th Cir. 2007) "**[W]e concluded that Wolfe had standing and a ripe dispute**, even though no vexatious litigant order applied to him when he sued, because his history of lawsuits and the recently rescinded pre-filing order showed **that he was sufficiently likely to be subjected to such an order again.**5  We concluded that most of the defendants Wolfe had sued enjoyed sovereign immunity, but he nevertheless could, despite the Eleventh Amendment, **seek declaratory and injunctive relief against both the Chief Justice of the California Supreme Court and the California official who administered vexatious litigant order**s, in their official capacitie**s.6**"

[60]   California Constitution, Article I, Section (1): "**All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty**, acquiring,

116)    See _Murphy v. Ross_, Civil Action No. 3:14cv870 (E.D. Va. Apr. 14, 2015): "[F]irst, in the context of section 1983, "a declaratory decree refers to an order directing a particular judicial officer to take or refrain from taking a particular action in a particular dispute." _Puiia v. Cross_, No. 12-CV-54-PB, 2012 WL 3257824, at *3 (D.N.H. Aug. 8, 2012)." [Citation omitted].  The California Supreme Court Supreme and Second District Court of Appeal engaged in intentional procedural fraud of due process and discrimination was motivated racial or ethnic discrimination against Mr. Perry who is Jewish, Israeli-American.

117)    See _Williamson County_, 473 U.S. at 182; _Moore v. Urquhart_, 899 F. 3d 1094 (2018) holding that "[a]ctions under _Ex parte Young_ can be brought against both state and county officials."…"[E]x Parte Young requires "a connection between the official sued and enforcement of the allegedly unconstitutional statute" and "a threat of enforcement."…"[i]njunctive relief shall not be granted **unless** a declaratory decree was violated or declaratory relief was unavailable." [Citations omitted].  By ignoring that his eviction as a HUD "**Covered Tenant**" for one who lived in Parc Chateaux Apartments a "**Covered Dwelling**" the state courts refused to comply or address their violations of the section 4024 of the "CARES Act" (15 U.S.C. 9058) and as extended by state and federal moratorium on evictions].

118)    Thus, the California Supreme Court ignoring and refusing to address Mr. Perry's claims under section 4024 of the "**CARES Act**" (15 U.S.C. 9058), the California Tenant Relief Act (CTRA) of September 1, 2020, and the "**RELIEF Act**" S.4519 of August 10, 2020 ("Rent Emergencies Leave Impacts on Evicted Families Act").

119)    Plaintiff was subjected to harassment by Defendants because of his national origin, Israeli and harassed by the Los Angeles County courts, the Los Angeles County Sheriff's Department and the defendants' landlord Parc Chateaux Inc., agents and employees.  Defendants did not exercise reasonable care to prevent the harassment, and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

---

possessing, **and protecting property,** and pursuing and obtaining safety, happiness, and privacy. (Sec. 1 added Nov. 5, 1974, by Proposition 7. Resolution Chapter 90, 1974.)

61    California Constitution, Article I, Section (3)(b)(2): A statute, court rule, or other authority, including those in effect on the effective date of this subdivision, **shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access**. A statute, court rule, or other authority adopted after the effective date of this subdivision that limits the right of access shall be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest.

120)   Mr. Perry alleges that the California Supreme Court and the Court of Appeal discrimination is driven on racial or ethnic biases that could be shown by misconstruing CCP. §391.7 to limit Mr. Perry's the right of access to the courts, ignore Mr. Perry's request for writ relief as a defendant. Then an injunction could be possible on equal protection grounds unless other evidence makes clear that the discrimination was necessary.  See _Hunter v. Underwood_, 471 U.S. 222, 228 (1985) ("Once racial discrimination is shown to have been a 'substantial' or 'motivating' factor behind enactment of the law, the burden shifts to the law's defenders to demonstrate that the law would have been enacted without this factor.").

121)   Defendants' unlawful actions were intentional, willful, malicious, and/or done with complete disregard to Plaintiff's welfare, safety, health and rights to be free from harassment of his civil rights and discrimination based on race, national or country of origin.

122)   Mr. Perry is entitled him to obtain any relief, injunctive with declaratory, equitable relief against the California State Supreme Court and Court of Appeal pursuant to 28 U.S.C. §1651 for pain and suffering, for mental anguish and deprivations of civil rights.

**SEVENTH CLAIM FOR RELIEF**
[For Harassment And Housing Discrimination[62] of Mr. Perry In Violation of Cal. Gov't Code §12955[63](in seq.) Against The Landlord (Parc Chateaux LLC, and Any Managing Company, And Other Successesor/s.]

123)   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 288 above inclusive, as though fully set forth herein.

124)   Plaintiff was subjected to harassment by Defendants because of his national origin, Israeli and harassed by the landlord Parc Chateaux Inc., agents and employees; the Los Angeles County courts, and the Los Angeles County Sheriff's Department and the defendants. Defendants did not exercise any reasonable care to prevent the harassment, and did not exercise reasonable care to promptly correct any harassing and discriminatory behavior that did occur.

---

[62]   _Sisemore v. Master Financial, Inc_., 60 Cal. Rptr. 3d 719, 724 (Cal. Ct. App. 2007) (finding that despite the language of subsection (p)(1), protection against harassment and/or discrimination on the basis of any person race, color, religion, sex, sexual orientation, marital status, national origin, ancestry, familial status, source of income, or disability of that person, is not limited to landlords and tenants and may be applied to borrowers and lenders)

[63]   Cal. Gov't Code § 12955(f): For any owner of housing accommodations to harass, evict, or otherwise discriminate against any person in the sale or rental of housing accommodations when the owner's dominant purpose is retaliation against a person who has opposed practices unlawful under this section, informed law enforcement agencies of practices believed unlawful under this section, has testified or assisted in any proceeding under this part, or has aided or encouraged a person to exercise or enjoy the rights secured by this part.  Nothing herein is intended to cause or permit the delay of an unlawful detainer action."

125)    Mr. Perry experienced an escalating series of problems with the landlord. One of the first things Mr. Perry noticed was that landlord and his maintenance person "Kevin" daild to respond to Mr. Perry's upkeep issues, they were uncommunicative and uncooperative and increasingly hostile to Mr. Perry.  In mid 2018 early 2019 the landlord all of a sudden had changed the sewer charges that Mr. Perry paid from under $20 to $49 a month based on use of only $12 of water.[64]  When Mr. Perry requested the landlord for sewer figures that was based on the RUBS formula, as was noted in the lease agreement addendum of August 9, 2016, the Landlord refused and demanded $49 in sewer charges and $1250 in late fees.

126)    On July 2, 2019, Mr. Perry mailed the landlord a certified mail informing them that in two weeks he is be leaving on a disability retreat to Israel on July 27, 2019.  Mr. Perry's letter included his August rent payment and **$50** in a check he paid for carport space **#410** that Parc Chateaux staff had assigned him.  Mr. Perry then parked his all equipped automatic luxury blue-gray 2007 Range Rove and left with Uber ride to LAX and from there to Israel.[65]  A day after Mr. Perry flew to Israel on July 27, 2019 the landlord Parc Chateaux harassed and retaliated against Mr. Perry by towing his 2007 Range Rover vehicle without calling the police, even after he already paid for a carport **#410**.

127)    While Mr. Perry was on his vacation/disability retreat in Israel the landlord Parc Chateaux LLC manager Christina Romero began he mischief after she assigned to Mr. Perry carport # 410, she said by email that the carport belonged to another tenant who was about to move out from Parc Chateaux apartment.  Christina knew Mr. Perry was already in Israel and couldn't remove his vehicle.

128)    So, Christina demanded by email that Mr. Perry remove his vehicle.  Mr. Perry could not

---

[64]     In *Apartment Assn. of Los Angeles County. Inc. v. City of Los Angeles* - 74 Cal. App. 4th 681, the court of appeal declared that landlords can't circumvent rent limits by charging extra for water: "**Using this test of reasonable relationship, sewer service charges -- based upon a variety of factors have been upheld as constitutional. Thus, sewer service charges based upon water consumption have been declared valid on the theory that the amount of water that flows into a building is apt to be roughly proportional to what flows out as sewage.**" (*In re City of Philadelphia* (1941) 343 Pa. 47 [21 A.2d 876].)

[65]     The Ninth Circuit requires "proper standing to contest a forfeiture both as a statutory matter and as an Article III and prudential requirement." *United States v. One 1985 Cadillac Seville*, 866 F .2d 1142, 1148 (9th Cir.1989); but see, U.S. v. $57,790 in U.S. Currency, 184 Fed.Appx. 604, 605 (9th Cir. 2006) ("**standing" in forfeiture actions not synonymous with Article III standing**). "The claimant has the burden of establishing, by a preponderance of the evidence, that he has an interest in the property." *U.S. v. Real Property Located at Section 18*, 976 F.2d 515, 520 (9th Cir. 1992), citing *U.S. v. One Parcel of Land*, 902 F.2d 1443, 1444 (9th Cir. 1990). "This interest need not be an ownership interest; it can be any type of interest, including a possessory interest. See $122,043.00 [*United States v. $122,043.00 in United States Currency*, 792 F.2d 1470, 1473 (9th Cir.1986)] 792 F.2d at 1473; *United States v. 1982 Sanger 24' Spectra Boat*, 738 F.2d 1043, 1046 (9th Cir.1984) ('It is not necessary therefore that a claimant under the forfeiture statute allege ownership. A lesser property interest such as possession creates standing.') (citing *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984))." *United States v. $191,910.00* in U.S. Currency, 16 F.3d.

remove his vehicle and he asked her to move his car or tow it to another carport, or give the other tenant who was already about to leave an alternate carport parking for the few days. But Christina refused and ordered a towing company to tow Mr. Perry vehicle from the complex. As a result of the towing Mr. Perry incurred thousands of dollars in various towing fees and storage fees he could not afford, causing Mr. Perry to lose his Range Rover valued at **$18,985** (Bluebook).

129) When Mr. Perry came back from Israel he was livid and he mailed his landlord a demand letter via USPS certified mail to remedy the loss of his vehicle, but the landlord ignored him. The following months the landlord refused to answer Mr. Perry's questions the whereabouts of his vehicle and he lost his vehicle,

130) Five months after Mr. Perry returned from his trip to Israel and after he paid all of his rent from August through December 2019, the landlord's manager Christina Romero retaliated when she all of a sudden increased Mr. Perry's rent by **$362** retroactive five (5) months of rent increase from August 2019-December 2019 without giving Mr. Perry any previous notice to the increase. But this happened after Mr. Perry had already paid all his rent for August-December 2019.

131) When Mr. Perry requested a copy of the notice that the landlord's manager Christina Romero supposedly posted while he was in Israel, Christina had promised to Mr. Perry she will email him the notice, but she never emailed anything.[66] Instead, while Mr. Perry was on a short business trip to Las Vegas, the landlord manager Christina Romero filed an **unlawful detainer lawsuit** against Mr. Perry on January 9, 2020 asking for forfeiture of the rent agreement based on $362 in 5 months of "**unpaid**" retroactive rent. Even knowing Mr. Perry had already paid his rent for those same months.

132) After Parc Chateaux LLC., had wrongly evicted Mr. Perry, they increased the rent for his two-bedroom, two-bath apartment from $1648 to $3877.

133) Defendants' unlawful actions were intentional, willful, malicious, and/or done with complete disregard to Plaintiff's welfare, safety, health and rights to be free from harassment and discrimination based on race, national or country of origin. If racial or ethnic discrimination could be shown to have driven a decision to resume evictions, then an injunction could be possible on equal protection grounds unless other evidence makes clear the jurisdiction would have resumed evictions anyway. See *Hunter v. Underwood*, 471 U.S. 222, 228 (1985) ("Once racial discrimination is shown to have been a 'substantial' or 'motivating' factor behind enactment of the law, the burden shifts to the law's defenders to demonstrate that the law would have been enacted without this factor.").

---

[66]    See *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14–15 (1978) (notice "does not comport with constitutional requirements when it does not advise the customer of the availability of a procedure for protesting a proposed termination of utility service as unjustified.").

134)   As a direct result of Defendants' action and proximate result of the infecting Mr. Perry with COVID-19, Coronavirus, Plaintiff had sustain health problems and will continue to suffer physical damages and emotional distress, resulting in economic and emotional and physical injuries for punitive damages in an amount to be proven at trial.

135)   Defendants' unlawful actions were intentional, willful, malicious, and done with total disregard to Plaintiff' right for equal protection of the laws and to be free from discrimination of application of federal laws based on national origin.

136)   Plaintiff is entitled to their reasonable punitive damages, for loss of earnings, for pain and suffering, for mental anguish, attorneys' fees if obtained, and costs of suit.

137)   As a direct, legal and proximate result of the discrimination, Plaintiff have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be determind in a trial by jury or by the court.

138)   Plaintiff further seeks reasonable punitive damages for pain and suffering, loss of earnings, special compensatory damages, for mental anguish is entitled to liquidated damages Plaintiff and for all other injunctive, declaratory, and monetary relief available for the violations at trial, including liquidated damages for all willful violations, and other compensation pursuant to the CARES ACT and 15 U.S.C. §9058.

## EIGHTH CLAIM FOR RELIEF
[Violation of 18 U.S. Code § 241 - Conspiracy Against Rights Under Section 4024(b) And (c) of the "CARES Act" (15 U.S.C. 9058(b)&(c) Against The Landlord Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/s and The Los Angeles Sheriff's Department, and The California State Courts)]

139)   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 above through 288 inclusive, as though fully set forth herein.

140)   All the defendants individually and jointly had conspired to derive Mr. Perry his civil rights under Section 4024(b) and (c) of the "CARES Act" (15 U.S.C. 9058(b) and (c) during the wrongful eviction of August 27, 2020.

141)   Defendants Parc Chateaux LLC, and their managing agent/representatives, and the State of California courts along with the Los Angeles Sheriff's Department had conspired[67]to commit

---

[67]   18 U.S.C. § 241:  If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or

procedural fraud of due process by intentionally and prematurely "grabbing" jurisdiction from the United states district court, they knowingly violating federal law 28 U.S.C. §1447(c) by using an electronic "**Letter of Transmittal - Remand To Superior Court (Civil)**" on February 21, 2020, instead of the actual "**Certified**" remand order that the state court never received by mail from the district court. Parc Chateaux LLC., and the state court had sued the electronic "**Letter of Transmittal - Remand To Superior Court (Civil)**" as a remand to enabled them to have the state court to issue a void default judgment and writ of execution.

142) Defendants' unlawful actions were intentional, willful, malicious, and/or done with complete disregard to Plaintiff's welfare, safety, health and rights to be free from the defendants conspiracy to deprive Mr. Perry his civil rights and discrimination based on race, national or country of origin.

143) As a direct, legal and proximate result of the Parc Chateaux LLC.'s reprehensibility intentional procedural fraud of due process in violating federal removal laws, Plaintiff have sustained, and will continue to sustain, economic and emotional injuries, resulting in an award for punitive damages and exemplary damages of $100,000,000.

144) Defendants' unlawful actions were intentional, willful, malicious, and/or done with complete disregard to Mr. Perry, the Plaintiff's property rights, and rights to be free from deprivation of rights.

---

privilege so secured….."They shall be fined under this title or imprisoned not more than ten years, or both; **and if death results from the acts committed in violation of this section or if such acts include …an attempt to kill**,…."

A conspiracy claim brought under section 1983 requires proof of "'**an agreement or meeting of the minds to violate constitutional rights**,'" _Franklin v. Fox_, 312 F.3d 423, 441 (9th Cir. 2001) (quoting _United Steel Workers of Am. v. Phelps Dodge Corp_., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, _Hart v. Parks_, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting _Woodrum v. Woodward County_, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'**To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy**.'" _Franklin v. Fox_, 312 F.3d at 441 (quoting _United Steel Workers v. Phelps Dodge Corp_., 865 F.2d at 1541). The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to Plaintiff's allegations of conspiracy. _Empress LLC v. City and County of San Francisco_, 419 F.3d 1052, 1056 (9th Cir. 2005); _Galbraith v. County of Santa Clara_, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level…" _Bell Atlantic Corp. v. Twombly_, 127 S.Ct. 1955, 1965 (2007) (citations omitted).

A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action…." Id. at 1964-65 (internal quotations and citations omitted). As such, a bare allegation that Defendants conspired to violate Plaintiffs' constitutional rights will not suffice to give rise to a conspiracy claim under section 1983. Indeed, Plaintiffs' conspiracy claim is comprised of nothing more than conclusory sentences, without explanation or factual support.

145)   Mr. Perry is entitled him to obtain any relief, injunctive with declaratory, equitable relief against the California State Supreme Court and Court of Appeal pursuant to 28 U.S.C. §1651 for pain and suffering, for mental anguish and deprivations of civil rights.

### NINTH CLAIM FOR RELIEF
[For Trespass[68] And Conversion And A Private Right of Action Under Vehicle Code § 22658 of Mr. Perry's 2007 Range Rover Apartment; In The Wrongul Trespass Into Mr. Perry's Home On August 27, 2020 Was In Violation of The CARES Act Who Along With The State Court Committed Fraud In Violation of 28 U.S.C. § 1447(c) By Prematurely "Grabbing" Jurisdiction On February 21, 2020 From The United States District Court Based Only of An Electronic "Letter of Transmittal - Remand To Superior Court (Civil)" Instead of The Actual "Certified" Remand Order That Was Never Mailed By The District Court, That Defendants Had Never Received Any Remand Order. Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/S; Chandler Hoyt, Santa Clarita City Towing Inc. ("SCCTOW")]

146)   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 288 above inclusive, as though fully set forth herein.

147)   On July 3, 2019, Mr. Perry, informed the defendants, NP Parc Chateaux, LLC., (ALLRESCO) by certified mail that he is traveling to a disability retreat in Israel, and Parc Chateaux accepted[69] two checks one for $1648 for rent and another check for $50 for carport #410 that was provided to Mr. Perry by Parc Chateaux to park his vehicle, a 2007 Range Rover, valued at $18,985.

148)   On July 27, 2019, while Perry left with Uber to LAX he flew to Poland's Warsaw International Airport then to Ben Guiron airport in Tel Aviv on, Parc Chateaux LLC., had email Mr. Perry on July 28, 2019 they plan to remove his vehicle parked in carport #410 they assignd to him, actually belonged to another tenants who was about to move out. Mr. Perry inquired why Parc Chateaux instead did not move his vehicle to another parking space, but Parc Chateaux ignored him. On August 2, 2019 the landlord towed Mr. Perry's Rang Rover using their towing service.

---

[68]   California Code of Civil Procedure (CCP) § 338:  "Within three years: (a) An action upon a liability created by statute, other than a penalty or forfeiture. (b) An action for trespass upon or injury to real property. (c) (1) An action for taking, detaining, or injuring goods or chattels, including an action for the specific recovery of personal property.  (2) The cause of action in the case of theft, as described in Section 484 of the Penal Code…"

[69]   See California Code Civ. Proc., § 2076:  "The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterwards."

149)   Upon his return from Israel, Mr. Perry contacted the towing company Parc Chateaux used, and they have charged him thousands of dollars in towing fees, storage fees and other fees, and Mr. Perry could not afford the fees he lost his 2007 Range Rove.  Defendants, NP Parc Chateaux, LLC had damaged Mr. Perry by illegally towing his luxury 2007 Range Rover in the amount of $18,985.

150)   Defendants Parc Chateaux's Chandler Hoyt, Santa Clarita City Towing Inc. ("SCCTOW") actions without following were malicious and knowingly violated Mr. Perry's rights under California Vehicle Code § 22658(l)(1)(d), (See Cal. Veh. Code, § 22658, subd. (a) [§ 22658 et. Seq.]  See _People Ex Rel. Renne v. Servantes_, 86 Cal. App. 4th 1081 (Cal. Ct. App. 2001).[70]

151)   The landlord Parc Chateaux LLC, and the Los Angeles Sheriff Department substantively violated the Federal Moratorium Laws, CARES Act, by serving Mr. Perry on August 23, 2020 with only 3-days Notice-To-Vacate, instead 30 days under Section 4024 of the CARES Act (15 U.S.C. §9058)(b)&(c) (15 U.S.C. § 9001 et seq.)), as amended by the Rescue Plan Act of 2021.  The defendants substantially violated California's Tenant Relief Act (CTRA) of September 1, 2020.

152)   The landlord Parc Chateaux LLC, and the Los Angeles Sheriff Department trespassed[71] into Mr. Perry's residence on August 27, 2020, the Sheriff Department and the Parc Chateaux LLC., the landlord's managing agents and staff failed and refused to wear masks, and they maliciously infected Mr. Perry with COVID-19, Coronavirus that made him gravely ill that it almost killing him.  The Sheriff

---

[70]   _People Ex Rel. Renne v. Servantes_, 86 Cal. App. 4th 1081 (Cal. Ct. App. 2001): "**Presiding Justice Harold G. Clarke of the Georgia Supreme Court observed that "[t]he law gives the towing company a great advantage over the owner of the towed car, and creates a great potential for unfair business practices and abuse of the public.**" (_Porter v. City of Atlanta_ (1989) 259 Ga. 526, 528 [384 S.E.2d 631, 634].)"…."We begin our analysis with the pertinent regulatory scheme, starting with Vehicle Code section 22658, by which the California Legislature has undertaken to regulate the removal of vehicles from private property by a towing service. fn. 2 **That section provides, among other things, that the property owner must first notify the police (Veh. Code, § 22658, subd. (a)) and that the towing company must have written authorization from the property owner or agent, who must be present at the time of the tow (subd. (l)).** Section 22658 also provides that the towing company may not impose excessive charges for towing and storage (subd. (i)), and requires that the owner of the storage facility to which the vehicle is towed accept a bank credit card or cash for the towing and storage charges (subd. (k)). fn. 3."…."[V]**ehicle Code section 22658 provides a private right of action for the owner of the towed vehicle**. A private property owner who causes the removal of a vehicle without complying with statutory requirements is liable to the vehicle owner for double the towing and storage charges (subd. (e)). **A towing service which removes a vehicle without written authorization is liable to the vehicle owner for four times the towing and storage charges (subd. (l)(3)).** Similarly, anyone who charges excess towing or storage fees is liable to the vehicle owner for four times the amount charged (subd. (i)). And any operator of a storage facility who fails to accept a credit card is liable to the vehicle owner for four times the towing and storage charges not to exceed $500 (subd. (k)) ("Citation")

[71]   "[I]n order to state a cause of action for trespass a plaintiff must allege an unauthorized and tangible entry on the land of another, which interfered with the plaintiff's exclusive possessory rights." (_McBride v. Smith_ (2018) 18 Cal.App.5th 1160, 1174 [227 Cal.Rptr.3d 390];  The common-law distinction between direct and constructive trespass is not followed in California. A trespass may be committed by consequential and indirect injuries as well as by direct and forcible harm. (Gallin v. Poulou (1956) 140 Cal.App.2d 638, 641 [295 P.2d 958].)

Department deputies refused to yield to warning by the Los Angeles Inspector General Max Huntsman's letter of August 21, 2020 had **secured an infection of COVID-19** to Mr. Perry on August 27, 2020. After Parc Chateaux LLC., had wrongly evicted Mr. Perry, they increased the rent for his two-bedroom, two-bath apartment from $1648 to $3877.

153) Defendants' unlawful actions were intentional, willful, malicious, and/or done with complete disregard to Mr. Perry, the Plaintiff's property rights, and rights to be free from deprivation of rights. Additionally, Parc Chateaux LLC., as a property owner who authorized the towing of a vehicle of Mr. Perry's Range Rover from their property did not follow the state law and did not first notify the police before the towing on August 2, 2019.   See *Krieger v. Pacific Gas & Electric Co.* (1981) 119 Cal.App.3d 137, 148 [173 Cal.Rptr. 751], "**Causes of action for conversion and trespass support an award for exemplary damages.**" (Internal citation omitted.)

154) As a direct, legal and proximate result of the Parc Chateaux LLC.'s reprehensibility intentional procedural fraud of due process in violating federal removal laws, Plaintiff have sustained, and will continue to sustain, economic and emotional injuries, resulting in an award for punitive damages and exemplary damages to be determined by a jury or the court, plus any special, actual, damages.

## TENTH CLAIM FOR RELIEF

[An Implied Right of Action For Intentional Discrimination In HUD Housing Under Title VI of the Civil Rights Act of 1964, Section 601[72] Which Is Include Enforcement of section 4024 of the "CARES Act" (15 U.S.C. 9058) And In Congress Passing of "RELIEF Act" on August 10, 2020 (Bill S. 4519 (116 Congress)) [Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/s And The Los Angeles County Sheriff Department].

155) Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 above through 288 inclusive, as though fully set forth herein.

156) Mr. Perry was a tenant of Parc Chateaux Inc was enrolled in HUD affordable housing since August 2016.  Parc Chateaux units were enrolled in a HUD Affordable Housing program was a "**Covered Dwelling**" and Mr. Perry was a "**Covered-Tenant**" under section 4024 of the "CARES Act" (15 U.S.C. 9058 et. seq.).

157) On August 23, 2020, the landlord, Parc Chateaux LLC., and the Los Angeles County Sheriff's Department posted Mr. Perry's door a "**Notice to Vacate**" in attempt to evict Mr. Perry by

---

[72]   See *Alexander v. Sandoval*, 532 U.S. 275, 121 S. Ct. 1511 (2001): "[I]t is thus beyond dispute that private individuals may sue to enforce § 601.   Second, it is similarly beyond dispute — and no party disagrees — that § 601 prohibits only intentional discrimination."

August 23, 2020.  On August 27, 2020 at 11AM, the landlord and the Sheriff's Department ignored the health hazards of COVID-19, they evicted Mr. Perry from his home, during which they infected him with COVID-19 Coronavirus.

158)     After almost two weeks after defendants had maliciously infected Mr. Perry developed symptoms of Coronavirus, and was gravely ill with severe coughing; sore throat; congestion, runny nose; he had diarrhea, fever, chills, nausea; tightening of his chest; shortness of breath difficulty breathing; persistent, stubbing pain with constant pressure traveling from his mid chest to his left upper side to his heart.

159)     Landlord and there law firm Hollenbeck & Cardoso LLP had violated the section 4024 of the "**CARES Act**" and 15 U.S.C. §9058(c).  After Parc Chateaux LLC., had wrongly evicted Mr. Perry, they increased the rent for his two-bedroom, two-bath apartment from $1648 to $3877.

160)     On March 27, 2020 Congress had passed the CARES Act, which here is the basis for federal question jurisdiction, and Mr. Perry's Complaint alleges facts establishing the basis for a "Private Right of Action"[73] can obviously and reasonably be inferred from Congress passing of RELIEF Act on August 10, 2020 (Bill S. 4519 (116 Congress)).

161)     Mr. Perry informed Parc Chateaux LLC., that he is a certified disabled person, and provided them with proof, but the landlord ignored him and evicted him on August 27, 2020.  The State Courts and the Sheriff's Department subjected Mr. Perry to the COVID-19 Coronavirus pandemic health hazards or death by selectively choosing only him from all other HUD qualified tenants to be forcibly evicted in violation of section 4024 of the "**CARES Act**" (15 U.S.C. 9058), while the Coronavirus pandemic was still dangerously wide spread in Los Angeles.   Discriminating and depriving Mr. Perry due process and subjecting to a wrongful eviction and to COVID-19 was not only wrong but dangerous to the life, safety, health and well being of Mr. Perry.

162)     As a direct, legal and proximate result of the discrimination, Plaintiff have sustained, and will continue to sustain health problems, economic and emotional and physical  injuries, resulting in damages in an amount to be proven at trial.   Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff' right to be free from discrimination based on national origin.

---

[73]     See *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975): Finally, in Rigsby, the Court noted that the statutes involved included language pertinent only to a private right of action for damages, although such a right of action was not expressly provided, thus rendering "[t]he inference of a private right of action…irresistible." 241 U.S., at 40. See also United States v. Republic Steel Corp., 362 U.S. 482, 491 (1960)."….."**The inference of a private right of action in the present instance is rendered irresistible**…"

163)   Plaintiff is entitled to their reasonable punitive damages for loss of earnings, for pain and suffering, for mental anguish, attorneys' fees and costs of suit.

### TENTH CLAIM FOR RELIEF

[Implied Cause of Action The Los Angeles Sheriff's Department Refusing Wear Masks To Prevent And Stop COVID-19 Coronavirus Infection Endangered Mr. Perry And Created Life-Threatening Circumstances, Bordering Criminality[74] While Knowingly Violating The California Constitution, Article I, Section (1) And Government Code §26602: "[t]he spread of any contagious or communicable disease" Against The Los Angeles Sheriff's Department As The Eviction Jointly Done And Supervised On August 27, 2020 By Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/s].

164)   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 above through 288 inclusive, as though fully set forth herein.

165)   On March 12, 2020, Mr. Perry filed a second removal in Case No.  2:20-cv-02346-JFW-PJW _NP Parc Chateaux, LLC v. Moshe Perry et al_ served the Los Angeles Sheriff Department with a Notice he filed in the United States District Court warning them not to evict him by enforcing a fraudulent voided default, default judgment and a writ of execution: "[Notice to the sheriff department from the injunctive relief available to defendant/…..is an executive branch officer enforcing a court orders are not entitled to immunity, and is estopped from enforcing…."

166)   The Sheriff Department ignored the warning and on August 23, 2020 the Sheriff Department served Mr. Perry with 3 days "**NOTICE-TO-VACATE**" and evicting Mr. Perry on August 27, 2020.  The Sheriff Department failed to give Mr. Perry the 30 days under 15 U.S.C. §9085(b)&(c).

167)   The plaintiff can prove the Sheriff Department's actual knowledge in creating the life-threatening circumstances and degree of culpability in endangering Mr. Perry life and health[75] during the eviction of August 27, 2020 with total disregard of human life and  indifference to consequences when they intentionally infected Mr. Perry with COVID-19 Coronavirus that made him gravely ill with severe

---

[74]    See California Jury Instruction on a Second Degree Felony-Murder:  "[T]he unlawful killing of a human being with malice aforethought, but without a deliberately formed and premeditated intent to kill, is murder of the second degree: "(1) If the killing proximately results from an unlawful act, the natural consequences of which are dangerous to life, which act is deliberately performed by a person who knows that his conduct endangers the life of another, or "(2) If the circumstances proximately causing the killing show an abandoned and malignant heart,…which course of conduct is a proximate cause of the unlawful killing of a human being, such course of conduct constitutes murder in the second degree, even though the death was not intended."

[75]    See California Supreme Court case discussing endangerment of  life and health in _Walker v. Superior Court_ (1988) 47 Cal.3d 112 , 253 Cal.Rptr. 1; 763 P.2d 852.

coughing, sore throat, congestion, runny nose, diarrhea, fever, chills, nausea, tightening of his chest; shortness of breath difficulty breathing, persistent, stubbing pain with constant pressure traveling from his mid chest to his left upper side to his heart.

168)   The Los Angeles County Sheriff Department refusal to wear protective masks ignoring the warning from **the Los Angeles Office of Inspector General Max Huntsman** issued a warning letter on August 21, 2020 The Los Angeles County Sheriff Department "**FAILURE OF SHERIFF'S DEPARTMENT PERSONAL TO OBEY FACE COVERING MANDATES.**"

169)   More so, because the sheriff department deputies had previously publically advertised their refusal to wear protective masks, they had nevertheless violently evicted Mr. Perry from his home during, while they did not wear protective masks, they infected him with COVID-19 Coronavirus that almost killed him.

170)   The Los Angeles County Sheriff Department refusal to wear protective masks during the eviction of August 27, 2020, infected Mr. Perry with the COVID-19 Coronavirus making him gravely ill that they almost killed him.   The Los Angeles Sheriff Department violated California law and Section 3215(b) of the CARES Act of March 27, 2020.

171)   Mr. Perry had also pre-warned the Sheriff Department in a notice he filed in district court from coming to his home to evict him on August 27, 2020.  Two of the Sheriff Department deputies sick with Coronavirus, refused and did not wear masks and infected Mr. Perry with COVID-19 Coronavirus during the eviction of August 27, 2020 in violation of the CARES ACT and 15 U.S.C. §9058 and California Government Code §26602.

172)   Landlord and Law Firm and the Los Angeles Sheriff Department infected Mr. Perry with Coronavirus during the eviction of August 27, 2020, making him gravely ill that he almost died, they therefore violated the section 4024 of the "**CARES Act**" and 15 U.S.C. §9058(c), and under The "Rent Emergencies Leave Impacts on Evicted Families Act" or the "**RELIEF Act**" S.4519 of August 10, 2020, by the eviction of August 27, 2020.   Nowhere does it shown that the State of California and the defendants were exempt by the "**CARES Act**" and the "RELIEF Act."

173)   The harm caused to Mr. Perry by the Sheriff Department was an act and omission constituting willful and criminal misconduct, malicious, wanton, intentional, outrageous misconduct, indifference and endangerment of Plaintiff's Mr. Perry's life, intentional misconduct, and a conscious flagrant indifference to the rights or safety of Mr. Perry that was harmed by the Sheriff Department.

174)   As a direct result of Defendants' action and proximate result of the infecting Mr. Perry with COVID-19, Coronavirus, Plaintiff had sustain health problems and will continue to suffer physical

damages and emotional distress, resulting in economic and emotional and physical injuries for punitive damages in an amount to be proven at trial.

175)   Defendants' unlawful actions were intentional, willful, malicious, and done with total disregard to Plaintiff' right for equal protection of the laws and to be free from discrimination of application of federal laws based on national origin.

176)   Plaintiff is entitled to their reasonable punitive damages, for loss of earnings, for pain and suffering, for mental anguish, attorneys' fees if obtained, and costs of suit.

177)   As a direct, legal and proximate result of the harm, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial.

178)   Plaintiff further seeks reasonable punitive damages of $100,000,000 for pain and suffering, loss of earnings, special compensatory damages, for mental anguish is entitled to liquidated damages Plaintiff and for all other injunctive, declaratory, and monetary relief available for the violations at trial, including liquidated damages for all willful violations, and other compensation pursuant to the CARES ACT and 15 U.S.C. §9058 and California Government Code §26602.

**ELEVENTH CLAIM FOR RELIEF**
[Defendants Violation of The California Tenant Relief Act (CTRA) of September 1, 2020 After Violation of The 30 Days Notice-To-Vacate Under Section 4024 of the "CARES Act" And 15 U.S.C. §9058((b)&(c) On August 27, 2020 Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/s And The Sheriff Departments]

179)   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 288 above inclusive, as though fully set forth herein.

180)   Plaintiff alleges that defendants' landlord Parc Chateaux LLC., and the Sheriff Departments violated California Tenant Relief Act (CTRA) (Assembly Bill (AB) 3088), which temporarily prevents evictions due to hardships related to COVID-19 that was effective on September 1, 2020.   More specifically, AB 3088 prevents eviction of tenants enduring financial hardship due to COVID-19 through January 2021 and delays rental recovery by landlords until March 2021.

181)   Plaintiff alleges that defendants' landlord Parc Chateaux LLC., failed to provide Mr. Perry "**Covered Tenant**" living in a HUD "**Covered-Dwelling**" the 30 days notice under Section 4024 of the CARES Act (15 U.S.C. 9058) after the eviction of August 27, 2020, or informing him of his rights under AB 3088 on September 1, 2020.

182)   Plaintiff alleges that defendants' landlord Parc Chateaux LLC. had failed to give him

notice and violated California Legislator Assembly Bill No. 3088 (AB3088).[76]   After Parc Chateaux LLC., had wrongly evicted Mr. Perry, they increased the rent for his two-bedroom, two-bath apartment from $1648 to $3877.

183)   Plaintiff alleges that defendants' landlord Parc Chateaux LLC., failed to provide Mr. Perry 30 days to respond to the landlord's demand to pay rent by returning a declaration signed under penalty of perjury, indicating that the tenant cannot pay the amount at issue because of COVID-19 related financial distress.

184)   Defendant had intentionally ignored the dangers of COVID-19 and the moratorium of eviction, knowing well he moratorium on eviction would be extended by the California Legislator Assembly Bill No. 3088 (AB3088) (AB-828) enact California "**Tenant Act"** into law on September 30, 2020, that was signed by the Governor Gavin Newsome into law on August 30, 2020.   Previously, on March 1st and 4th 2020, the California President Donald Trump of March 1, 2020 both signed executive Orders on the CARES Act and the moratorium on eviction.[77]

**TWELFTH CLAIM FOR RELIEF**
[For Deprivation of Hearing For HUD Dwelling In Violations 42 U.S.C. 3601-3619 et. seq. 24 C.F.R. 966 et. seq.; 24 CFR C.F.R. 5.150-5.168[78] 24 CFR C.F.R. PART 100; Title VIII of the Civil Rights Act of 1968 (As Amended); 42 U.S.C. §2000d-1;  Section 109 of Title I of the Housing And Community Development Act of 1974, 42 U.S.C. §5309; The Fair Housing Act And Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794; Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§12181 – 12189; Executive Order 11063 (1962), Executive Order 12892 (1994) In Concert With Violation of Section 4024 of the "CARES Act" (15 U.S.C. 9058) and Under The "Rent Emergencies Leave Impacts on Evicted Families Act" or the "RELIEF Act" S.4519 of August 10, California Penal Code §396(f)]

185)   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 288 above inclusive, as though fully set forth herein.

186)   Plaintiff alleges that defendants' landlord Parc Chateaux LLC., intentional infliction of

---

[76]     Assembly Bill No. 3088 (AB3088): "Existing law prohibits a landlord from taking specified actions with intent to terminate[76] the occupancy under any lease or other tenancy or estate at will, however created, of property used by a tenant as the tenant's residence. Existing law makes a violator of those provisions subject to certain damages in a civil action."

[77]     See Congressional Research Service, "**CARES Act Eviction Moratorium**," p. 2 (Apr. 7, 2020), on-line at: https://crsreports.congress.gov/product/pdf/IN/IN11320.

[78]     42 U.S.C. 12876 Definitions of tenants housing, dwelling. 42 U.S.C. 12879.

emotional distress had also violated Title VI of the Civil Rights Act of 1964, the Fair Housing Act, section 504 of the Rehabilitation Act of 1973, and title II of the Americans with Disabilities Act of 1990, Included under section 4024 of the "CARES Act" (15 U.S.C. 9058), which temporarily prevents evictions due to hardships related to COVID-19 that was effective immediately.

187)   Parc Chateaux LLC., intentionally deprived Mr. Perry hearing since he lived in a HUD dwelling pursuant to Section 4024 of the "CARES Act" (15 U.S.C. 9058) and under the "Rent Emergencies Leave Impacts on Evicted Families Act" or the "RELIEF Act" S.4519 of August 10, California Penal Code §396(f).  Parc Chteaux LLC., knowingly violated intentionally discriminated against Mr. Perry under HUD Affordable Housing under Title VI of the Civil Rights Act of 1964. Section 6011 they violated 42 U.S.C. 3601-3619 et. seq. 24 C.F.R. 966 et. seq.; 24 CFR C.F.R. 5.150-5.168  24 CFR C.F.R. PART 100; Title VIII of the Civil Rights Act of 1968 (As Amended); 42 U.S.C. §2000d-1; Section 109 of Title I of the Housing And Community Development Act of 1974, 42 U.S.C. §5309; the Fair Housing Act And Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794; Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§12181 – 12189; Executive Order 11063 (1962), Executive Order 12892 (1994).

188)   As a direct, legal and proximate result of the defendants' actions and total disregard to his life and health, defendants intentionally placed Mr. Perry life in harm's way to the dangers of Coronavirus Pandemic, and will likely would sustain, and will continue to sustain, the harms of COVID-19 and the economic damages that can be proven at trial.

189)   As a result of defendants' actions, plaintiff has suffered emotional distress, from each of the defendants' arrogant misconduct; plaintiff seeks a minimum of $100,000,000 in punitive damages for pain and suffering, for mental anguish subject to change or increase, for loss of earnings, attorneys' fees and costs of suit.

190)   Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to plaintiff' right to be free from such intentional infliction of emotion harm, and was the proximate cause of Mr. Perry's injury when the Los Angeles Sheriff Department deputies infected him with COVID-19 Coronavirus during the eviction of August 27, 2020 that made him gravely ill and almost killing him.

### THIRTEENTH CLAIM FOR RELIEF
[For Intentional, Severe Physical And Emotional Distress Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/s And The Los Angeles Sheriff Department]

191)   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 288 above inclusive, as though fully set forth herein.

192)   Plaintiff alleges that defendants' the Los Angeles Sheriff Department had intentionally[79] acts in a way to cause Mr. Perry severe emotional distress from the near death experience form the COVID-19 infection causing Mr. Perry to suffer severe emotional distress, indignity, trauma, severe pain, mental anguish, anger and anxiety, physical injury and financial cost resulting from the COVID-19 infection.  E.g. *Faya v. Almaraz*, 329 Md. 435, 620 A.2d at 330 (Md. 1993): **"[a]ntibodies, pain, fear, anxiety, grief, nervous shock, severe emotional distress, headache and sleeplessness."**  The Sheriff's deputies' conduct on August 28, 2020 was extreme and outrageous.  The Sheriff's deputies had acted intentionally, and their conduct caused severe emotional and physical distress to Mr. Perry.

193)   The Sheriff's deputies' knew that the plaintiff and any other person were particularly susceptible to severe[80] physical and emotional distress incurred injuries in the form of exposure to COVID-19, Coronavirus Pandemic on August 28, 2020.  There was a pattern of conduct The Sheriff's deputies were in a position of power refusing to wear COVID-19 masks to prevent or stop the spread of COVID-19.

194)   As a direct, legal and proximate result of the discrimination, Plaintiff was been put in harm's way because of the Coronavirus Pandemic and will likely would sustain, and will continue to sustain, the harms of COVID-19[81] Coronavirus and the economic damages that can be proven at trial.

195)   As a result of Defendants' actions, Plaintiff has suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

---

[79]   In *Thomas v. Frederick*, 766 F.Supp. 540 (W.D. LA. 1991) the court held that the officer's conduct was outrageous and done with the virtual certainty that emotional distress would result.
[80]   Emotional distress is severe when a reasonable person in the same position as the plaintiff would be unable to cope with or endure it, and the plaintiff's reaction isn't unusual. *Caldor v. Bowden*, 330 Md. 632, 625 A.2d 959 (Md. 1993): **"For emotional distress to be severe, it must be so acute that "`no reasonable man could be expected to endure it.`"** Id. at 571, 380 A.2d at 616 (quoting Restatement (Second) of Torts § 46 cmt. j (1965))."…"[E]ach element of the tort must be established by adequate proof. *Caldor*, 330 Md. at 642, 625 A.2d at 963. To satisfy the severity prong, a plaintiff must show "he suffered a severely disabling emotional response to the defendants' conduct." *Harris*, 281 Md. at 570, 380 A.2d at 616."
[81]   The conduct was sufficiently extreme and outrageous for an intentional-infliction-of-emotional-distress claim. (*Fox v. Hayes*, 600 F.3d 819 (7th Cir. 2010).)

196)   Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff' right to be free from discrimination based on sex.

197)   As a result of defendants' actions, plaintiff has suffered emotional distress, from each of the defendants' arrogant misconduct; plaintiff seeks a minimum of $100,000,000 in punitive damages for pain and suffering, for mental anguish subject to change or increase, for loss of earnings, attorneys' fees and costs of suit.

**FOURTEENTH CLAIM FOR RELIEF**

[Retaliatory Eviction Under The Unlawful Business Practice And An Act of Unfair Competition ("UCL")[82] Retaliatory Towing Embezzlement, Thievery, Conversion of Mr. Perry's Luxury 2007 Range Rover After Mr. Perry Paid For Carport #410, Is Within The Meaning of Section 17200 of the Business and Professions Code) Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/s; Chandler Hoyt, Santa Clarita City Towing Inc. ("SCCTOW")]

198)   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 288 above inclusive, as though fully set forth herein.

199)   On July 3, 2019, Mr. Perry, informed the defendants, NP Parc Chateaux, LLC., (ALLRESCO) by certified mail that he is traveling to a disability retreat in Israel, and Parc Chateaux accepted[83] two checks one for $1648 for rent and another check for $50 for carport #410 that was provided to Mr. Perry by Parc Chateaux to park his vehicle, a 2007 Range Rover, valued at $18,985.

200)   On July 27, 2019, while Mr. Perry left with Uber to LAX he flew to Poland's Warsaw International Airport, then to Ben Guiron airport in Tel Aviv on, Parc Chateaux LLC., had email Mr. Perry on July 28, 2019 they plan to remove his vehicle parked in carport #410 they assignd to him. On August 2, 2019 the landlord towed Mr. Perry's Rang Rover using their towing service. Mr. Perry inquired why Parc Chateaux instead did not move his vehicle to another parking space, but Parc Chateaux ignored him. Upon his return from Israel, Mr. Perry contacted the towing company Parc

---

[82]   " 'Actions for relief' under the UCL may be brought by various government officials and 'by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.' (Bus. & Prof. Code, § 17204.)" (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 954, 216 Cal.Rptr.3d 627, 393 P.3d 85 ( McGill ).) **The California Supreme Court has construed "lost money or property" to mean that a private plaintiff "must demonstrate some form of economic injury."** (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 323, 120 Cal.Rptr.3d 741, 246 P.3d 877.)

[83]   See California Code Civ. Proc., § 2076: **"The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it**; and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterwards."

Chateaux used, and they have charged him thousands of dollars in towing fees, storage fees and other fees, and Mr. Perry could not afford the fees he lost his 2007 Range Rove.

201)   Defendants Parc Chateaux's Chandler Hoyt, Santa Clarita City Towing Inc. ("SCCTOW") actions without following were malicious and knowingly violated Mr. Perry's rights under California Vehicle Code § 22658(l)(1)(d), (See Cal. Veh. Code, § 22658, subd. (a) [§ 22658 et. Seq.]  See *People Ex Rel. Renne v. Servantes*, 86 Cal. App. 4th 1081 (Cal. Ct. App. 2001) and had damaged Mr. Perry by illegally towing and loss of his luxury 2007 Range Rover in the amount of $18,985.

202)   *People Ex Rel. Renne v. Servantes*, 86 Cal. App. 4th 1081 (Cal. Ct. App. 2001): "Presiding Justice Harold G. Clarke of the Georgia Supreme Court observed that **"[t]he law gives the towing company a great advantage over the owner of the towed car, and creates a great potential for unfair business practices and abuse of the public.**" (*Porter v. City of Atlanta* (1989) 259 Ga. 526, 528 [384 S.E.2d 631, 634].)"

203)   Plaintiff can show that the damage was attributable to an intentional act of Parc Chateaux LLC., and its staff who is made liable.  *Drouet v. Super. Ct. of S.F. County*, Cal. App. 4th 1237, (review granted), 24 P.3d 491 (Cal. 2001) (**tenant may bring a claim for retaliatory eviction under the UCL even when evicted under the Ellis Act, which expressly permits a landlord to evict tenants when removing rental units from the market**).

204)   Defendants' unlawful actions were intentional, willful, malicious, and/or done with complete disregard to Mr. Perry, the Plaintiff's property rights, and rights to be free from deprivation of rights.

205)   As a direct, legal and proximate result of the Parc Chateaux LLC.'s reprehensibility intentional the unlawful business practice and an act of unfair competition ("UCL") and retaliatory towing of Mr. Perry's Range Rover on August 2, 2019, and the retaliatory eviction on August 27, 2020 was in violating federal removal laws, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in an award for punitive damages and exemplary damages to be determined in a jury trial or by the court.

206)   Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff' right to be free from discrimination based on sex.

207)   As a result of defendants' actions, plaintiff has suffered emotional distress, from each of the defendants' arrogant misconduct; plaintiff seeks punitive damages to be determined in a trial by jury or by the court, for pain and suffering, for mental anguish subject to change or increase, for loss of earnings, attorneys' fees and costs of suit.

**FIFTEENTH CLAIM FOR RELIEF**

[Defendants Violation of the California Fair Debt Collection Practices ("CFDCP"), Cal. Civil Code § 1788.2(c) et seq., and the Fair Debt Protections Collection Act (FDCPA), (15 U.S.C. § 1692, et. seq.) Against Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/s; Landlord's Counsel Tania Kim Cardoso, And Law Firm Hollenbeck & Cardoso LLP]

208)    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 288 inclusive, as though fully set forth herein.

209)    Plaintiff alleges that defendants fraudulently misrepresented to Mr. Perry that they may legally issue notices to vacate and initiate eviction proceedings during the moratorium on evictions.  Mr. Perry also alleges that defendants served on him on about October 2020 with notice demanding $14,768.13 for past rent from January 2020 until August 27, 2020 in violation of Sec. 4024(b). (Note: 15 U.S.C. §9058).[84]

210)    The following are material facts: (a) On May 7, 2020, the Parc Chateaux multifamily housing property was not exempt from the CARES Act eviction moratorium when Landlord issued a Notice-to-Vacate to Mr. Perry for nonpayment of rent on August 23, 2020.  (b) Landlord as aided by the Sheriff Department was not exempt from the CARES Act eviction moratorium when it evicted Mr. Perry on August 27, 2020. (c)  Landlord by way of the Sheriff Department infected Mr. Perry with Coronavirus during the eviction of August 27, 2020, making him gravely ill he almost died.

211)    See California Legislator Assembly Bill No. 3088 (AB3088) (AB-828) - California Code of Civil Procedure ("CCP") §1179.03.5(a): "[Before February 1, 2021, a court may not find a tenant guilty of an unlawful detainer unless it finds that one of the following applies: (1) The tenant was guilty of the unlawful detainer before March 1, 2020. (B): **In an action under this paragraph, other than an action to which paragraph (2) also applies, the landlord shall be precluded from recovering COVID-19 rental debt in connection with any award of damages**."

212)    Mr. Perry had served the landlord with rental assistance request. See Code of Civil

---

[84]    CARES Act Sec. 4024 (b) Moratorium was extended by Congress bill S.4519 - "Rent Emergencies Leave Impacts on Evicted Families Act" or the "RELIEF Act" of August 10, 2020.--During the 120-day period  beginning on the date of enactment of this Act, the lessor of a covered  dwelling **may not**-- (1) **make, or cause to be made, any filing with the court of  jurisdiction to initiate a legal action to recover possession**  of the covered dwelling from the tenant for nonpayment of rent  or **other fees or charges;** or  (2) **charge fees, penalties, or other charges to the tenant related to such nonpayment of rent."**

Procedure ("CCP") §116.223(b)(2).[85]   But landlord had ignored him, and evicted him on August 27, 2020.

213)   FDCPA claim arises from the landlord's charging him fees under Section 4024(C) of The CARES Act from 15 U.S.C. §9058(b)&(c); 15 U.S.C. §§ 1692(e); 1692(F) and federal question jurisdiction under 28 U.S.C. § 1331.

214)   The CFDCP is remedial legislation meant to promote fair and ethical standards between suppliers and the consuming public. Cal. Civil Code § 1788.2(c) et seq. The CFDCP prohibits landlords from engaging in acts or practices which constitute misrepresentations or fraudulent acts or practices in connection with a consumer transaction.

215)   The CFDCP prohibits suppliers from engaging in any "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." "), Cal. Civil Code § 1788.2(c).

216)   Landlord is a supplier that advertises and leases apartments primarily to be used for personal, family, and household purposes as a living space for families.

217)   By issuing the Notice-to-Vacate on August 23, 2020 and initiating eviction proceedings, Landlord misrepresented that no eviction moratorium existed or that it was exempt from the eviction moratorium.

218)   Landlord also misrepresented the amount owed to it by charging Tenant a returned check charge and attorney fees when the CARES Act prohibits the Landlord from charging Tenants such charges and fees in connection with nonpayment of rent during the moratorium. Landlord's misrepresentations were willful.

219)   Mr. Perry suffered losses as a direct result of Landlord issuing the Notice of Noncompliance and initiating eviction proceedings, including but not limited to, loss time, inconvenience, missed time from work, and emotional distress.

220)   The FDCPA prohibits debt collectors from making false, misleading, or deceptive representations to debtors in connection with a debt. 15 U.S.C. § 1692(e). 32. A debt collector includes "any person … who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a).

---

[85]   CCP. §116.223(b)(2): "[I]n an action described in paragraph (1), the court shall reduce the damages awarded for any amount of COVID-19 rental debt sought by payments made to the landlord to satisfy the COVID-19 rental debt, **including payments by the tenant, rental assistance programs, or another third part**y pursuant to paragraph (3) of subdivision (a) of Section 1947.3 of the Civil Code."

221)   Under the Act, "debt" refers to "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the...property....or services which are the subject of the transaction are primarily for personal, family, or household purposes." Id.

222)   Landlord Law Firm Hollenbeck & Cardoso LLP regularly collects or attempts to collect debts for unpaid rent, late fees, charges, court costs, or attorney's fees owed to Parc Chateaux LLC.

223)   Subsection (5) of § 1692(e) expressly prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

224)   Landlord Law Firm's Notice of Noncompliance and its subsequent filing of an eviction action against Tenants violate the CARES Act's eviction moratorium and thus are actions that "cannot legally be taken" under the FDCPA.

225)   Furthermore, Subsection (2) of 15 U.S.C. § 1692(e) expressly prevents debt collectors from "making a false representation of the character, amount, or legal status of any debt" or "any services rendered or compensation which may be lawfully received by any debt collector for collection of a debt."

226)   Landlord Law Firm attempts to collect from Tenant a check return fee as part of its unpaid rent calculation and attorney fees, which "constitute fees, penalties, or other charges to the tenant related to such nonpayment of rent" that the CARES Act prohibits during the temporary eviction moratorium.

227)   The FDCPA also prohibits debt collectors from using unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692(f).

228)   Subsection 6(C) of 15 U.S.C. § 1692(f) specifically prohibits "taking or threatening to take any non-judicial action to effect dispossession or disablement of property if the property is exempt by law from such dispossession or disablement."

229)   Landlord Law Firm's drafting of the Notice of Noncompliance to be served on Tenant was a non-judicial action preceding Landlord's judicial action for eviction against Mr. Perry as a Tenant and was an action to effect the dispossession of the Apartment which Tenant possessed, and which was exempt by the CARES Act from such dispossession.

230)   Landlord Law Firm therefore violated the FDCPA, 15 U.S.C. § 1692(f)6(C), by drafting and causing to be served the Notice of Noncompliance on Tenants and subsequently evicting action against Mr. Perry.

231)   As a direct, legal and proximate result of the Parc Chateaux LLC.'s reprehensible and intentional violation of the California Fair Debt Collection Practices ("CFDCP"), Cal. Civil Code § 1788.2(c) et seq., and the Fair Debt Protections Collection Act (FDCPA), (15 U.S.C. § 1692, et. seq.), Plaintiff have sustained, and will continue to sustain, economic and emotional injuries, resulting in an

award of punitive damages and exemplary damages to be determined in a trial by jury or the court.

232)    Defendants' unlawful actions were intentional, willful, malicious, and/or done with complete disregard to Mr. Perry, the Plaintiff's property rights, and rights to be free from deprivation of his rights.

233)    As a result of defendants' actions, plaintiff has suffered emotional distress, from each of the defendants' arrogant misconduct; plaintiff seeks punitive damages to be determined in a trial by jury or by the court, for pain and suffering, for mental anguish subject to change or increase, for loss of earnings, attorneys' fees and costs of suit.

### EIGHTEENTH CLAIM FOR RELIEF
[For For Declaratory Relief and Monetary Damages[86] Pursuant To the Fourteenth Amendment for Violation of Title II of the Americans with Disabilities Act ("ADA") And Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 Meant To Enforce Eviction and Cause Mr. Perry Homelessness]

234)    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 288 inclusive, as though fully set forth herein.

235)    Mr. Perry is a certified disabled person and neither the defendants, the state court or the Sheriff's Department may subject Mr. Perry to health hazards, and even death that can be caused by the Coronavirus Pandemic, and deprived due process or faulted for the delays because of the closure of the State appellate courts due to the COVID-19 Pandemic is wide spread around the County of Los Angeles.

236)    The State of California courts cannot deprive Mr. Perry from being heard on his unlawful detainer appeal.  Mr. Perry's made a motion for stay of execution of the eviction in the trial court, and in the Appellate Division of the Superior Court were both ignored.  Moreover, the United States Central District Court in Los Angeles is also closed to self represented Pro Se, but the filing desk would allow some filing in case of an emergency.

237)    Parc Chateaux Inc. eviction attempts are meant to circumvent Mr. Perry's rights as a disable person and evade to fully litigating the case state after they obtained a fraudulent clerk's default and default judgment on March 5, 2020.  Defendants know well that Mr. Perry will never gain a fair due

---

[86]    See e.g., _Tennessee v. Lane,_ 541 U.S. at 533-34 (Title II of ADA enforceable for damages because Congress validly abrogated states' Eleventh Amendment immunity); Eleventh Amendment immunity waived or abrogated by a clear and valid Act of Congress. See _Hoffman v. Connecticut_, 492 U.S. 96, 101 (1989); "[T]he second important limit is that sovereign immunity bars suits against States but not against lesser entities, such as municipal corporations, or against a state officer for injunctive or declaratory relief or for money damages to be collected not from the state treasury but from the officer personally. Pp. 754-757.

process hearing in the Appellate Division of the Superior Court who would never overturn wrongful eviction.

238)   As a direct, legal and proximate result of the Parc Chateaux LLC.'s reprehensible and intentional violation of the Title II of the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 2201 and 2202, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794; Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§12181 – 12189; Executive Order 11063 (1962), Executive Order 12892 (1994) In Concert With Violation of Section 4024 of the "CARES Act" (15 U.S.C. 9058) and Under The "Rent Emergencies Leave Impacts on Evicted Families Act" or the "RELIEF Act" S.4519 of August 10, California Penal Code §396(f).

239)   Plaintiff is entitled to their reasonable punitive damages to be determined by a trial by jury or the court, for pain and suffering, for mental anguish, for loss of earnings, attorneys' fees and costs of suit.

## NINETEENTH CLAIM FOR RELIEF

[A Judge-Made Cause of Action Invoked Under EX PARTE YOUNG , 209 U.S. 123 (1908) For Facial And As Applied Constitutional Challenge of the State of California Vexatious Litigant Statutes §391.7 (And §§391 et. seq.) As Unconstitutional When Applied By The California Supreme Court As Mr. Perry As A Defendant That Was Meant For A Plaintiff, Forcing Him To File Form "VL-110 Request To File New Litigation By Vexatious Litigant" Which They Always Deny To Blocking Him Access To State Courts Defend And Prosecute His Claims Under Section 4024 Of The "CARES Act" (15 U.S.C. 9058)]

240)   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 288 inclusive, as though fully set forth herein.

241)   Federal Question Jurisdiction under 28 U.S.C. § 1331 for a  Judge-Made Cause Of Action recognized *in Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) for declaratory and injunctive relief.

242)   Over the past 11 years, the California Supreme Court had deprived Mr. Perry access to the courts as a petitioner for unemployment and disability, even when his paid vehicle and property was taken from him the violations of laws were condoned and covered up.  When Mr. Perry sought relief from the California courts on October 17, 2019 under California Constitution Art. VI, Sec. 10 and 12(a) were always denied to him as a defendant because he was a plaintiff vexatious litigant.

243)   Mr. Perry pleading for relief for writ review, certiorari, mandate and prohibition, all fell

on deft ears in the California Court of Appeal, California Supreme Court who refused to address landlords violations of section 4024 of the "CARES ACT" (15 U.S.C. 9058); California Penal Code §396(f), California Government Code §8665. (See the "RELIEF ACT" S.4519 of August 10, 2020 ("Rent Emergencies Leave Impacts on Evicted Families Act")).

244)     During the period of April 6, 2020 to July 25, 2020, the California Supreme Court;  the Second District Court of Appeal and the Appellate Division of the Superior repeatedly refused to allow Mr. Perry file any petitions for writ of certiorari; writ review, writ of  mandate and prohibition, all fell on deft ears in the Court and were not filed.

245)     The California Supreme Court and the Court of Appeal had forced Mr. Perry to file form "**VL-110 request to file new litigation by vexatious litigant**" that was meant for a plaintiff vexatious litigant.  The California state court hermetically denied and blocked Mr. Perry  access to state courts as a defendant to defend himself and prosecute his cross-claims for the landlord's violation of the section 4024 of the "**CARES ACT**" (15 U.S.C. 9058)]; California Penal Code §396(f), California Government Code §8665. (See the "RELIEF ACT" S.4519 of August 10, 2020 ("Rent Emergencies Leave Impacts on Evicted Families Act")).

246)     Since Mr. Perry was was designated as a vexatious litigant 11 years ago, he experiences all sorts of civil rights deprivation and was prevented even as a defendant from properly defending himself in any lawsuit filed against him.

247)     When Mr. Perry complained that the California Appellate courts refused to grant him any due process and equal protection of the law relief after the Los Angeles Chatsworth Superior court and the Appellate Division of the Los Angeles had engaged in deception by using an electronic "**Transmittal Letter of Remand** as a remand order to prematurely "**grabbed**" jurisdiction from the district court and issue a void default, default judgment and writ of execution.  The District Court never mailed the state court any "**Certified**" Remand Order to the state court to the present day, which means it still has exclusive jurisdiction over the case removed.

248)     On Mr. Perry's appeal, the state superior court then engineered an inadequate record of appeal by omitting multiple articles of evidence as the Chatsworth court audio recording and documents were ignored and not designated, and his appeal was jeopardized in defending the case against the influential and corrupt landlord Parc Chateaux LLC.

249)     Plaintiff sues the Chief Justice of the California Supreme Court **Tani Gorre Cantil-Sakauye** as chair of the California Judicial Council and the California official who administered vexatious litigant listing and orders are sued in their official, as the official who administered vexatious

litigant listing and orders for declaratory and injunctive relief in their official administrative capacities. Plaintiff is seeks declaratory and injunctive relief to invalidate the broad orders finding him a vexatious litigant defendant and plaintiff.  The Chief Justice of the California Supreme Court as the official who administered vexatious litigant orders sued for declaratory and injunctive relief in their official capacities.

250)   See *Wolfe v. George*, 486 F.3d 1120 (9th Cir. 2007): "[W]e concluded that most of the defendants Wolfe had sued enjoyed sovereign immunity, but he nevertheless could, despite the Eleventh Amendment, seek declaratory and injunctive relief against both the Chief Justice of the; California Supreme Court and the California official who administered vexatious litigant orders, in their official capacities." (Citation).

251)   As a direct, legal and proximate result of the defendants' harassment of Mr. Perry's civil rights, Plaintiff have sustained, and will continue to suffer and sustain hardship, health, economic and emotional injuries, plaintiff seeks injunctive, with declaratory relief and equitable relief against the California state courts pursuant to 28 U.S.C. §1651.

**TWENTIETH CLAIM FOR RELIEF**
(Violations of the California Consumers Legal Remedies Act (CLRA)[87]
For Conversion Pursuant to Cal. Civ. Code §1780(a)[88] Cal. Civ. Code
§1750 et. seq. §1770(a), §1761(a)-(b))

252)   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 288 above inclusive, as though fully set forth herein.

253)   Parc Chateaux LLC., and their staff and attorney/s had knowingly violated California Consumers Legal Remedies Act (CLRA), as set forth in Cal. Civ. Code § 1750 et seq., when they illegally towed Mr. Perry's luxury 2007, Range Rover on August 2, 2019, after Perry left for his disability retreat in Israel and couldn't move his car.  This in spite of Mr. Perry's July 3, 2019 certified letter informing the defendants, NP Parc Chateaux, LLC., that he intend to travel to Israel, Parc Chateaux accepted[89] his rent check for $1648, and a $50 check for a carport #410 that was provided to him to park

---

[87]   "[i]n a transaction intended to result or which results in the sale or lease of goods or services to any consumer."[Cal. Civ. Code § 1770(a).] The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family or household purposes..." and "services" as "work, labor and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."[Cal. Civ. Code § 1761(a)-(b)]
[88]   See Cal. Civ. Code § 1780(a) ("Any consumer who suffers any damage...may bring an action against that person to recover or obtain any of the following: (1) <u>Actual damages</u>, but in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000). (2) <u>An order enjoining the methods, acts or practices</u>. (3) <u>Restitution of property</u>. (4) <u>Punitive damages</u>. (5) Any other relief that the court deems proper.").
[89]   See Code Civ. Proc., § 2076: "The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived

his vehicle, a 2007 Range Rover, valued at $18,985.

254)   On July 28, 2019 Mr. Perry received an email from Parc Chateaux AJ Presley informing him that his 2007 Range Rover was will be towed away of he does not remove it.  Initially, AJ Presley claimed that the tenant previously occupying **carport #410** was about to move out of Parc Chateaux.  Then A.J. revised his arguments and alleged that Parc Chateaux could never accept check payment for leasing carports, for the reason they intend to tow away Mr. Perry's vehicle.  While in Israel Mr. Perry had no internet access or a phone to call Parc Chateaux.  Mr. Perry's neighbor took pictures of Mr. Perry's 2007 Range Rover and emailed him to Mr. Perry showing Parc Chateaux placed an orange towing sticker on the vehicle.

255)   Mr. Perry later learned that Parc Chateaux had towed his vehicle on August 2, 2019.   AJ Presley emailed Mr. Perry the name of Mr. Hoyt Chandler, the towing company owner of SCCTOW who refused on August 3, 2019 to release of the vehicle to Mr. Perry's neighbored, even after he provided them with copy of his driver license.  Instead the towing company imposed excessive towing and storage charges agasint Mr. Perry which he could not afford, causing him to lose the vehicle.

256)   When Mr. Perry finally able to get into an internet café, the owner of the towing company, (Mr. Hoyt) had refused to respond to Mr. Perry's emails and when Mr. Perry finally called him from Israel, Mr. Hoyt disconnected Mr. Perry's phone call and ignored his phone calls.  When Mr. Perry returned from Israel on August 28, 2019, he called the towing company and was told he owed $4500 in towing and storage fees.  Mr. Perry could not afford to pay this and he lost his 2007 Range Rover, resulting in $18,985 in damages in loss of his vehicle.

257)   Plaintiff can show that the damage was attributable to an intentional act of Parc Chateaux LLC., and its staff who is made liable.  The cause of action against Parc Chateaux LLC., and their staff for violation of the CLRA was alleged against defendants and stated a service of leasing a carport to tenants as Mr. Perry who paid for a 30 day carport lease, but then after Mr. Perry left for the airport the landlord had called a towing company and towed Mr. Perry's car on August 2, 2019.  This constituted a violation of the CLRA under Cal. Civ. Code § 1761(d)[90] and the cause of action.[91]  The against

---

it; and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterwards."

[90]   Cal. Civ. Code § 1761(a): Definitions as used in this title - "Goods" means tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property. (b) "Services" means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods. (c) "Person"

defendants for unfair competition alleged defendants' representations in the contract and in inducing consummation of the carport lease and causing the towing of Mr. Perry's car thereafter he left for the airport was a fraudulent business practice likely to deceive a reasonable consumer, and Mr. Perry was in fact deceived.

258)    The CLRA prohibits unfair or deceptive acts that "result[ ] in the sale or lease of goods or services to any consumer...." (Civ. Code, § 1770.) The CLRA defines **"[s]ervices"** as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." (Civ. Code, § 1761, subd. (b).) Insurance does not constitute a "service" for purposes of the CLRA. (*Fairbanks v. Superior Court* (2009) 46 Cal.4th 56, 62-63 (Fairbanks).) The CLRA must "**be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection**." (Civ. Code, § 1760.)

259)    An action for implied contractual indemnity is not a claim for contribution from a joint tortfeasor; it is not founded upon a tort or upon any duty which the indemnitor owes to the injured third party. It is grounded upon the indemnitor's breach of duty owing to the indemnitee to properly perform its contractual duties. *West v. Superior Court* (1994) 27 Cal. App. 4th 1625, 1633.

260)    As a result of each of Defendants' breaches of the agreements, Plaintiff, Mr. Perry has incurred substantial damages in an amount of $18,985 for the value of his 2007 Range Rover.

261)    Further, the Plaintiff request that Cross-Defendants' shall indemnify him the value of his vehicle, plus compensatory damages.

262)    Plaintiff has tendered this claim to Defendants Parc Chateaux LLC., and each of them. By service of this Complaint, Plaintiff hereby demands that Defendants immediately defend and indemnify plaintiff for any and all damages from the loss of his 2007 Range Rover, valued at $18,985.

263)    Plaintiff is informed and believes and, based thereon, alleges that Defendants had refused his demands of indemnification.

264)    As a direct, legal and proximate result of the defendants' misconduct Plaintiff have sustained, and will continue to suffer and sustain hardship, health, economic and emotional injuries,

---

means an individual, partnership, corporation, limited liability company, association, or other group, however organized. (d) "Consumer" means an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes. (e) "Transaction" means an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement.

[91] The term "**Chattel**" refers to personal property that you can transport, such as jewelry, clothing, electronics or **vehicles**.

resulting in punitive damages in an amount to be determined by a jury or by the court.

**TWENTY FIRST CLAIM FOR RELIEF**
[The Los Angeles Sheriff's Department Aiding and Abetting With Parc Chateaux LLC, And Any Managing Agent/Representatives, And Other Successesor/s To Commit Tort, Assault And Battery And Undue Stress And Hardship On Plaintiff During The Eviction of August 27, 2020.]

265)   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 288 above inclusive, as though fully set forth herein.

266)   Plaintiff claims that he was harmed by landlord's staff aided and abetted by the Los Angles Sheriff's department who posted on Mr. Perry door with only 3-days Notice-To-Vacate on August 23, 2020 instead of the 30 days Notice-To-Vacate in violation of Section 4024 of the CARES Act (15 U.S.C. 9058).  The landlord and the sheriff department were unmasked during the violent eviction of August 27, 2020 they infected with COVID-19 Coronavirus that made him gravely ill that it almost killed him, had damage to Mr. Perry's liver and infected his heart with Myocarditis.

267)   Sheriff Department and the landlord staff refusal to wear masks maliciously infected Mr. Perry with COVID-19, Coronavirus that made him gravely ill that it almost killing him.   Sheriff Department deputies refused to yield to warning by the Los Angeles Inspector General Max Huntsman's letter of August 21, 2020 to wear protective masks, (Ref. "RELIEF ACT" S.4519 of August 10, 2020 providing tenants a Private Right of Action) Is remedied under the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983, California Senate Bill 3088;

268)   Landlord and the sheriff Department had forced Plaintiff to live in hotels for over one year, because landlord Parc Chateaux had listed Mr. Perry on public websites of the (voided and fraudulent) judgment against Mr. Perry, they informed other landlords (where plaintiff had applied to rent) that they must not to rent any apartment to Plaintiff.

269)   Plaintiff alleges the landlord aided and abetted with a specific intent to facilitate their wrongful conduct. (See *Schulz v. Neovi Data Corp.* (2007) 152 Cal.App.4th 86, 95 [60 Cal.Rptr.3d 810; *Navarrete v. Meyer* (2015) 237 Cal.App.4th 1276, 1290 [188 Cal.Rptr.3d 623]; *Orser v. George* (1967) 252 Cal.App.2d 660, 668 [60 Cal.Rptr. 708].)

270)   As a direct, legal and proximate result of the defendants' misconduct Plaintiff have sustained, and will continue to suffer and sustain hardship, health, economic and emotional injuries, resulting in punitive damages in an amount to be determined by a jury or by the court.

**VII.   DECLARATORY PRAYER FOR RELIEF ALLEGATIONS**

271)   As present and actual controversy exists between Plaintiff Moshe A. Perry and all the Defendants concerning his rights and their respective duties, Plaintiff contends that all the defendants had acted maliciously, consciously violated his rights under section 4024 of the "CARES Act" (15 U.S.C. 9058), and with total disregard to his health, his life had infected him with COVID-19, Coronavirus that almost killed him.  Intentional discrimination under HUD Affordable Housing under Title VI of the Civil Rights Act of 1964. Section 601.

272)   Plaintiff is informed and believes, and thereon alleges that the defendants would deny these allegations. So, injunctive, declaratory and monetary damages and punitive damages relief is therefore necessary and appropriate.

273)   Plaintiff therefore prays for good cause for an injunctive, declaratory, equitable relief against the landlord PARC CHATEAUX LLC., AND THE LOS ANGELES SHERIFF'S DEPARTMENT inadequate service of the "**Notice-To-Vacate**" of 3-days on August 23, 2020 and evicted him by force on August 30, 2020, that violated the Moratorium on Eviction under section 4024 of the "CARES Act" (15 U.S.C. 9058), instead of giving Plaintiff 30 days "**Notice-To-Vacate**", and for infecting Plaintiff with COVID-19 Coronavirus that made him gravely sick that the infection almost killed him.

274)   Wherefore, for the reasons set forth herein, the undersigned plaintiff Moshe A. Perry, further pray for good cause to issue an injunctive, declaratory, equitable relief against CHIEF JUSTICE OF THE CALIFORNIA SUPREME COURT TANI GORRE CANTIL-SAKAUYE AS CHAIR OF THE CALIFORNIA JUDICIAL COUNCIL AND THE CALIFORNIA OFFICIAL WHO ADMINISTERED VEXATIOUS LITIGANT LISTING AND ORDERS are sued in their official, who is in charge over the County of Los Angeles Superior Courts who are violating federal laws for declaratory and injunctive relief (*Wolfe v. Strankman*, 392 F. 3D 358 (2004) pursuant to the all writs act 28 U.S.C. § 1651(a). .

275)   The California Supreme Court are sued for depriving Plaintiff Mr. Perry his due process and equal protection of the law under the Fourteenth Amendment by forcing him to file form "<u>VL-110 Request to File New Litigation by Vexatious Litigant</u>" as a defendant in an unlawful detainer case, which they always deny as lacking merit.  However, form VL-110 was meant for a plaintiff vexatious litigant, and not to a defendant. No plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs addressed herein.

276)   If this Court does not grant the injunctive relief sought herein, Plaintiff will be irreparably harmed.

277)   The Los Angeles Sheriff's Department and landlord Parc Chateaux LLC. (Inc.) are sued

for declaratory, injunctive, equitable and monetary and punitive damages relief.

## VIII.   PRAYER FOR RELIEF

278)   WHEREFORE, Mr. Moshe A. Perry prays as follows with regard to each of the above causes of action as asserted by him against all the defendants for which Mr. Perry reserve the right to amend upon change in circumstances of this case:

279)   Plaintiff seeks a judicial declaration of the rights and duties of the respective parties for declaratory, injunctive and equitable relief against the California Supreme Court pursuant to 28 U.S.C. §1651 and additional relief under FRCP Rule 60(b) to vacate the State court's default, default judgment and writ of execution of March 4, 2020 and March 5, 2020.

280)   For compensatory damages plus any special, actual, damages in the amount of **$132,875** to fully compensate Plaintiff for over one year of out of-pocket hotel expenses paid during the period August 27, 2020 through August 25, 2021. Plus the cost of **$18,985** for the value of Mr. Perry's 2007 Range Rover, along with punitive, exemplary and compensatory damages against defendants PARC CHATEAUX LLC., GRAYSTAR- ALLIANCE RESIDENTIAL, CHRISTINA ROMERO, "KEVIN," TANIA KIM CARDOSO; HOLLENBECK & CARDOSO LLP and the LOS ANGELES SHERIFF'S DEPARTMENT, CHANDLER HOYT, SANTA CLARITA CITY TOWING INC. ("SCCTOW"); and each of them, to be determined by a jury or the court.

281)   For PARC CHATEAUX LLC., to remove any negative credit information reported to any credit rental agencies or other credit bureaus that were made against Plaintiff Mr. Perry;

282)   For a declaratory judgment finding that the actions of Defendant PARC CHATEAUX constitute intentional infliction of emotional distress;

283)   For punitive damages[92] in an amount of $100,000,000 that would punish Defendants for the malicious, wanton, intentional, outrageous  misconduct, indifference and endangerment of Plaintiff's

---

[92]   *State Farm Mutual Automobile Insurance Co.*, supra, 538 U.S. at pp. 424–425: " '[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.' **We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic**; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect." (*State Farm Mutual Automobile Insurance Co.*, supra, 538 U.S. at p. 419, internal citation omitted.)"[I]n a case involving physical harm, the physical or physiological vulnerability of the target of the defendant's conduct is an appropriate factor to consider in determining the degree of reprehensibility, particularly if the defendant

Mr. Perry's life by PARC CHATEAUX LLC., GRAYSTAR, ALLIANCE RESIDENTIAL, CHRISTINA ROMERO, "KEVIN," TANIA KIM CARDOSO; HOLLENBECK & CARDOSO LLP and the LOS ANGELES SHERIFF'S DEPARTMENT and each and every one of them as alleged in this Complaint for infecting and causing to Plaintiff Mr. Perry to be infected with COVID-19, Coronavirus during the wrongful eviction of August 27, 2020 that had made Plaintiff so gravely ill that it almost killed him, and that would effectively deter the Defendants from future similar behavior. Plaintiff seeks a minimum of seven million dollars, subject to any increase that would be determined by the Court;

284)    Plaintiff seeks to recover all fees, charges as room and board, storage fees, food, and all other expenses, fees and charges Plaintiff had accrued and accruing as a result of the wrongful eviction of August 27, 2020, during the CARES Act and the CDC moratorium on eviction against PARC CHATEAUX LLC., GRAYSTAR- ALLIANCE RESIDENTIAL, CHRISTINA ROMERO, "KEVIN," TANIA KIM CARDOSO; HOLLENBECK & CARDOSO LLP and the LOS ANGELES SHERIFF'S DEPARTMENT and each and every one of them;

285)    Plaintiff seeks to recover all damages in an amount of $18,985 for the value of his 2007 Range Rover that Defendants PARC CHATEAUX LLC., GRAYSTAR- ALLIANCE RESIDENTIAL, CHRISTINA ROMERO, "KEVIN," TANIA KIM CARDOSO; HOLLENBECK & CARDOSO LLP and the LOS ANGELES SHERIFF'S DEPARTMENT and each of them;

286)    For such ancillary orders, judicial determination and decrees against PARC CHATEAUX LLC., GRAYSTAR- ALLIANCE RESIDENTIAL, CHRISTINA ROMERO, "KEVIN," TANIA KIM CARDOSO; HOLLENBECK & CARDOSO LLP and the LOS ANGELES SHERIFF'S DEPARTMENT

---

deliberately exploited that vulnerability." (*Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 562 [131 Cal.Rptr.3d 382], internal citation omitted.);

**"[I]n a case involving physical harm, the physical or physiological vulnerability of the target of the defendant's conduct is an appropriate factor to consider in determining the degree of reprehensibility, particularly if the defendant deliberately exploited that vulnerability."** (*Bullock*, supra, 198 Cal.App.4th at p. 562, internal citation omitted.); "[W]e have been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award. We decline again to impose a bright-line ratio which a punitive damages award cannot exceed. Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process…[A]n award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." [Internal citation omitted.] "Nonetheless, because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages.' The converse is also true, however. When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee. The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." (*State Farm Mutual Automobile Insurance Co.*, supra, 538 U.S. at p. 425, internal citation omitted.)

and each of them, as may be necessary to implement, effectuate, carry out, and enforce said federal laws in the district court on all violation of Federal, State, or local eviction moratorium laws and any other local rules and ordinances as stated and related to the ``Coronavirus Aid, Relief, and Economic Security Act'' or Section 4024 of the "CARES Act" of Mar. 27, 2020; 15 U.S.C. 9058; under the 116th Congress Public Law 136 [H.R. 748] 134 STAT. 281: TEM0PORARY MORATORIUM ON EVICTION, 15 U.S.C. 9001, and Congress passing under Bill S.4519 - "Rent Emergencies Leave Impacts on Evicted Families Act" or the "RELIEF ACT" of August 10, 2020;

287)   For a judicial determination in the district court against CHIEF JUSTICE OF THE CALIFORNIA SUPREME COURT TANI GORRE CANTIL-SAKAUYE AS CHAIR OF THE CALIFORNIA JUDICIAL COUNCIL AND THE CALIFORNIA OFFICIAL WHO ADMINISTERED VEXATIOUS LITIGANT LISTING AND ORDERS on all violation of Federal for the state court use of the Vexatious litigant statutes CCP. §391.7 (CCP. §§391 et. Seq.) as it is used by the California Supreme Court against defendants as Mr. Perry; is also used by the Second District Court of Appeal; the Appellate Division of the Superior Court, and the superior Courts against defendants as Mr. Perry.

288)   For injunctive relief or any other relief ordering the against the Los Angeles Sheriff's Department on the August 27, 2020 eviction, and Parc Chateaux Inc., and applying limitation on Mr. Perry it was not permitted, and should not be intended to exclude Mr. Perry from having relief offered on procedural due process terms under Section 4024 of the CARES Act (15 U.S.C. §9058)(b)&(c) and as it was extended by the CDC moratorium and the passing of Congress Bill S.4519 - "Rent Emergencies Leave Impacts on Evicted Families Act" or the "RELIEF ACT" of August 10, 2020 a Private Right of Action—under Sec. 4(c) of the Renters and Homeowner's Rights;

289)   For all relief and any such other and further relief against any defendant/s, and entity/ies as deemed just equitable, injunctive and declaratory by the Court on the complaint.

290)   For interest as allowed by law;

## IX.   **DEMAND FOR JURY TRIAL**

291)   Plaintiff hereby demands a trial by jury on all causes against any and all the defendant/s, and entity/ies and the California Supreme Court.

## X.   **RESERVATION OF RIGHTS TO AMEND THIS COMPLAINT**

292)   Petitioner(s) hereby explicitly reserve(s) his fundamental Right(s) to amend this and all subsequent pleadings, should future events and/or discoveries prove that he have failed adequately to comprehend the full extent of the damage(s) which he has suffered at the hands of the Respondents, the

state court, and other involved parties, both named and unnamed, now and at all times in the future. See Rules 8, 15, and 18 of the Federal Rules of Civil Procedure.

By: *[s]* _____
　　　　　Michael (Moshe) Perry

## XI.　**VERIFICATION**

293)　I, Michael Moshe Perry, Plaintiff in the above-entitled action, have read the foregoing and know the contents thereof. The same is true of my own knowledge, except as to those matters that are therein alleged on information and belief; and, as to those matters, I believe it to be true.　　I hereby declare, verify, certify and pursuant to the penalties of perjury under the laws of the United States, and by the provisions of 28 USC § 1746, that all of the above and foregoing representations are true and correct to the best of my knowledge, information, and belief.

Executed 31st day of July, 2022 at West Hills, California.

By:　*[s]*　Moshe A. Perry _____
　　　　　　　Michael (Moshe) Perry

## XII.  **CERTIFICATE OF SERVICE**

State of California, County of Los Angeles,

I am over 18 years of age and am not a party to the within action or proceeding. My address is 5815 Donna Ave. Tarzana Ave. CA 91356. On July 31, 2022, I served the foregoing document/s described as: Plaintiff Does Not Stipulate To A District Court Magistrate Judge. Plaintiff's Verified Civil Complaint With Claims And Alternative Statements Under FRCP 8(d)(2) In Support of The Complaint: Request For Temporary and Permanent Injunctive Relief Against The State California Supreme Court with declaratory, equitable relief Pursuant to 28 U.S.C. §1651, and punitive damages against the landlord NP Parc Chateaux, LLC. (and Inc.), and the Los Angeles County Sheriff's Department. Parc Chateaux LLC.'s Reprehensibility In Working Alongside With The State of California Superior Court To Commit Procedural Fraud of Due Process By Violated Federal Law 28 U.S.C. §1447(c) By Using An Electronic Transmittal Letter of Remand As Remand, Instead of Waiting To The District Court "Certified" Remand Enabled The State Court To Prematurely "Grabbed" Jurisdiction From The District Court And Issue A Void Default default Judgment and Writ of Execution. The landlord and the Los Angeles Sheriff Department substantively violated the Federal Moratorium Laws, CARES Act, by serving Mr. Perry on August 23, 2020 with only 3-days Notice-To-Vacate, instead 30 days under Section 4024 of the CARES Act (15 U.S.C. §9058)(b)&(c) (15 U.S.C. § 9001 et seq.)), as amended by the Rescue Plan Act of 2021. California's Tenant Relief Act (CTRA) of September 1, 2020. Violated Section 4024 of the CARES Act and the staff had served Mr. Perry with only 3-days Notice-To-Vacate on August 23, 2020. Landlord failed to give Plaintiff 30 days Notice-To-Vacate pursuant to. Landlord and the sheriff Department had forced Plaintiff to live in hotels for over one year, because landlord Parc Chateaux had informed other landlords (Plaintiff applied to) not to rent to Plaintiff. Sheriff Department and the landlord staff refusal to wear masks maliciously infected Mr. Perry with COVID-19, Coronavirus that made him gravely ill that it almost killing him. Sheriff Department deputies refused to yield to warning by the Los Angeles Inspector General Max Huntsman's letter of August 21, 2020 to wear protective masks, had infected Mr. Perry on August 27, 2020 with COVID-19 Coronavirus that made him gravely ill that it almost killed him, had damage to Mr. Perry's liver and infected his heart with Myocarditis During the wrongful eviction on August 27, 2020. (Ref. "RELIEF ACT" S.4519 of August 10, 2020 providing tenants a Private Right of Action) Is remedied under the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983, California Senate Bill 3088; For Federal Question Jurisdiction Under 28 U.S.C. § 1331 in Claim Against The Sheriff's Department Enforcing Challenge And Execution of The Eviction Orders that violated the 30 days Notice-To-Vacate under Section 4024 of the CARES Act (15 U.S.C. §9058)(b)&(c). Is remedied under the Fourteenth Amendment and 42 U.S.C. § 1983; For Federal Question Jurisdiction under 28 U.S.C. § 1331 and the judge-made cause of action recognized in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) for declaratory and injunctive relief for a facial and as applied constitutional Challenge to the vexatious litigant statutes §391.7 (and §§391 et. seq.) is unconstitutional as applied When the California Supreme Court forced Mr. Perry as a defendant to file form "VL-110 Request to File New Litigation by Vexatious Litigant" that was meant for a plaintiff, (which they always deny to him as a defendant for lacking merits) unwillingness to address Mr. Perry's grievance that the Sheriff and landlord had violated his rights for 30 days Notice-To-Vacate under Section 4024 of the CARES Act (15 U.S.C. §9058)(b)&(c) to deprive him due process and equal protection of the law violate the Fourteenth Amendment. Is remedied under 42 U.S.C. § 1983. (Exhibits Are Attached), DEMAND FOR JURY TRIAL, on the interested party in this action. ☒ By placing ☐ the original☒ a true copy thereof enclosed in a sealed envelope Addressed as follows:

| | | |
|---|---|---|
| Tania Kim Cardoso Hollenbeck & Cardoso LLP. 7755 Center Ave. Suite 1100 Huntington Beach, CA, 92647 O/B: NP Parc Chateaux LLC. 2 Seaport Lane, Boston, MA, 02210-2001 | Los Angeles County Sheriff's Department Risk Management Bureau Civil Legal Litigation 4900 South Eastern Ave. Suite 102 Commerce, CA, 90040 | State of California Supreme Court 350 McAllister St Room 1295, San Francisco, CA 94102 |
| Tania Kim Cardoso Hollenbeck & Cardoso LLP. 7755 Center Ave. Suite 1100 Huntington Beach, CA, 92647 | Christina Romero, Manager Parc Chateaux LLC. 24979 Constitution Ave, Stevenson Ranch, CA 91381 | "Kevin," Manager Parc Chateaux LLC. 24979 Constitution Ave, Stevenson Ranch, CA 91381 |
| Managing Company Graystar – Alliance Residential (Allresco") 1545 Peachtree Street NE Suite 700 Charleston. 32.79504 | Chandler Hoyt, Santa Clarita City Towing Inc. ("SCCTOW") 32311 Castaic Rd, Castaic, CA 91384 | Judge Tricia Taylor County of Los Angeles Superior Court, Chatsworth Courthouse 9425 Penfield Ave. Chatsworth, CA, 91311 |

☒ **(By Mail)** As Follows:
I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid at Tarzana, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☒ **(BY EMAIL)** I caused to be transmitted to the email(s) mentioned above a true and correct copy of the document.

☒ **(FEDERAL)** I hereby certify that, on 31st day of July, 2022, a true and complete copy of the foregoing by depositing the same in the United States mail, postage prepaid, has been duly served upon all parties of record above.

☒ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 31, 2022, at Tarzana, California,

By /S/

Ron Asseraf

69

# ATTACHMENT EXHIBITS



## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

# NOTICE *from the* CLERK

### Extension of CARES Act

The United States District Court for the Central District of California has extended its authority pursuant to the provisions of the CARES Act through September 25, 2022. Therefore, the Court announces the following regarding its operations.

**Court Hearings**

- Hearings by video or telephonic conference may continue to be held in certain criminal matters as set forth in Order of the Chief Judge No. 20-043 and Order of the Chief Judge 22-157, unless the findings and authorizations in the Orders are subsequently terminated.

**Criminal Duty**

- In the Western Division, criminal duty matters will be held in Courtroom 880 at the Edward R. Roybal Federal Building and Courthouse through September 25, 2022.

- The Southern and Eastern division criminal duty matters will be held in the duty magistrate's courtroom.

**Kiry K. Gray**
**District Court Executive/Clerk of Court**
**July 11, 2022**

**All posted notices are also available on the Court's public website at www.cacd.uscourts.gov.**

G-15 (08/16)                     Notice from the Clerk                     Removal date: September 26, 2022

Case 2:22-cv-05378-FLA-MAA   Document 1   Filed 08/02/22   Page 72 of 155   Page ID #:72

Case: 22-55145, 02/14Case 2:20-    led 02/07/22   Page 1 of 1   Page ID    794
/2022, ID: 1236902u, DktEntry: 3, Page 1 of 1cv-01207-DSF-SK   Document 28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

NP Parc Chateaux, LLC,

CASE NUMBER:

2:20-cv-01207-DSF-SK

PLAINTIFF(S),

v.

Moshe Perry, et al

**ORDER ON MOTION FOR LEAVE TO APPEAL IN FORMA PAUPERIS:**
☐ **28 U.S.C. 753(f)**
☑ **28 U.S.C. 1915**

DEFENDANT(S).

The Court, having reviewed the Motion for Leave to Appeal In Forma Pauperis and Affidavit thereto, hereby ORDERS: *(The check mark in the appropriate box indicates the Order made.)*

☐ **The court has considered the motion and the motion is DENIED.** The Court certifies that the proposed appeal is not taken in good faith under 28 U.S.C. 1915(a) and is frivolous, without merit and does not present a substantial question within the meaning of 28 U.S.C. 753(f).

The Clerk is directed to serve copies of this Order, by United States mail, upon the parties appearing in this cause.

_____                    _____
*Date*                                       *United States District Judge*

☑ **The Court has considered the motion and the motion is GRANTED.** It appears to the Court that the proposed appeal is taken in good faith within the meaning of 28 U.S.C. 1915(a). The Court certifies that the proposed appeal is not frivolous, that it presents a substantial question. The within moving party is authorized to prosecute an appeal in forma pauperis to the United States Court of Appeals for the Ninth Circuit without pre-payment of any fees or costs and without giving security therefor.

☐ A transcript is needed to decide the issue presented by the proposed appeal, all within the meaning of 28 U.S.C. 753 (f). The Court Reporter is directed to prepare and file with the Clerk of this Court an original and one copy of a transcript of all proceedings had in this Court in this cause; the attorney for the appellant is advised that a copy of the transcript will be made available. The expense of such transcript shall be paid by the United States pursuant to 28 U.S.C. 1915(c) and 753(f).

The Clerk is directed to serve copies of this Order upon the parties appearing in this cause.

February 7, 2022                            *Dale S. Fischer*
_____                    _____
*Date*                                       *United States District Judge*



## Resource - Patient Handout for COVID-19 Rapid Antibody Test

Thank you for completing a COVID-19 Rapid Antibody Test with Kroger Health!

| Patient Name | Date of Birth | Test Date | Patient Address |
|---|---|---|---|
| Moshe Perry | | 2/7/21 | 23715 Vanowen St #242 W.Hills |
| **Provider Name** | **Test Location and Phone Number** | | **Test Information** |
| Debbie Li | Ralphs 704 | | Assure COVID-19 IgG/IgM Rapid Test Device |

| Result | Interpretation | Recommendation |
|---|---|---|
| ☑ IgG Positive | You were likely infected with SARS-CoV-2 more **than a few weeks ago**, even if no symptoms were present.  IgG antibodies are "late antibodies", largely responsible for long-term immunity after infection or vaccination. | The presence of antibodies indicates a previous infection and possibly **at least some degree of short-term immunity** or protection against future SARS-CoV-2 infection. Case reports of reinfection have been seen in the literature, so it is important to continue to **practice protective measures**.  If you develop new symptoms later, seek a diagnostic test, since occurrence of reinfection has been observed. |
| ☑ IgM and IgG Positive | You were likely **recently infected** with SARS-CoV-2.  Your immune system is actively producing antibodies to an **ongoing infection** that likely began more than 14 days ago. | The presence of antibodies indicates a **recent infection** and possibly **at least some degree of short-term immunity** or protection against future SARS-CoV-2 infection.  Case reports of reinfection have been seen in the literature, so it is important to continue to practice protective measures.  **We recommend seeking a diagnostic test** and isolating according to health authority guidance until test results are obtained. |
| ☐ IgM Positive | Your immune system is actively producing antibodies to a **recent infection**.  IgM antibodies are "early antibodies" that develop first during acute infection and disappear after a few weeks.  In SARS-CoV-2 infections, IgM and IgG antibodies can arise nearly simultaneously within 2 to 3 weeks after illness onset.  Thus, detection of IgM without IgG is uncommon. You may still be capable of spreading disease to others, even when asymptomatic. | The presence of antibodies indicates a **recent infection** and possibly **at least some degree of short-term immunity** is actively developing in the patient's system which may provide protection against future SARS-CoV-2 infection.  Case reports of reinfection have been seen in the literature, so it is important to continue to practice protective measures.  **We recommend seeking a diagnostic test** and isolating according to health authority guidance until test results are obtained. |
| ☐ Negative | This result may indicate different scenarios:<br>• You never had SARS-CoV-2, or<br>• You may have been infected and mounted a response with antibodies below the level of detection, or<br>• You may have been recently infected within the last 14 days and haven't developed antibodies yet | **Continue to practice protective measures** and follow current guidelines. If you did not have symptoms on test day and develop new symptoms later, seek a diagnostic test. |

In all cases, follow the guidance of your healthcare provider and local health department. For more information, visit:
https://www.cdc.gov/coronavirus or www.coronavirus.gov

1 | *Confidential*

Printed 000002 reference only.



## Resource - Patient Handout for COVID-19 Rapid Antibody Test

### FACT SHEET FOR RECIPIENTS

Azure Biotech Inc.
Assure COVID-19 IgG/IgM Rapid Test Device

September 23, 2020

Coronavirus
Disease 2019
(COVID-19)

healthcare provider will work with you to determine how best to care for you based on the test results along with other factors of your medical history, your symptoms, possible exposures, and geographic location of places you have recently traveled. There is also a chance that this test can give a positive result that is wrong (a false positive result). Even a high-performing antibody test when used in a population without many cases of COVID-19 infection may produce as many or more false results as true results because the likelihood of finding someone who has been infected is very small.

Your healthcare provider will work with you to determine the likelihood of false result.

*It is not known how long antibodies to SARS-CoV-2 will remain present in the body after infection. It is not known whether having antibodies to SARS-CoV-2 will protect you from getting infected again or help reduce the severity or duration of a future COVID-19 infection. Regardless of your test result, you should continue to follow CDC guidelines to reduce the risk of infection, including social distancing and wearing masks.*

**What does it mean if I have a negative test result?**
A negative test result means that the antibodies to the virus that causes COVID-19 were not found in your sample. However, it is possible for this test to give a negative result that is incorrect (false negative) in some people with COVID-19. Additionally, a negative result may occur if you are tested early in your illness and your body hasn't had time to produce antibodies to infection. This means that you could possibly still have COVID-19 even though the test is negative. If this is the case, your healthcare provider will consider the test result together with all other aspects of your medical history (such as symptoms, possible exposures, and geographical location of places you have recently traveled) in deciding how to care for you.

It is important that you work with your healthcare provider to help you understand the next steps you should take.

**Is this test FDA-approved or cleared?**
No. This test is not yet approved or cleared by the United States FDA. When there are no FDA-approved or cleared tests available, and other criteria are met, FDA can make tests available under an emergency access mechanism called an Emergency Use Authorization (EUA). The EUA for this test is supported by the Secretary of Health and Human Service's (HHS's) declaration that circumstances exist to justify the emergency use of in vitro diagnostics for the detection and/or diagnosis of the virus that causes COVID-19. This EUA will remain in effect (meaning this test can be used) for the duration of the COVID-19 declaration justifying emergency of IVDs, unless it is terminated or revoked by FDA (after which the test may no longer be used).

**What are the approved alternatives?**

There are no approved available alternative tests. FDA has issued EUAs for other tests that can be found at: https://www.fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/emergency-use-authorization.

- **Where can I go for updates and more information?** The most up-to-date information on COVID-19 is available at the CDC General webpage: https://www.cdc.gov/COVID19. In addition, please also contact your healthcare provider with any questions/concerns.

2

*Confidential*
11/05/2020 – v 3
3

Printed c... ...ce only.
Refer to the ...

000003

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| NP PARC CHATEAUX LLC,<br>Plaintiff,<br><br>v.<br><br>MICHAEL (MOSHE) PERRY,<br>Defendant. | CV 20-1207 DSF (SKx)<br><br>Order DENYING Ex Parte<br>Application to Reopen Case, for<br>Emergency Stay, and to Quash<br>Writ of Execution and Writ of<br>Possession |

The Court previously remanded this case to state court. The Court has no jurisdiction to reconsider the remand, see Seedman v. U.S. Dist. Court, 837 F.2d 413, 414 (9th Cir. 1988), and sees no reason to do so in any case.

While Defendant's arguments about the state court's treatment of the prior removal appear to be well-taken, the proper avenue for redress is through the state court appeals process, not through this Court, which no longer has jurisdiction.

The ex parte application is DENIED.

IT IS SO ORDERED.

Date: March 13, 2020

Dale S. Fischer
United States District Judge

**000004**



**United States District Court**
Central District of California
**Office of the Clerk**

**Cristina M. Squieri Bullock**
Chief Deputy of Administration
350 West 1st Street, Suite 4311
Los Angeles, CA 90012

**Kiry K. Gray**
District Court Executive / Clerk of Court
350 West 1st Street, Suite 4311
Los Angeles, CA 90012

**Sara Tse Soo Hoo**
Chief Deputy of Operations
255 East Temple Street, Suite TS-134
Los Angeles, CA 90012

February 19, 2020

  Los Angeles County Superior Court – Chatsworth Courthouse
  9425 Penfiled Ave
  Chatsworth, CA 91311

Re:  Case Number:     2:20−cv−01207−DSF−SK
     Previously Superior Court Case No.     20CHUD00033
     Case Name:    NP Parc Chateaux, LLC v. Moshe Perry et al

Dear Sir/Madam:

    Pursuant to this Court's ORDER OF REMAND issued on     2/18/2020    , the above−referenced
case is hereby remanded to your jurisdiction.

    Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

    Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to the
location shown below. Thank you for your cooperation.

United States Courthouse
255 East Temple Street, Suite TS-134
Los Angeles, CA 90012

                              Respectfully,

                              Clerk, U.S. District Court

                              By:  /s/ Jenny Lam
                                   Deputy Clerk
                                   (Jenny_Lam@cacd.uscourts.gov)

*Encls.*
*cc: Counsel of record*

Receipt is acknowledged of the documents described above.

                              Clerk, Superior Court

                              By:
Date                          Deputy Clerk



**United States District Court**
Central District of California
**Office of the Clerk**

**Kiry K. Gray**
District Court Executive / Clerk of Court
350 West 1st Street, Suite 4311
Los Angeles, CA 90012

**Cristina M. Squieri Bullock**
Chief Deputy of Administration
350 West 1st Street, Suite 4311
Los Angeles, CA 90012

**Sara Tse Soo Hoo**
Chief Deputy of Operations
255 East Temple Street, Suite TS-134
Los Angeles, CA 90012

February 19, 2020

FILED 2020 MAR -4  AM 11: 07

Los Angeles County Superior Court – Chatsworth Courthouse
9425 Penfiled Ave
Chatsworth, CA 91311

Re:  Case Number:  2:20–cv–01207–DSF–SK
Previously Superior Court Case No.  20CHUD00033
Case Name:  NP Parc Chateaux, LLC v. Moshe Perry et al

Dear Sir/Madam:

Pursuant to this Court's ORDER OF REMAND issued on  2/18/2020 , the above–referenced
case is hereby remanded to your jurisdiction.

Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to the
location shown below. Thank you for your cooperation.

United States Courthouse
255 East Temple Street, Suite TS-134
Los Angeles, CA 90012

Respectfully,

Clerk, U.S. District Court

By:  /s/ Jenny Lam
Deputy Clerk
(Jenny_Lam@cacd.uscourts.gov)

*Encls.*
cc: *Counsel of record*

Receipt is acknowledged of the documents described above.

**FEB 2 1 2020**
_____
Date

Clerk, Superior Court

**Lusy Galustyan**
By: _____
Deputy Clerk

(SKx),CLOSED,DISCOVERY,MANADR,REMANDED

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:20-cv-01207-DSF-SK

NP Parc Chateaux, LLC v. Moshe Perry et al
Assigned to: Judge Dale S. Fischer
Referred to: Magistrate Judge Steve Kim
Case in other court: 9th CCA, 20-55298
               Superior Court of California Los Angeles
               County, 20CHUD00033
               9th Circuit Court, 22-55145
Cause: 28:1443(1) Notice of Removal - Rent, Lease & Ejectment

Date Filed: 02/06/2020
Date Terminated: 02/18/2020
Jury Demand: None
Nature of Suit: 230 Rent Lease & Ejectment
Jurisdiction: Federal Question

**Plaintiff**

**NP Parc Chateaux, LLC**
           represented by  **Tania Kim Cardoso**
                                Hc Law, Apc
                                7755 Center Avenue Suite 1100
                                Huntington Beach, CA 92647
                                562-912-7712
                                Fax: 562-912-7728
                                Email: tcardoso@hclawapc.com
                                *LEAD ATTORNEY*
                                *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Moshe Michael A. Perry**
*named as Moshe Perry in Complaint*
           represented by  **Moshe Michael A. Perry**
                                  23705 Vanowen Street Apt 262
                                  West Hills, CA 91307
                                  747-224-9515
                                PRO SE

**Defendant**

**Does**
*1 to 10 inclusive*

**Cross Claimant**

**Moshe Michael A. Perry**
*named as Moshe Perry in Complaint*

V.

**Cross Defendant**

**NP Parc Chateaux, LLC**
           represented by  **Tania Kim Cardoso**
                                  (See above for address)
                                  *LEAD ATTORNEY*
                                  *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/06/2020 | 1 | NOTICE OF REMOVAL from Superior Court of California Los Angeles County, case number 20XHUD00033 with copy of summons and complaint.Case assigned to Judge Dale S. Fischer, Discovery to Magistrate Judge Steve Kim, filed by defendant Moshe Michael A. Perry. (esa) (Additional attachment(s) added on 2/10/2020: # 1 State Court File, # 2 CV71) (esa). (Main Document 1 replaced on 2/11/2020) (lmh). (Entered: 02/10/2020) |
| 02/06/2020 | | COPY OF COMPLAINT against defendants Does, Moshe Michael A. Perry, filed by plaintiff NP Parc Chateaux, LLC. (see p. 10 of State court file) (esa) (Entered: 02/10/2020) |
| 02/06/2020 | | COPY OF CROSS-COMPLAINT against Counter Defendant NP Parc Chateaux, LLC; jury demand, filed by cross-complainant Moshe Michael A. Perry. (see p. 51 of state court file) (esa) (Entered: 02/10/2020) |
| 02/06/2020 | 2 | MEMORANDUM OF LAW filed by defendant Moshe Michael A. Perry. (esa) (Entered: 02/10/2020) |
| 02/06/2020 | 3 | CERTIFICATION AND NOTICE OF INTERESTED PARTIES filed by defendant Moshe Michael A. Perry. (esa) (Entered: 02/10/2020) |
| 02/06/2020 | 4 | REQUEST to Proceed In Forma Pauperis, Declaration in Support filed by defendant Moshe Michael A. Perry. (esa) (Entered: 02/10/2020) |
| 02/06/2020 | 5 | NOTICE OF ASSIGNMENT to District Judge Dale S. Fischer and Magistrate Judge Steve Kim. (esa) (Entered: 02/11/2020) |
| 02/06/2020 | 6 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (esa) (Entered: 02/11/2020) |
| 02/12/2020 | | RECOMMENDATION issued by Magistrate Judge Steve Kim Re REQUEST to Proceed In Forma Pauperis 4 forwarded to District Judge Dale S. Fischer for review.(clee) (Entered: 02/12/2020) |
| 02/18/2020 | 7 | ORDER by Judge Dale S. Fischer DENYING REQUEST to Proceed in Forma Pauperis with Declaration in Support (CV-60) 4 . FURTHER ORDERED that this case is hereby REMANDED to State Court. (MD JS-6, Case Terminated.) (jp) (Entered: 02/19/2020) |
| 02/19/2020 | 8 | TRANSMITTAL of documents to Los Angeles County Superior Court. A certified copy of the order of remand and a copy of the docket sheet from this court was sent to Los Angeles County Superior Court - Chatsworth Courthouse. Case number: 20CHUD00033. (jp) (Entered: 02/19/2020) |
| 03/04/2020 | 9 | Receipt of Letter of Transmittal - Remand to Superior Court. (jp) (Entered: 03/06/2020) |
| 03/11/2020 | 10 | EMERGENCY EX PARTE APPLICATION to Reopen The Administratively Closed Case Nunc Pro lunc from the State Court Order of 2/26/2020. Denying The Removal of 2/6/2020, Based on a Federal Question Jurisdiction Pursuant to 28 USC 1331, Based on 28 USC 1983, 28 USC 1443, 1981, 1982 (Defendant's Cross-Complaint), Because of The State courts Constant Discrimination and Deprivation of Mr. Perry's Civil Rights filed by defendant Moshe Michael A. Perry. (jp) (Entered: 03/11/2020) |
| 03/11/2020 | 11 | REQUEST TO PROCEED In Forma Pauperis With Declaration in Support to Appeal, filed by defendant Moshe Michael A. Perry. (mat) (Entered: 03/12/2020) |
| 03/11/2020 | 12 | EX PARTE APPLICATION and Declaration for Extension of Time to File Appeal, filed by defendant Moshe Michael A. Perry. (Attachments: # 1 Lodged Proposed Order) (mat) |

**000008**

| | | (Entered: 03/12/2020) |
|---|---|---|
| 03/11/2020 | 13 | [See Notice of Clerical Error item 15.] NOTICE OF APPEAL to the 9th CCA filed by Defendant Michael [Moshe] Perry. Appeal of Order on Request to Proceed In Forma Pauperis with Declaration in Support (CV-60) 7 Filed On: 2/18/20; Entered On: 2/19/20; In forma pauperis is pending. (mat) Modified on 3/16/2020 (mat). (Entered: 03/12/2020) |
| 03/13/2020 | 14 | ORDER by Judge Dale S. Fischer DENYING EX PARTE APPLICATION to Reopen Case, for Emergency Stay, and to Quash Writ of Execution and Writ of Possession 10 . (SEE ORDER FOR SPECIFICS). (jp) (Entered: 03/13/2020) |
| 03/13/2020 | 16 | APPELLANT APPLICATION from the Ninth Circuit for an Emergency Judicial Stay re: Notice of Appeal to 9th Circuit Court of Appeals, 13 . (mat) (Entered: 03/16/2020) |
| 03/13/2020 | 17 | MOTION and Affidavit for Leave to Appeal In Forma Pauperis filed by defendant Moshe Michael A. Perry. (Attachments: # 1 Lodged Proposed Order) (mat) (Entered: 03/16/2020) |
| 03/13/2020 | 18 | ORDER by Judge Dale S. Fischer: denying 11 Request to Proceed Appeal In Forma Pauperis; denying 17 MOTION and Affidavit for Leave to Appeal In Forma Pauperis. (mat) (Entered: 03/16/2020) |
| 03/13/2020 | 19 | ORDER by Judge Dale S. Fischer: denying 12 EX PARTE APPLICATION and Affidavit for Extension of Time to File Appeal. (mat) (Entered: 03/16/2020) |
| 03/16/2020 | 15 | NOTICE OF CLERICAL ERROR: Due to The Notice of Appeal item 13 was filed as to the incorrect party. The notice of appeal was filed by the defendant Michael A. Perry. (Attachments: # 1 Notice of Appeal filed by Michael Moshe Perry) (mat) (Entered: 03/16/2020) |
| 03/19/2020 | 20 | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 20-55298 assigned to Notice of Appeal to 9th Circuit Court of Appeals 13 as to defendant Moshe Michael A. Perry. (jp) (Entered: 03/23/2020) |
| 05/08/2020 | 21 | ORDER from Ninth Circuit Court of Appeals filed re: Notice of Appeal to 9th Circuit Court of Appeals, 13 filed by Moshe Michael A. Perry. CCA # 20-55298. Pursuant to Ninth Circuit Rule 42-1, this appeal is dismissed for failure to prosecute. This order served on the district court shall, 21 days after the date of the order, act as the mandate of this court. (mat) (Entered: 05/12/2020) |
| 05/12/2020 | 23 | ORDER from Ninth Circuit Court of Appeals filed re: Notice of Appeal to 9th Circuit Court of Appeals, 13 filed by Moshe Michael A. Perry. CCA # 20-55298. Accordingly, this appeal is reinstated. A review of the record reflects that this appeal may be frivolous. This court may dismiss a case at any time, if the court determines the case is frivolous. Within 35 days after the date of this order, appellant must: (1) file a motion to dismiss this appeal, see Fed. R. App. P. 42(b), OR (2) file a statement explaining why the appeal is not frivolous and should go forward. [See document for more complete details.] [Late docketing due to document was received on 7/21/20.] (mat) (Entered: 07/21/2020) |
| 06/26/2020 | 22 | ORDER from Ninth Circuit Court of Appeals filed re: Notice of Appeal to 9th Circuit Court of Appeals 13 filed by Moshe Michael A. Perry. CCA # 20-55298. All other pending motions are denied as moot. DISMISSED. (jp) (Entered: 06/30/2020) |
| 07/20/2020 | 24 | MANDATE of Ninth Circuit Court of Appeals filed re: Notice of Appeal to 9th Circuit Court of Appeals, 13 CCA # 20-55298. The judgment of this Court, entered June 26, 2020, takes effect this date.This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure. [See USCA Order 22 DISMISSED.] (mat) (Entered: 07/21/2020) |

| 12/22/2021 | 25 | NOTICE OF DISCREPANCY AND ORDER by Judge Dale S. Fischer, ORDERING Motion to Recall Remand submitted by Defendant Moshe Michael A. Perry received on 12/13/2021 is not to be filed but instead rejected. Denial based on: Case is closed. Case remanded 2/19/2020. (jp) (Entered: 12/22/2021) |
|---|---|---|
| 01/30/2022 | 27 | NOTICE OF APPEAL to the 9th CCA filed by Defendant Moshe Michael A. Perry. Appeal of Notice of Document Discrepancies and Order - Rejecting, 25 Filed On: 12/22/21; Entered On: 12/22/21; Motion for In Forma Pauperis is pending. (mat) (Entered: 02/02/2022) |
| 01/31/2022 | 26 | MOTION and Affidavit for Leave to Appeal In Forma Pauperis filed by Defendant Moshe Michael A. Perry. (mat) (Entered: 02/02/2022) |
| 02/07/2022 | 28 | ORDER by Judge Dale S. Fischer: granting 26 MOTION for Leave to Appeal In Forma Pauperis. (mat) (Entered: 02/07/2022) |
| 02/07/2022 | 29 | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 22-55145 assigned to Notice of Appeal to 9th Circuit Court of Appeals 27 as to cross claimant Moshe Michael A. Perry. (mat) (Entered: 02/07/2022) |
| 03/18/2022 | 30 | ORDER from Ninth Circuit Court of Appeals filed re: Notice of Appeal to 9th Circuit Court of Appeals 27 filed by Moshe Michael A. Perry. CCA # 22-55145. This appeal is dismissed for lack of jurisdiction. (See document for further information). (jp) (Entered: 03/18/2022) |
| 06/24/2022 | 31 | ORDER from Ninth Circuit Court of Appeals filed re: Notice of Appeal to 9th Circuit Court of Appeals 27 filed by Moshe Michael A. Perry. CCA # 22-55145. Appellant's motions for reconsideration and reinstatement are denied. See 9th Cir. R. 27-10. No further filings will be considered in this closed appeal. (jp) (Entered: 06/27/2022) |
| 07/05/2022 | 32 | MANDATE of Ninth Circuit Court of Appeals filed re: Notice of Appeal to 9th Circuit Court of Appeals 27 , CCA # 22-55145. The judgment of this Court, entered March 18, 2022, takes effect this date. This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure. [See USCA Order, 30 DISMISSED.](mat) (Entered: 07/06/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/18/2022 20:13:55 | | |
| PACER Login: | | Client Code: | |
| Description: | Docket Report | Search Criteria: | 2:20-cv-01207-DSF-SK End date: 7/18/2022 |
| Billable Pages: | 4 | Cost: | 0.40 |

**000010**      4/4

6/24/22, 4:06 PM                                        22-55145 Summary

If you view the [ Full Docket ] you will be charged for 2 Pages $0.20

**General Docket**
**United States Court of Appeals for the Ninth Circuit**

| | |
|---|---|
| **Court of Appeals Docket #:** 22-55145 | **Docketed:** 02/07/2022 |
| **Nature of Suit:** 3230 Rent, Lease, Ejectment | **Termed:** 03/18/2022 |
| NP Parc Chateaux, LLC v. Michael Perry | |
| **Appeal From:** U.S. District Court for Central California, Los Angeles | |
| **Fee Status:** IFP | |

**Case Type Information:**
  **1)** civil
  **2)** private
  **3)** null

**Originating Court Information:**
  **District:** 0973-2 : 2:20-cv-01207-DSF-SK
  **Trial Judge:** Dale S. Fischer, District Judge
  **Date Filed:** 02/06/2020

| **Date Order/Judgment:** | **Date Order/Judgment EOD:** | **Date NOA Filed:** | **Date Rec'd COA:** |
|---|---|---|---|
| 12/22/2021 | 12/22/2021 | 01/30/2022 | 02/02/2022 |

**000011**

| 02/07/2022 | 1 | DOCKETED CAUSE AND ENTERED APPEARANCES OF COUNSEL AND PRO SE APPELLANT. SEND MQ: No. The schedule is set as follows: Appellant Michael Moshe Perry opening brief due 04/06/2022. Appellee NP Parc Chateaux, LLC answering brief due 05/06/2022. Appellant's optional reply brief is due 21 days after service of the answering brief. [12362402] (RT) [Entered: 02/07/2022 11:21 AM] |
|---|---|---|
| 02/08/2022 | 2 | Filed clerk order (Deputy Clerk: JW): The district court's order was entered on the docket on December 22, 2021. Appellant's notice of appeal was filed in the district court on January 30, 2022. Accordingly, the record suggests that this court may lack jurisdiction over this appeal because the notice of appeal was not filed within 30 days after entry of the district court's order. See 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A), 4(c); United States v. Sadler, 480 F.3d 932, 937 (9th Cir. 2007) (requirement of timely notice of appeal is jurisdictional). Within 21 days after the date of this order, appellant must move for voluntary dismissal of the appeal or show cause why it should not be dismissed for lack of jurisdiction. If appellant elects to show cause, a response may be filed within 10 days after service of the memorandum. If appellant does not comply with this order, the Clerk shall dismiss this appeal pursuant to Ninth Circuit Rule 42-1. Briefing is suspended pending further order of the court. [12364546] (CKP) [Entered: 02/08/2022 04:12 PM] |
| 02/14/2022 | 3 | Received copy of District Court order [12369020] (JFF) [Entered: 02/14/2022 09:46 AM] |
| 03/07/2022 | 4 | Filed Appellant Michael Moshe Perry response to order to show cause. [12387689] (JFF) [Entered: 03/07/2022 10:38 AM] |
| 03/18/2022 | 5 | Filed order (A. WALLACE TASHIMA, MICHELLE T. FRIEDLAND and BRIDGET S. BADE) A review of the record demonstrates that this court lacks jurisdiction over this appeal because the notice of appeal received by the district court on January 31, 2022 was not filed within 30 days after the district court's post-judgment order entered on December 22, 2021. See 28 U.S.C. § 2107(a); United States v. Sadler, 480 F.3d 932, 937 (9th Cir. 2007) (requirement of timely notice of appeal is jurisdictional); Matter of Combined Metals Reduction Co., 557 F.2d 179, 203 (9th Cir. 1977) (Federal Rule of Appellate Procedure 4(a) establishes mandatory time period for filing a notice of appeal as thirty days after entry of judgment or order and court has no jurisdiction over untimely appeals unless there is an exception that operated to extend the time period.). Consequently, this appeal is dismissed for lack of jurisdiction. DISMISSED. [12399456] (WL) [Entered: 03/18/2022 02:33 PM] |
| 03/22/2022 | 6 | Filed Appellant Michael Moshe Perry motion to reconsider. Deficiencies: None. [12401934] (JFF) [Entered: 03/22/2022 02:35 PM] |
| 03/23/2022 | 7 | Filed Appellant Michael Moshe Perry motion to reinstate. Deficiencies: None. [12402451] (JFF) [Entered: 03/23/2022 09:30 AM] |
| 03/25/2022 | 8 | Filed Appellant Michael Moshe Perry supplemental motion to reconsider. Deficiencies: None. [12404805][COURT UPDATE: Corrected Document Attached, resent NDA,--[Edited 03/29/2022 by BY] (JFF) [Entered: 03/25/2022 09:14 AM] |
| 06/24/2022 | 9 | Filed order (A. WALLACE TASHIMA, MICHELLE T. FRIEDLAND and BRIDGET S. BADE) Appellant's motions for reconsideration and reinstatement (Docket Entry Nos. [6], [7], [8]) are denied. See 9th Cir. R. 27-10. No further filings will be considered in this closed appeal. [12479158] (WL) [Entered: 06/24/2022 10:48 AM] |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| U.S. Court of Appeals for the 9th Circuit - 06/24/2022 16:05:58 | | |
| **PACER Login:** | funsarios | **Client Code:** | |
| **Description:** | Case Summary | **Search Criteria:** | 22-55145 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

If you view the | Full Docket | you will be charged for 1 Pages $0.10

**General Docket**
**United States Court of Appeals for the Ninth Circuit**

| | |
|---|---|
| **Court of Appeals Docket #:** 21-71444 | **Docketed:** 12/27/2021 |
| Michael Perry v. USDC-CALA | **Termed:** 01/20/2022 |
| **Appeal From:** U.S. District Court for Central California, Los Angeles | |
| **Fee Status:** Due | |

**Case Type Information:**
  **1)** original proceeding
  **2)** non-paid mandamus/prohibition
  **3)** null

**Originating Court Information:**
  **District:** 0973-2 : 2:20-cv-01207-DSF-SK
  **Trial Judge:** Dale S. Fischer, District Judge
  **Date Rec'd COA:**
  12/27/2021

| 12/27/2021 | 1 | FILED PETITION FOR WRIT OF MANDAMUS. DOCKETED CAUSE AND ENTERED APPEARANCES OF COUNSEL. NOTIFIED REAL PARTIES IN INTEREST OF FILING. [12325368][COURT UPDATE: New Documents Attached, resent NDA,--[Edited 12/28/2021 by BY] (BY) [Entered: 12/27/2021 03:31 PM] |
| 12/27/2021 | 2 | Filed Petitioner Michael Moshe Perry motion to proceed In Forma Pauperis. Deficiencies: None. Served on 12/27/2021. [12325373] (BY) [Entered: 12/27/2021 03:33 PM] |
| 01/11/2022 | 3 | Filed Petitioner Michael Moshe Perry letter dated re: Exhibits. Paper filing deficiency: None. [12338430] (JFF) [Entered: 01/12/2022 09:37 AM] |
| 01/18/2022 | 4 | Filed Petitioner Michael Moshe Perry supplemental to petition for the writ of mandamus. Deficiencies: None. Served on 01/18/2022. [12344192] [Edited 01/19/2022 by JFF] (JFF) [Entered: 01/19/2022 08:53 AM] |
| 01/20/2022 | 5 | Filed order (RICHARD C. TALLMAN, MORGAN B. CHRISTEN and JACQUELINE H. NGUYEN) Petitioner has not demonstrated that this case warrants the intervention of this court by means of the extraordinary remedy of mandamus. See Bauman v. U.S. Dist. Court, 557 F.2d 650 (9th Cir. 1977); see also Demos v. U.S. Dist. Court, 925 F.2d 1160, 1161 (9th Cir. 1991) ("[T]his court lacks jurisdiction to issue a writ of mandamus to a state court."). Accordingly, the petition is denied. All pending motions are denied as moot. No further filings will be accepted in this closed case. DENIED. [12345824] (WL) [Entered: 01/20/2022 11:23 AM] |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| U.S. Court of Appeals for the 9th Circuit - 06/24/2022 16:30:21 | | |
| **PACER Login:** | | **Client Code:** | |
| **Description:** | Case Summary | **Search Criteria:** | 21-71444 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

000014

7/20/22, 5:02 PM                                           20-55298 Summary

If you view the [ Full Docket ] you will be charged for 2 Pages $0.20

**General Docket**
**United States Court of Appeals for the Ninth Circuit**

| | |
|---|---|
| **Court of Appeals Docket #:** 20-55298 | **Docketed:** 03/19/2020 |
| **Nature of Suit:** 3230 Rent, Lease, Ejectment | **Termed:** 06/26/2020 |
| NP Parc Chateaux, LLC v. Michael Perry | |
| **Appeal From:** U.S. District Court for Central California, Los Angeles | |
| **Fee Status:** Due | |

**Case Type Information:**
   **1)** civil
   **2)** private
   **3)** null

**Originating Court Information:**
   **District:** 0973-2 : 2:20-cv-01207-DSF-SK
   **Trial Judge:** Dale S. Fischer, District Judge
   **Date Filed:** 02/06/2020

| **Date Order/Judgment:** | **Date Order/Judgment EOD:** | **Date NOA Filed:** | **Date Rec'd COA:** |
|---|---|---|---|
| 02/18/2020 | 02/19/2020 | 03/11/2020 | 03/12/2020 |

| 03/19/2020 | 1 | DOCKETED CAUSE AND ENTERED APPEARANCES OF COUNSEL AND PRO SE APPELLANT. SEND MQ: No. The schedule is set as follows: Appellant Michael Moshe Perry opening brief due 05/11/2020. Appellee NP Parc Chateaux, LLC answering brief due 06/11/2020. Appellant's optional reply brief is due 21 days after service of the answering brief. [11635793] (JBS) [Entered: 03/19/2020 04:16 PM] |
|---|---|---|
| 03/19/2020 | 2 | Filed Appellant Michael Moshe Perry motion to stay lower court action. Deficiencies: None. Served on 03/13/2020. [11635802] (JBS) [Entered: 03/19/2020 04:20 PM] |
| 03/20/2020 | 3 | Filed clerk order (Deputy Clerk: CO): A review of this court's docket reflects that the filing and docketing fees for this appeal remain due. Within 21 days after the date of this order, appellant shall pay to the district court the $505.00 filing and docketing fees for this appeal and file in this court proof of such payment or file a motion to proceed in forma pauperis. Failure to pay the fees or file a motion to proceed in forma pauperis shall result in the automatic dismissal of the appeal by the Clerk for failure to prosecute. See 9th Cir. R. 42-1. The Clerk shall serve a Form 4 financial affidavit on appellant.. [11637288] (RT) [Entered: 03/20/2020 03:58 PM] |
| 05/08/2020 | 4 | Filed Appellant Michael Moshe Perry motion to proceed In Forma Pauperis. Deficiencies: None. [11685201] (NAC) [Entered: 05/08/2020 01:21 PM] |
| 05/08/2020 | 5 | Filed Appellant Michael Moshe Perry motion to extend time to file appellant opening brief. Deficiencies: None. [11685207] (NAC) [Entered: 05/08/2020 01:22 PM] |
| 05/08/2020 | 6 | Filed order (Deputy Clerk: TSP) Pursuant to Ninth Circuit Rule 42-1, this appeal is dismissed for failure to respond to order. (Order dated 03/20/2020), This order served on the district court shall, 21 days after the date of the order, act as the mandate of this court. [11685231] (TSP) [Entered: 05/08/2020 01:32 PM] |
| 05/12/2020 | 7 | Filed clerk order (Deputy Clerk: KWH): On May 8, 2020, this appeal was dismissed for failure to prosecute due to appellant's failure to comply with this Court's March 20, 2020 order. That same day, however, appellant filed a motion to proceed in forma pauperis belatedly complying with the Court's order. Accordingly, this appeal is reinstated. A review of the record reflects that this appeal may be frivolous. This court may dismiss a case at any time, if the court determines the case is frivolous. See 28 U.S.C. § 1915(e)(2). Within 35 days after the date of this order, appellant must: (1) file a motion to dismiss this appeal, see Fed. R. App. P. 42(b), OR (2) file a statement explaining why the appeal is not frivolous and should go forward. If appellant does not respond to this order, the Clerk will dismiss this appeal for failure to prosecute, without further notice. See 9th Cir. R. 42-1. If appellant files a motion to dismiss the appeal, the Clerk will dismiss this appeal, pursuant to Federal Rule of Appellate Procedure 42(b). If appellant submits any response to this order other than a motion to dismiss the appeal, the court may dismiss this appeal as frivolous, without further notice. If appellant files a statement that the appeal should go forward, appellee may file a response within 10 days after service of appellant's statement. The briefing schedule for this appeal remains stayed. Appellant's motion for an extension of time to file the opening brief (Docket Entry No. [5]) is denied as moot. The Clerk shall serve on appellant: (1) a motion to voluntarily dismiss the appeal, and (2) a form statement that the appeal should go forward. Appellant may use the enclosed forms for any motion to dismiss this appeal or statement that the appeal should go forward. [11688564] (AF) [Entered: 05/12/2020 03:01 PM] |
| 06/15/2020 | 8 | Filed Appellant Michael Moshe Perry response to order to show cause. [11722833] (NAC) [Entered: 06/16/2020 07:22 AM] |
| 06/26/2020 | 9 | Filed order (SUSAN P. GRABER, KIM MCLANE WARDLAW and RYAN D. NELSON) : Upon a review of the record and the response to the court's May 12, 2020 order, we conclude this appeal is frivolous. We therefore deny appellant's motion to proceed in forma pauperis (Docket Entry No. [4]) , see 28 U.S.C. § 1915(a), and dismiss this appeal as frivolous, pursuant to 28 U.S.C. § 1915(e)(2) (court shall dismiss case at any time, if court determines it is frivolous or malicious). All other pending motions are denied as moot. DISMISSED. [11735110] (RT) [Entered: 06/26/2020 02:08 PM] |
| 07/20/2020 | 10 | MANDATE ISSUED. (SPG, KMW and RDN) [11757995] (NAC) [Entered: 07/20/2020 07:38 AM] |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| U.S. Court of Appeals for the 9th Circuit - 07/20/2022 17:01:23 | | |
| PACER Login: | | Client Code: | |
| Description: | Case Summary | Search Criteria: | 20-55298 |
| Billable Pages: | 1 | Cost: | 0.10 |

## CASE INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION

**Case Number:** 20CHUD00033
NP PARC CHATEAUX, LLC VS MOSHE PERRY

**Filing Courthouse:** Chatsworth Courthouse

**Filing Date:** 01/09/2020
**Case Type:** Unlawful Detainer/Residential (not drugs or wrongful eviction) (Limited Jurisdiction)
**Status:** Default Judgment By Clerk

Click here to access document images for this case
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page

## FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION

None

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION

### Parties

Respondent:  NP PARC CHATEAUX LLC

Plaintiff:  NP PARC CHATEAUX LLC

Defendant:  PERRY MOSHE

Attorney for Plaintiff:  CARDOSO TANIA KIM

Appellant:  PERRY MOSHE

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION

**04/15/2020** Appeal - Ntc Designating Record of Appeal APP-003/010/103; Filed by: Moshe Perry (Appellant)

**04/14/2020** Appeal - Notice of Filing of Notice of Appeal; Filed by: Clerk

**04/06/2020** Appeal - Notice of Appeal/Cross Appeal Filed; Filed by: Moshe Perry (Appellant); As to: NP Parc Chateaux, LLC (Respondent); To be paid at Central: No

**03/30/2020** Motion to Stay Execution; Filed by: Moshe Perry (Defendant)

**03/23/2020** Notice of Remand from Federal Court; Filed by: Moshe Perry (Defendant); Copy of Remand Order Attached: Yes; Date Remanded back to Superior Court: 03/18/2020

**03/10/2020** Challenge To Judicial Officer - Peremptory (170.6); Filed by: Moshe Perry (Defendant)

**03/10/2020** Ex-parte Hearing on Ex Parte Application Defendant's Motion for Reconsideration; Motion to Vacate Judgment and Motion for Sanctions scheduled for 03/10/2020 at 08:30 AM in Chatsworth Courthouse at Department F44

**03/10/2020** Minute Order (Hearing on Ex Parte Application Defendant's Motion for Recons...)

**03/10/2020** Certificate of Mailing for (Hearing on Ex Parte Application Defendant's Motion for Recons...) of 03/10/2020; Filed by: Clerk

**03/10/2020** Ex-parte Hearing on Ex Parte Application Defendant's Motion for Reconsideration; Motion to Vacate Judgment and Motion for Sanctions scheduled for 03/10/2020 at 08:30 AM in Chatsworth Courthouse at Department F44 updated:

Result Date to 03/10/2020; Result Type to Held

**03/05/2020** Writ of Possession; Issued by: NP Parc Chateaux, LLC (Plaintiff); As to: Moshe Perry (Defendant)

**03/05/2020** Default Judgment - Unlawful Detainer; Filed by: NP Parc Chateaux, LLC (Plaintiff); As to: Moshe Perry (Defendant)

**03/05/2020** Default judgment by Clerk entered for Plaintiff NP Parc Chateaux, LLC against Defendant Moshe Perry on the Complaint filed by NP Parc Chateaux, LLC on 01/09/2020 for a total of $0.00.; Judgment for possession is granted against all unnamed occupants pursuant to Code of Civil Procedure section 415.46.; Restitution and possession of the premises located at 24979 Constitution Avenue #225, Stevenson Ranch, CA 91381 is granted for plaintiff(s)

**03/05/2020** Order to Show Cause Re: Failure to File Proof of Service scheduled for 03/23/2020 at 08:30 AM in Chatsworth Courthouse at Civil Clerk's Office Not Held - Vacated by Court on 03/05/2020

**03/04/2020** Request for Entry of Default / Judgment; Filed by: NP Parc Chateaux, LLC (Plaintiff); As to: Unnamed Occupants; Moshe Perry (Defendant)

**03/04/2020** Application for Writ of Possession; Filed by: NP Parc Chateaux, LLC (Plaintiff); Daily Rental Value: 58.00

**03/04/2020** Default entered as to Moshe Perry; unnamed occupants pursuant to CCP 415.46; On the Complaint filed by NP Parc Chateaux, LLC on 01/09/2020

**02/27/2020** Updated -- Answer Jury Trial requested: Name Extension: Jury Trial requested; As To Parties: removed

**02/27/2020** Updated -- Answer - Jury Trial requested: Name Extension changed from Jury Trial requested to - Jury Trial requested; As To Parties: removed

**02/27/2020** Motion re: Defendant's request for $2,500.00 in monetary sanctions; Filed by: Moshe Perry (Defendant)

**02/27/2020** Opposition to Plaintiff's ex parte application; Filed by: Moshe Perry (Defendant)

**02/27/2020** Motion re: Defendant's motion to impeach and strike Plaintiff's Fraudulent substitute proof of service dated 1/10/20; Filed by: Moshe Perry (Defendant)

**02/26/2020** Updated -- Request for Entry of Default / Judgment: As To Parties changed from Moshe Perry (Defendant) to Moshe Perry (Defendant)

**02/26/2020** Updated -- Request for Entry of Default / Judgment: As To Parties changed from Moshe Perry (Defendant) to Moshe Perry (Defendant)

**02/26/2020** Updated -- Request for Entry of Default / Judgment: As To Parties changed from Moshe Perry (Defendant) to Moshe Perry (Defendant)

**02/26/2020** Updated -- Request for Entry of Default / Judgment: As To Unnamed Occupants changed from No to Yes; As To Parties changed from Moshe Perry (Defendant) to Moshe Perry (Defendant)

**02/26/2020** Certificate of Mailing for [Request for Entry of Default / Judgment]; Filed by: Clerk

**02/26/2020** Updated -- Motion re: Defendant's request for $2,500.00 in monetary sanctions: Status Date changed from 02/27/2020 to 02/26/2020; As To Parties: removed

**02/26/2020** Other - Peremptory Challenge to Judicial Officer; Filed by: Moshe Perry (Defendant)

**02/26/2020** Updated -- Motion re: Defendant's motion to impeach and strike Plaintiff's Fraudulent substitute proof of service dated 1/10/20: Status Date changed from 02/27/2020 to 02/26/2020; As To Parties: removed

**02/26/2020** Updated -- Opposition to Plaintiff's ex parte application: Status Date changed from 02/27/2020 to 02/26/2020; As To Parties: removed

**02/26/2020** Answer; Filed by: Moshe Perry (Defendant)

**02/26/2020** Minute Order (Hearing on Ex Parte Application TO REINSTATE THE COURTS RULIN...)

**02/26/2020** Certificate of Mailing for (Hearing on Ex Parte Application TO REINSTATE THE COURTS RULIN...) of 02/26/2020; Filed by: Clerk

LASC - Case Access

**02/26/2020** Hearing on Ex Parte Application TO REINSTATE THE COURTS RULING OF FEBRUARY 7, 2020 scheduled for 02/26/2020 at 08:30 AM in Chatsworth Courthouse at Department F44 updated: Result Date to 02/26/2020; Result Type to Held

**02/25/2020** Ex Parte Application TO REINSTATE THE COURTS RULING OF FEBRUARY 7, 2020; Filed by: NP Parc Chateaux, LLC (Plaintiff); As to: Moshe Perry (Defendant)

**02/25/2020** Request for Entry of Default / Judgment; Filed by: NP Parc Chateaux, LLC (Plaintiff); As to: Moshe Perry (Defendant)

**02/25/2020** Proof of Personal Service; Filed by: NP Parc Chateaux, LLC (Plaintiff); As to: Moshe Perry (Defendant); Service Date: 01/10/2020; Service Cost: 60.00; Service Cost Waived: No

**02/25/2020** Hearing on Ex Parte Application TO REINSTATE THE COURTS RULING OF FEBRUARY 7, 2020 scheduled for 02/26/2020 at 08:30 AM in Chatsworth Courthouse at Department F44

**02/25/2020** Default entered as to Moshe Perry; On the Complaint filed by NP Parc Chateaux, LLC on 01/09/2020

**02/21/2020** Notice of Remand from Federal Court; Filed by: Moshe Perry (Defendant); Copy of Remand Order Attached: Yes; Date Remanded back to Superior Court: 02/18/2020

**02/11/2020** Notice of Ruling; Filed by: NP Parc Chateaux, LLC (Plaintiff)

**02/11/2020** Notice of Ruling; Filed by: NP Parc Chateaux, LLC (Plaintiff)

**02/11/2020** Proof of Service by Substituted Service; Filed by: NP Parc Chateaux, LLC (Plaintiff); As to: Unnamed Occupants; Proof of Mailing Date: 01/10/2020; Service Cost: 60.00; Service Cost Waived: No

**02/07/2020** Updated -- Motion to Compel interrogatories: Filed By: Moshe Perry (Defendant); Result: Denied; Result Date: 02/07/2020

**02/07/2020** Updated -- Ex Parte Application to Strike Cross-Complaint: Filed By: NP Parc Chateaux, LLC (Plaintiff); Result: Granted; Result Date: 02/07/2020

**02/07/2020** Ex-parte Hearing on Ex Parte Application Strike Defendant's cross-complaint scheduled for 02/07/2020 at 08:30 AM in Chatsworth Courthouse at Department F44

**02/07/2020** Minute Order (Hearing on Motion to Compel interrogatories; Hearing on Ex Pa...)

**02/07/2020** Hearing on Motion to Compel interrogatories scheduled for 02/07/2020 at 08:30 AM in Chatsworth Courthouse at Department F44 updated: Result Date to 02/07/2020; Result Type to Held

**02/07/2020** Ex-parte Hearing on Ex Parte Application Strike Defendant's cross-complaint scheduled for 02/07/2020 at 08:30 AM in Chatsworth Courthouse at Department F44 updated: Result Date to 02/07/2020; Result Type to Held

**02/06/2020** Non-Jury Trial scheduled for 02/07/2020 at 08:30 AM in Chatsworth Courthouse at Department F44

**02/06/2020** Non-Jury Trial scheduled for 02/07/2020 at 08:30 AM in Chatsworth Courthouse at Department F44 Not Held - Vacated by Court on 02/06/2020

**02/05/2020** Opposition to Defendant's Motion to Compel; Filed by: NP Parc Chateaux, LLC (Plaintiff)

**02/05/2020** Proof of Service (not Summons and Complaint); Filed by: NP Parc Chateaux, LLC (Plaintiff); As to: NP Parc Chateaux, LLC (Plaintiff)

**02/05/2020** Declaration In Support of Opposition to Defendant's Motion to Compel; Filed by: NP Parc Chateaux, LLC (Plaintiff)

**02/05/2020** Ex Parte Application to Strike Cross-Complaint; Filed by: NP Parc Chateaux, LLC (Plaintiff); As to: NP Parc Chateaux, LLC (Plaintiff)

**01/31/2020** Updated -- Demurrer - with Motion to Strike (CCP 430.10) Request For Jury Trial: Filed By: Moshe Perry (Defendant); Result: Overruled; Result Date: 01/31/2020

**01/31/2020** Updated -- Ex Parte Application for order To Shorten Time on Demurrer with Motion to Strike: Filed By: NP Parc Chateaux, LLC (Plaintiff); Result: Granted; Result Date: 01/31/2020

**000019**

**01/31/2020** Defendant's Separate Statement of Undisputed Material Facts with Reasons for Discovery (and Exhibits) in Support of the Request for Judicial Notice; Supporting Declaration; (Request for a Jury Trial) (Redacted); Filed by: Moshe Perry (Defendant)

**01/31/2020** Ex Parte Application Shortening time; Filed by: Moshe Perry (Defendant); As to: Moshe Perry (Defendant)

**01/31/2020** Hearing on Ex Parte Application Shortening time scheduled for 01/31/2020 at 08:30 AM in Chatsworth Courthouse at Department F44

**01/31/2020** Motion to Compel interrogatories; Filed by: Moshe Perry (Defendant); As to: Moshe Perry (Defendant)

**01/31/2020** Hearing on Motion to Compel interrogatories scheduled for 02/07/2020 at 08:30 AM in Chatsworth Courthouse at Department F44

**01/31/2020** STATEMENT OF UNDISPUTED MATERIAL; Filed by: Moshe Perry (Defendant)

**01/31/2020** VERIFIED ADDITIONAL FORM INTERROGATORIES; Filed by: Moshe Perry (Defendant)

**01/31/2020** VERIFIED AMENDED ADDITIONAL FORM INTERROGATORIES; Filed by: Moshe Perry (Defendant)

**01/31/2020** VERIFIED REQUEST FOR ADMISSION SET-ONE; Filed by: Moshe Perry (Defendant)

**01/31/2020** VERIFIED FIRST SET OF REQUESTS FOR THE PRODUCTION DOCUMENTS; Filed by: Moshe Perry (Defendant)

**01/31/2020** FORM INTERROGATORIES; Filed by: Moshe Perry (Defendant)

**01/31/2020** Updated -- Ex Parte Application Shortening time: Filed By: Moshe Perry (Defendant); Result: Denied; Result Date: 01/31/2020

**01/31/2020** Minute Order (Hearing on Ex Parte Application for order To Shorten Time on ...)

**01/31/2020** Certificate of Mailing for (Hearing on Ex Parte Application for order To Shorten Time on ...) of 01/31/2020; Filed by: Clerk

**01/31/2020** Hearing on Ex Parte Application for order To Shorten Time on Demurrer with Motion to Strike scheduled for 01/31/2020 at 08:30 AM in Chatsworth Courthouse at Department F44 updated: Result Date to 01/31/2020; Result Type to Held

**01/31/2020** Hearing on Ex Parte Application Shortening time scheduled for 01/31/2020 at 08:30 AM in Chatsworth Courthouse at Department F44 updated: Result Date to 01/31/2020; Result Type to Held

**01/31/2020** On the Court's own motion, Hearing on Demurrer - with Motion to Strike (CCP 430.10) scheduled for 02/19/2020 at 08:30 AM in Chatsworth Courthouse at Department F44 Held - Advanced and Heard on 01/31/2020

**01/30/2020** Ex Parte Application for order To Shorten Time on Demurrer with Motion to Strike; Filed by: NP Parc Chateaux, LLC (Plaintiff); As to: Moshe Perry (Defendant)

**01/30/2020** Opposition and Objections to Defendant's Request for Judicial Notice; Filed by: NP Parc Chateaux, LLC (Plaintiff)

**01/30/2020** Request for Judicial Notice; Filed by: NP Parc Chateaux, LLC (Plaintiff)

**01/30/2020** Hearing on Ex Parte Application for order To Shorten Time on Demurrer with Motion to Strike scheduled for 01/31/2020 at 08:30 AM in Chatsworth Courthouse at Department F44

**01/28/2020** Supplemental Declaration Defendant's supplemental to his notice of general demurrer; Filed by: Moshe Perry (Defendant)

**01/21/2020** Updated -- Order on Court Fee Waiver (Superior Court): Status Date changed from 01/17/2020 to 01/21/2020; Status changed from TP to Filed

**01/17/2020** Updated -- Request to Waive Court Fees: Filed By: Moshe Perry (Defendant); Result: Granted; Result Date: 01/17/2020

**01/17/2020** Order on Court Fee Waiver (Superior Court); TP by:

**01/16/2020** Request to Waive Court Fees; Filed by: Moshe Perry (Defendant)

**01/16/2020** Defendant's Notice of General Demurrer and Verified Demurrer with Motion to Strike Unlawful Detainer Complaint: Memorandum of Points and Authorities; Proposed Order (redacted); Filed by: Moshe Perry (Defendant)

**01/16/2020** Updated -- Demurrer - with Motion to Strike (CCP 430.10) Request For Jury Trial: Name Extension: Request For Jury Trial; As To Parties: removed

**01/16/2020** Hearing on Demurrer - with Motion to Strike (CCP 430.10) scheduled for 02/19/2020 at 08:30 AM in Chatsworth Courthouse at Department F44

**01/16/2020** Demurrer - with Motion to Strike (CCP 430.10); Filed by: Moshe Perry (Defendant)

**01/10/2020** Notice of Unlawful Detainer mailed 01/10/2020

**01/09/2020** Complaint; Filed by: NP Parc Chateaux, LLC (Plaintiff); As to: Moshe Perry (Defendant)

**01/09/2020** Summons on Complaint; Issued and Filed by: NP Parc Chateaux, LLC (Plaintiff); As to: Moshe Perry (Defendant)

**01/09/2020** Civil Case Cover Sheet; Filed by: NP Parc Chateaux, LLC (Plaintiff); As to: Moshe Perry (Defendant)

**01/09/2020** Notice of Case Assignment - Limited Civil Case; Filed by: Clerk

**01/09/2020** Property Owner/Landlord Only Hearing Notice; Filed by: Clerk

**01/09/2020** Order to Show Cause Re: Failure to File Proof of Service scheduled for 03/23/2020 at 08:30 AM in Chatsworth Courthouse at Civil Clerk's Office

**01/09/2020** Case assigned to Hon. Tricia Taylor in Department F44 Chatsworth Courthouse

**000021**

3/4/2020                    https   a.asosdinc.com/ca/#guest_ViewEnhancedService;i    9ELUJ-EFUXYC4

# Electronic Service Notification

                                         👤 Guest User     🔌 Login

You have received this notification at the request of the submitting attorney or party as a means to electronically serve you a copy of the documents described below, and associated with **20CHUD00033 - NP PARC CHATEAUX, LLC vs MOSHE PERRY** in the *North Valley District Chatsworth Courthouse Department F44* .

---

👍 **Like this e-service feature. Click here to try Attorney Service of San Dimas to e-file and e-serve your documents too!**                                                                  ✕

---

### Served Documents

The following documents have been electronically served. Click the document name / title, or the print icon on the right to open then print or download.

| Document Name / Title | Status | Actions |
|---|---|---|
| 📄 Request for Entry of Default / Judgment (https://efile.asosdinc.com/ca/GuestFileDownload/CCF_002485.pdf?idType=service&id=E89ELUJ-EFUXYC4&a=6204811) | Served – 03/04/2020 12:16 PM PST (Opened) | 🖨 (https://efile.asosdinc.c idType=service&id=E89 |
| 📄 Default Judgment - Unlawful Detainer (https://efile.asosdinc.com/ca/GuestFileDownload/CCF_002486.pdf?idType=service&id=E89ELUJ-EFUXYC4&a=6204812) | Served – 03/04/2020 12:15 PM PST (Opened) | 🖨 (https://efile.asosdinc.c idType=service&id=E89 |
| 📄 Application for Writ of Possession (https://efile.asosdinc.com/ca/GuestFileDownload/CCF_002467.pdf?idType=service&id=E89ELUJ-EFUXYC4&a=6204814) | Served – 03/04/2020 12:15 PM PST (Not Opened) | 🖨 (https://efile.asosdinc.c idType=service&id=E89 |

**000022**


Writ of Execution
(https://efile.asosdinc.com/ca/GuestFileDownload/CCF_002488.pdf?
idType=service&id=E89ELUJ-EFUXYC4&a=6204816)

Served –
03/04/2020
12:16 PM
PST
(Opened)

(https://efile.asosdinc.c
idType=service&id=E89

---

## Electronic Service Status Report

Electronic service notifications have been sent to the following service contacts. The status column will indicate whether or not the contact has opened the document.

| Service Contact | Document | Status |
| --- | --- | --- |
| Tania Cardoso (t...@hollenbecklaw.com) | Request for Entry of Default / Judgment | Served - 03/04/2020 12:15 PM PST (Not Opened) |
| | Default Judgment - Unlawful Detainer | Served - 03/04/2020 12:15 PM PST (Not Opened) |
| | Application for Writ of Possession | Served - 03/04/2020 12:15 PM PST (Not Opened) |
| | Writ of Execution | Served - 03/04/2020 12:15 PM PST (Not Opened) |

---

## Status Key:

**Served** - Email was sent to service contact, and service contact clicked Accept Service button to view this page.
**Served (Opened)** - Service contact opened document to view or print.
**Served (Not Opened)** - Service contact has NOT opened the document to print or view.

**000023**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
### North Valley District, Chatsworth Courthouse, Department F44

**20CHUD00033**                                                        February 26, 2020
**NP PARC CHATEAUX, LLC vs MOSHE PERRY**                                        8:30 AM

Judge: Honorable Tricia Taylor                    CSR: Electonically Recorded
Judicial Assistant: M. Henderson                  ERM: None
Courtroom Assistant: None                         Deputy Sheriff: P. Choi

APPEARANCES:

For Plaintiff(s): Tania Kim Cardoso by Tania Cardoso

For Defendant(s): Moshe Perry

NATURE OF PROCEEDINGS: Hearing on Ex Parte Application TO REINSTATE THE COURTS RULING OF FEBRUARY 7, 2020

The matter is called for hearing.

The parties are sworn and testify.

The Court inquires with the parties.

The Court takes the matter under submission.

Later, the Court rules as follows:

The Court heard oral argument regarding the following motions:

1) Defendant's 170.6 Motion (filed on February 26, 2020);

2) Defendant's Motion to Impeach and Strike Plaintiff's Fraudulent Substitute Proof of Service Dates 1.10.2020 and Fraudulent Revision Personal Service Proof of Service 2.25.2020;

3) Defendant's Motion for $2500 in Monetary Sanctions Pursuant to Code of Civil Procedure Section 1285; and

4) Defendant's Opposition to Plaintiff's ExParte Application to Reinstate the Orders of February 7th, 2020.

- As to the above, the Court orders the following:

- Defendant's 170.6 Motion is deemed untimely.

Minute Order                                          Page 1 of 2

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
North Valley District, Chatsworth Courthouse, Department F44

**20CHUD00033**                                          February 26, 2020
**NP PARC CHATEAUX, LLC  vs MOSHE PERRY**                         8:30 AM

Judge: Honorable Tricia Taylor            CSR: Electonically Recorded
Judicial Assistant: M. Henderson          ERM: None
Courtroom Assistant: None                 Deputy Sheriff: P. Choi

- Defendant's Motion to Impeach and Strike Plaintiff's Fraudulent Substitute Proof of Service is denied.

- Defendant's Motion for Monetary Sanctions is denied.

- As to Defendant's Opposition to Plaintiff's Ex Parte Motion, the Court rules as follows: the Order to "Reinstate" is denied. This Court is not aware of any proceeding or mechanism by which the orders of February 7th, 2020 were rendered moot or improper. To that extent, the Orders made by this Court on February 7th, 2020 remain in effect.

Further, the Defendant argued to the Court during today's hearing that he had already filed an answer in this matter. However, the Defendant did not file his answer until after the conclusion of the hearing on February 26th, 2020. The Court had previously ordered that the Defendant's demurrer was overruled and the Defendant was to file an answer on or before February 7th, 2020.(See Minute Order dated January 31st, 2020). The Court thereby deems the answer filed by the Defendant on today's date untimely.

Certificate of Mailing is attached.

> *Mr. Perry's Note: State Judge Tricia Taylor is outrightly lying. Mr. Perry did not file his answer at the conclusion of the hearing, he filed it at the beginning of the hearing on February 26, 2020. Mr. Perry  audio recorded this on his cell phone.  The state court docket was later modified as to show Mr. Perry filed his answer the day after on February 27, 2020.  How else Judge Taylor "Knew" Mr. Perry filed on February 26, 2020, when the docket shows it was "filed" on February 27, 2020*

000025 Ex. 35

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS: Chatsworth Courthouse 9425 Penfield Avenue, Chatsworth, CA 91311 | **FILED** Superior Court of California County of Los Angeles 02/26/2020 Sherri R. Carter, Executive Officer / Clerk of Court By: M. Henderson Deputy |
| PLAINTIFF/PETITIONER: NP Parc Chateaux, LLC | |
| DEFENDANT/RESPONDENT: Moshe Perry | |
| **CERTIFICATE OF MAILING** | CASE NUMBER: 20CHUD00033 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Hearing on Ex Parte Application TO REINSTATE THE COURTS RULIN...) of 02/26/2020 upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Chatsworth, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

Tania Kim Cardoso
Law Offices of Hollenbeck & Cardoso, LLP
7755 Center Avenue Suite 1100
Huntington Beach, CA  92647

Moshe Perry
23705 Vanowen St. #262
West Hills, CA  91307

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 02/27/2020

By:  M. Henderson
Deputy Clerk

CERTIFICATE OF MAILING

000026  Ex. 36

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

NORTH VALLEY DISTRICT-CHATSWORTH COURTHOUSE
9425 PENFIELD AVENUE
CHATSWORTH, CALIFORNIA 91311

9130713030 C067



U.S. POSTAGE 》 PITNEY BOWES

ZIP 91311 $ 000.50°
02 4M
0000336207 FEB 27 2020

EJ-130

| | | FOR   USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY:        STATE BAR NO.:
NAME: Linda T. Hollenbeck 145048/Tania K. Cardoso 244473
FIRM NAME: Hollenbeck & Cardoso. LLP
STREET ADDRESS: 7755 Center Avenue, Suite 1100
CITY: Huntington Beach        STATE: Ca   ZIP CODE: 92647
TELEPHONE NO.: 562-912-7712   FAX NO.: 562-912-7728
E-MAIL ADDRESS: Lhollenbeck@hollenbecklaw.com
ATTORNEY FOR (name): NP Parc Chateaux, LLC
    ORIGINAL JUDGMENT CREDITOR        ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 9425 Penfield Avenue
MAILING ADDRESS: 9425 Penfield Avenue
CITY AND ZIP CODE: Chatsworth. CA 91311
BRANCH NAME: Chatsworth Courthouse

Plaintiff: NP Parc Chateaux, LLC        R:
Defendant: Moshe Perry. Et al.        20CHUD00033

|   EXECUTION (Money Judgment) | ☒ Limited Civil (Including Small Claims) |
|---|---|
| WRIT OF  ☒ POSSESSION OF   ☐ Personal Property | |
| ☐ SALE   ☒ Real Property | ☐ Unlimited Civil Case (Including Family and Probate) |

1. To the Sheriff or Marshal of the County of: Los Angeles
   You are directed to enforce the judgment described below with daily interest and your costs as provided by law.
2. To any registered process server: You are authorized to serve this writ only in accordance with CCP 699. 80 or CCP 715.040.
3. (Name): NP Parc Chateaux. LLC
   is the  ☒ original judgment creditor   ☐ assignee of record   whose address is shown on this form above the court's name.
4. Judgment debtor (name, type of legal entity if not a natural person, and last known address):

   Moshe Perry

   24979 Constitution Avenue #225,
   Stevenson Ranch, Ca. 91381

   ☐ Additional judgment debtors on next page
5. Judgment entered on (date): 03/05/2020
6. ☐ Judgment renewed on (dates):
7. Notice of sale under this writ
   a. ☒ has not been requested.
   b. ☐ has been requested (see next page).
8. ☐ Joint debtor information on next page.
   [SEAL]

9. ☒ See next page for information on real or personal property to be delivered under a writ of possession or sold under a writ of sale.
10. ☐ This writ is issued on a sister-state judgment.
    For items 11-17, see form MC-012 and form 13-INFO
11. Total judgment (as entered or renewed) ......... Possession Only
12. Costs after judgment (CCP 685.090) ............ $ Possession Only
13. Subtotal (add 11 and 12) ...................... $ Possession Only
14. Credits to principal (after credit to interest) $ Possession Only
15. Principal remaining due (subtract 14 from 13) .. $ Possession Only
16. Accrued interest remaining due per CCP 685.050(b) (not on GC 6103.5 fees) .... $ Possession Only
17. Fee for issuance of writ .............. $0.00
18. Total (add 15, 16, and 17) ........... $40.00
19. Levying officer:
    a. Add daily interest from date of writ (at the legal rate on 15) (not on GC 6103.5 fees) ........ $ Possession Only
    b. Pay directly to court costs included in 11 and 17 (GC 6103.5, 68637; CCP 699.520(i)) ......... $ Possession Only
20. ☐ The amounts called for in items 11-19 are different for each debtor. These amounts are stated for each debtor on Attachment 20.

Sherri R. Carter Executive Officer / Clerk of Court
Issued on (date): 03/05/2020   Clerk, by   Galustyan   Deputy

NOTICE TO PERSON SERVED: SEE PAGE 3 FOR IMPORTANT INFORMATION.

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
EJ-130 [Rev. January 1, 2016]

**WRIT OF EXECUTION**

Code of Civil Procedure, §§ 699.520, 712.010, 715.010
Government Code, § 6103.5
www.courts.ca.gov

Electronically Received 03/04/2020 10:51 AM

POSSESSION ONLY

000028

EJ-130

| | CASE NUMBER: |
|---|---|
| Plaintiff: NP Parc Chateaux, LLC | 20CHUD00033 |
| Defendant: Moshe Perry, Et al. | |

21. ☐ Additional judgment debtor *(name, type of legal entity if not a natural person, and last known address):*

22. ☐ Notice of sale has been requested by *(name and address):*

23. ☐ Joint debtor was declared bound by the judgment (CCP 989-994)
   a. on *(date):*
   b. name, type of legal entity if not a natural person, and last known address of joint debtor:

   a. on *(date):*
   b. name, type of legal entity if not a natural person, and last known address of joint debtor:

   c. ☐ Additional costs against certain joint debtors are itemized: ☐ Below ☐ On Attachment 3c

24. ☒ (Writ of Possession or Writ of Sale) Judgment was entered for the following:
   a. ☒ Possession of real property: The complaint was filed on *(date):* 01/09/2020
      (Check (1) or (2). Check (3) if applicable. Complete (4) if (2) or (3) have been checked.)

      (1) ☒ The Prejudgment Claim of Right to Possession was served in compliance with CCP 415.46. The judgment includes all tenants, subtenants, named claimants, and other occupants of the premises.

      (2) ☐ The Prejudgment Claim of Right to Possession was NOT served in compliance with CCP 415.46.

      (3) ☐ The unlawful detainer resulted from a foreclosure sale of a rental housing unit. (An occupant not named in the judgment may file a Claim of Right to Possession at any time up to and including the time the levying officer returns to effect eviction, regardless of whether a Prejudgment Claim of Right to Possession was served.) (See CCP 415.46 and 1174.3(a)(2).)

      (4) If the unlawful detainer resulted from a foreclosure (item 24a(3)), or if the Prejudgment Claim of Right to Possession was not served in compliance with CCP 415.46 (item 24a(2)), answer the following:

         (a) The daily rental value on the date the complaint was filed was $58.00
         (b) The court will hear objections to enforcement of the judgment under CCP 1174.3 on the following dates *(specify):*

   b. ☐ Possession of personal property.
      ☐ If delivery cannot be had, then for the value *(itemize in 24e)* specified in the judgment or supplemental order.
   c. ☐ Sale of personal property.
   d. ☐ Sale of real property.
   e. The property is described: ☒ Below ☐ On Attachment 24e
      24979 Constitution Avenue.#225, Stevenson Ranch, Ca, 91381

**WRIT OF EXECUTION**

000029

EJ-130

| | CASE NUMBER: |
|---|---|
| Plaintiff: NP Parc Chateaux, LLC | 20CHUD00033 |
| Defendant: Moshe Perry. Et al. | |

## NOTICE TO PERSON SERVED

WRIT OF EXECUTION OR SALE. Your rights and duties are indicated on the accompanying *Notice of Levy* (form EJ-150).

WRIT OF POSSESSION OF PERSONAL PROPERTY. If the levying officer is not able to take custody of the property, the levying officer will demand that you turn over the property. If custody is not obtained following demand, the judgment may be enforced as a money judgment for the value of the property specified in the judgment or in a supplemental order.

WRIT OF POSSESSION OF REAL PROPERTY. If the premises are not vacated within five days after the date of service on the occupant or, if service is by posting, within five days after service on you, the levying officer will remove the occupants from the real property and place the judgment creditor in possession of the property. Except for a mobile home, personal property remaining on the premises will be sold or otherwise disposed of in accordance with CCP 1174 unless you or the owner of the property pays the judgment creditor the reasonable cost of storage and takes possession of the personal property not later than 15 days after the time the judgment creditor takes possession of the premises.

EXCEPTION IF RENTAL HOUSING UNIT WAS FORECLOSED. If the residential property that you are renting was sold in a foreclosure, you have additional time before you must vacate the premises. If you have a lease for a fixed term, such as for a year, you may remain in the property until the term is up. If you have a periodic lease or tenancy, such as from month-to-month, you may remain in the property for 90 days after receiving a notice to quit. A blank form *Claim of Right to Possession and Notice of Hearing* (form CP10) accompanies this writ. You may claim your right to remain on the property by filling it out and giving it to the sheriff or levying officer.

EXCEPTION IF YOU WERE NOT SERVED WITH A FORM CALLED PREJUDGMENT CLAIM OF RIGHT TO POSSESSION. If you were not named in the judgment for possession and you occupied the premises on the date on which the unlawful detainer case was filed, you may object to the enforcement of the judgment against you. You must complete the form *Claim of Right to Possession and Notice of Hearing* (form CP10) and give it to the sheriff or levying officer. A blank form accompanies this writ. You have this right whether or not the property you are renting was sold in a foreclosure.

EJ-130 [Rev. January 1, 2016]

**WRIT OF EXECUTION**

Page 3 of 3

**000030**

CIV-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: | FOR COURT USE ONLY |
|---|---|---|
| NAME: Linda T. Hollenbeck 145048/Tania K. Cardoso 244473 | | |
| FIRM NAME: Hollenbeck & Cardoso, LLP | | |
| STREET ADDRESS: 7755 Center Avenue, Suite 1100 | | |
| CITY: Huntington Beach   STATE: Ca   ZIP CODE: 92647 | | |
| TELEPHONE NO: 562-912-7712   FAX NO: 562-912-7728 | | |
| E-MAIL ADDRESS: Lhollenbeck@h-llenbeckla .com | | |
| ATTORNEY FOR (name): NP Parc Chateaux LLC | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 9425 Penfield Avenue
MAILING ADDRESS: 9425 Penfield Avenue
CITY AND ZIP CODE: Chatsworth, CA 91311
BRANCH NAME: Chatsworth Courthouse

Plaintiff/Petitioner: NP Parc Chateaux, LLC
Defendant/Respondent: Bioshe Perry, Et al.

| REQUEST FOR (Application) | [ ] Entry of Default   [✓] Clerk's Judgment<br>[ ] Court Judgment | CASE NUMBER:<br>20CHUD00033 |
|---|---|---|

**Not for use in actions under the Fair Debt Buying Practices Act (Civ. Code, § 1788.50 et seq.) (see CIV-105)**

1. TO THE CLERK: On the complaint or cross-complaint filed
   a. on (date): 01/09/2020
   b. by (name): NP Parc Chateaux LLC
   c. [ ] Enter default of defendant (names):

   d. [ ] I request a court judgment under Code of Civil Procedure sections 585(b), 585(c), 989, etc., against defendant (names):

   (Testimony required. Apply to the clerk for a hearing date, unless the court will enter a judgment on an affidavit under Code Civ. Proc., § 585(d).)
   e. [✓] Enter clerk's judgment
      (1) [✓] for restitution of the premises only and issue a writ of execution on the judgment. Code of Civil Procedure section 1174(c) does not apply. (Code Civ. Proc., § 1169.)
         [✓] Include in the judgment all tenants, subtenants, named claimants, and other occupants of the premises. The Prejudgment Claim of Right to Possession was served in compliance with Code of Civil Procedure section 415.46.
      (2) [ ] under Code of Civil Procedure section 585(a). (Complete the declaration under Code Civ. Proc., § 585.5 on the reverse (item 5).)
      (3) [✓] for default previously entered on (date): 2/25/2020

2. Judgment to be entered.

| | Amount | Credits acknowledged | Balance |
|---|---|---|---|
| a. Demand of complaint | $ | $ | $ |
| b. Statement of damages* | | | |
| (1) Special | $ | $ | $ |
| (2) General | $ | $ | $ |
| c. Interest | $ | $ | $ |
| d. Costs (see reverse) | $ | $ | $ |
| e. Attorney fees | $ | $ | $ |
| f. TOTALS | $ | $ | $ |

   g. Daily damages were demanded in complaint at the rate of: $ 58.00    per day beginning (date): 01/01/2020
   (* Personal injury or wrongful death actions; Code Civ. Proc., § 425.11.)

3. [✓] (Check if filed in an unlawful detainer case.) Legal document assistant or unlawful detainer assistant information is on the reverse (complete item 4).

Date: 3/4/2020

Linda T. Hollenbeck 145048/Tania K. Cardoso 244473
(TYPE OR PRINT NAME)                                           ▶           (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

| FOR COURT USE ONLY | (1) [ ] Default entered as requested on (date): | |
|---|---|---|
| | (2) [ ] Default NOT entered as requested (state reason): | |
| | Clerk, by | , Deputy   Page 1 of 2 |

Form Adopted for Mandatory Use
Judicial Council of California
CIV-100 [Rev. January 1, 2018]

**REQUEST FOR ENTRY OF DEFAULT**
(Application to Enter Default)

Code of Civil Procedure, §§ 585–587, 1169
www.courts.ca.gov

000031

CIV-100

| Plaintiff/Petitioner: | NP Parc Chateaux, LLC | CASE NUMBER: |
|---|---|---|
| Defendant/Respondent: | Moshe Perry, Et al. | 20CHUD00033 |

4. **Legal document assistant or unlawful detainer assistant (Bus. & Prof. Code, § 6400 et seq.).** A legal document assistant or unlawful detainer assistant ☐ did ☒ did not for compensation give advice or assistance with this form. If declarant has received any help or advice for pay from a legal document assistant or unlawful detainer assistant, state:

   a. Assistant's name:
   b. Street address, city, and zip code:

   c. Telephone no.:
   d. County of registration:
   e. Registration no.:
   f. Expires on (date):

5. ☒ **Declaration under Code Civ. Proc., § 585.5** (for entry of default under Code Civ. Proc., § 585(a)). This action

   a. ☐ is ☒ is not on a contract or installment sale for goods or services subject to Civ. Code, § 1801 et seq. (Unruh Act).

   b. ☐ is ☒ is not on a conditional sales contract subject to Civ. Code, § 2981 et seq. (Rees-Levering Motor Vehicle Sales and Finance Act).

   c. ☐ is ☒ is not on an obligation for goods, services, loans, or extensions of credit subject to Code Civ. Proc., § 395(b).

6. **Declaration of mailing (Code Civ. Proc., § 587).** A copy of this Request for Entry of Default was

   a. ☐ not mailed to the following defendants, whose addresses are unknown to plaintiff or plaintiff's attorney (names):

   b. ☒ mailed first-class, postage prepaid, in a sealed envelope addressed to each defendant's attorney of record or, if none, to each defendant's last known address as follows:

     (1) Mailed on (date): 3/4/2020
     All Unnamed Occupants

     24979 Constitution Avenue #225,
     Stevenson Ranch, Ca, 91381

     (2) To (specify names and addresses shown on the envelopes):
     Moshe Perry

     24979 Constitution Avenue #225, Stevenson Ranch, Ca, 91381

I declare under penalty of perjury under the laws of the State of California that the foregoing items 4, 5, and 6 are true and correct.

Date: 3/4/2020

Linda T. Hollenbeck 145048/Tania K. Cardoso 244473 ▶

     (TYPE OR PRINT NAME)      (SIGNATURE OF DECLARANT)

7. **Memorandum of costs** (required if money judgment requested). Costs and disbursements are as follows (Code Civ. Proc., § 1033.5):

   a. Clerk's filing fees . . . . . . . . . . . . . . . . . . . . $
   b. Process server's fees . . . . . . . . . . . . . . . . . $
   c. Other (specify):             $
   d.                        $
   e. TOTAL . . . . . . . . . . . . . . . . . . . . . . . . . . $
   f. ☐ Costs and disbursements are waived.
   g. I am the attorney, agent, or party who claims these costs. To the best of my knowledge and belief this memorandum of costs is correct and these costs were necessarily incurred in this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 3/4/2020

Linda T. Hollenbeck 145048/Tania K. Cardoso 244473 ▶

     (TYPE OR PRINT NAME)      (SIGNATURE OF DECLARANT)

8. **Declaration of nonmilitary status** (required for a judgment). No defendant named in item 1c of the application is in the military service as that term is defined by either the Servicemembers Civil Relief Act, 50 U.S.C. App. § 3911(2), or California Military and Veterans Code section 400(b).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 3/4/2020

Linda T. Hollenbeck 145048/Tania K. Cardoso 244473 ▶

     (TYPE OR PRINT NAME)      (SIGNATURE OF DECLARANT)

CIV-100 [Rev. January 1, 2018]

**REQUEST FOR ENTRY OF DEFAULT**
(Application to Enter Default)

Page 2 of 2

**000032**

UD-110

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*

Linda T. Hollenbeck 145048/Tania K. Cardoso 244473
HOLLENBECK & CARDOSO LLP.
7755 Center Avenue, Suite 1100, Huntington Beach, CA 92647

TELEPHONE NO.: (562) 912-7712    NO. *(Optional):* (562) 912-7728
E-MAIL ADDRESS *(Optional):* Lhollenbeck@hollenbec .com
ATTORNEY FOR *(Name):* NP Parc Chateaux, LLC

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   **Los Angeles**
STREET ADDRESS: 9425 Penfield Avenue
MAILING ADDRESS: 9425 Penfield Avenue
CITY AND ZIP CODE: Chatsworth, CA 91311
BRANCH NAME: Chatsworth Courthouse

PLAINTIFF: NP Parc Chateaux, LLC

DEFENDANT: Moshe Perry. Et al.

| JUDGMENT—UNLAWFUL DETAINER | CASE NUMBER: |
|---|---|
| ☒ By Clerk   ☒ By Default   ☐ After Court Trial<br>☐ By Court   ☒ Possession Only   ☐ Defendant Did Not Appear at Trial | 20CHUD00033 |

**JUDGMENT**

1. ☒   **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☒ Clerk's Judgment (Code Civ. Proc., § 1169). For possession only of the premises described on page 2 (Item 4).
   e. ☐ Court Judgment (Code Civ. Proc., § 585(b)). The court considered
      (1) ☐ plaintiff's testimony and other evidence.
      (2) ☐ plaintiff's or others' written declaration and evidence (Code Civ. Proc., § 585(d)).

2. ☐   **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time):*
      before *(name of judicial officer):*
   b. Appearances by:
      ☐ Plaintiff *(name each):*                     ☐ Plaintiff's attorney *(name each):*
                                                          (1)
                                                          (2)
      ☐ Continued on *Attachment 2b* (form MC-025).
      ☐ Defendant *(name each):*                     ☐ Defendant's attorney *(name each):*
                                                          (1)
                                                          (2)
      ☐ Continued on *Attachment 2b* (form MC-025).
   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.
   d. ☐ A statement of decision (Code Civ. Proc., § 632)   ☐ was not   ☐ was   requested.

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
UD-110 [New January 1, 2003]

**JUDGMENT—UNLAWFUL DETAINER**

Code of Civil Procedure, §§ 415.46,
585(d), 664.6, 1169

000033

000034

| | CASE NUMBER: |
|---|---|
| PLAINTIFF: NP Parc Chateaux LLC | 20CHUD00033 |
| DEFENDANT: Moshe Perry, Et al. | |

**JUDGMENT IS ENTERED AS FOLLOWS BY:** ☐ THE COURT   ☒ THE CLERK

3. **Parties.** Judgment is
   a. ☒ for plaintiff (name each): **NP Parc Chateaux, LLC**
      and against defendant (name each):
      **Moshe Perry, All unnamed occupants**
      ☐ Continued on Attachment 3a (form MC-025).
   b. ☐ for defendant (name each):

4. ☒ Plaintiff ☐ Defendant is entitled to possession of the premises located at (street address, apartment, city, and county):
   **24979 Constitution Avenue #225, Stevenson Ranch, Ca, 91381**

5. ☒ Judgment applies to all occupants of the premises including tenants, subtenants if any, and named claimants if any (Code Civ. Proc., §§ 715.010, 1169, and 1174.3).

6. **Amount and terms of judgment**
   a. ☐ Defendant named in item 3a above must pay plaintiff on the complaint.
   b. ☐ Plaintiff is to receive nothing from defendant named in item 3b.
      ☐ Defendant named in item 3b is to recover costs: $ _____ and attorney fees: $ _____

|   | | $ |
|---|---|---|
| (1) | Past-due rent | $ |
| (2) | Holdover damages | $ |
| (3) | Attorney fees | $ |
| (4) | Costs | $ |
| (5) | ☐ Other (specify): | $ |
| **(6)** | **TOTAL JUDGMENT** | $ |

   c. ☒ The lease is forfeited. ☒ The rental agreement is canceled.

7. ☐ **Conditional judgment.** Plaintiff has breached the agreement to provide habitable premises to defendant as stated in Judgment—Unlawful Detainer Attachment (form UD-110S), which is attached.

8. ☐ Other (specify):

☐ Continued on Attachment 8 (form MC-025).

Date: _____
   _____
   JUDICIAL OFFICER

Date: _____ ☐ Clerk, by _____, Deputy

---

**CLERK'S CERTIFICATE (Optional)**

I certify that this is a true copy of the original judgment on file in the court.

Date: _____

(SEAL)

Clerk, by _____, Deputy

---

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| Linda T. Hollenbeck 145048/Tania K. Cardoso 244473<br>HOLLENBECK & CARDOSO LLP<br>7755 Center Avenue, Suite 1100, Huntington Beach, CA 92647<br>562-912-7712 | | |

ATTORNEY FOR (Name): NP Parc Chateaux, LLC

### SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
1725 Main Street

PLAINTIFF:
NP Parc Chateaux, LLC

DEFENDANT:
Moshe Perry, Et al.

| APPLICATION FOR ISSUANCE OF<br>WRIT OF EXECUTION, POSSESSION OR SALE | CASE NUMBER:<br>20CHUD00033 |
|---|---|

I, Linda T. Hollenbeck / Tania K. Cardoso, declare under penalty of perjury under the laws of the State of California:

1. I am the Attorney for Plaintiff in the above-entitled action.

2. The following ☒ Judgment / ☐ Order was made and entered on _____
   ☐ Judgment was renewed on _____

3. Judgment/Order as entered/renewed provides as follows:

   Judgment Creditor: (name and address)
   NP Parc Chateaux, LLC

   C/o Hollenbeck & Cardoso LLP
   7755 Center Avenue, Suite 1100, Huntington Beach, CA 92647

   Judgment Debtor: (name and address)
   Moshe Perry, All unnamed occupants

   24979 Constitution Avenue #225, Stevenson Ranch, Ca, 91381

   Amount of Order and/or Description of Property:
   **24979 Constitution Avenue #225, Stevenson Ranch, Ca, 91381**

4. ☒ (Unlawful Detainer Proceedings Only) The daily rental value of the property as of the date the complaint was filed is $58.00

5. ☒ This is an unlawful detainer judgment, and a Prejudgment Claim of Right to Possession was served on the occupant(s) pursuant to Code of Civil Procedure section 415.46. Pursuant to Code of Civil Procedure sections 715.010 and 1174.3, this writ applies to all tenants; subtenants, if any; named claimants, if any; and any other occupants of the premises.

6. ☐ This is a Family Law Judgment/Order entitled to priority under Code of Civil Procedure section 699.510.

7. This writ is to be issued to: ☒ Los Angeles County   ☐ Other (Specify): _____

000035

| Case Title: NP Parc Chateaux, LLC v. Moshe Perry, Et al. | Case Number: 20CHUD00033 |
|---|---|

## INSTRUCTIONS

Fill in date below showing total of amount ordered (do not show separate amounts for principal, fees and pre-judgment costs and interest), amount actually paid, date paid and whether applied to order and/or to accrued interest if accrued interest is claimed, and balance due. Due date of costs of enforcement is the date they were added to the judgment pursuant to a cost bill after judgment, not date incurred.

Failure to claim interest shall be deemed a waiver thereof for the purpose of this writ only.

ON INSTALLMENT ORDERS: EACH PAYMENT ORDERED AND DUE DATE MUST BE STATED SEPARATELY.
**PERSON TO WHOM AMOUNT IS ORDERED PAID MUST SIGN DECLARATION.**

| TOTAL ORDERED PAID | | ACTUALLY PAID | | | BALANCE DUE | |
|---|---|---|---|---|---|---|
| DUE DATE | AMOUNT | DATE PAID | ON ORDER | ACCRUED INTEREST | ON ORDER | ACCRUED INTEREST |
| | | | POSSESSION ONLY | | | |

There is actually remaining due on said order the sum of $__________ plus $__________ accrued costs plus $ C/o Hollenbeck accrued interest plus $__________ interest per day accruing from date of this application to date of writ, for which sum it is prayed that a writ of possession/sale/execution issue in favor of

NP Parc Chateaux, LLC
(Judgment Creditor)

and against Moshe Perry, All unnamed occupants
(Judgment Debtor)

to the County of Los Angeles

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on 3/4/2020

____________________
(Signature)

LASC LACIV 096 (Rev. 08-07)
For Optional Use

**APPLICATION FOR ISSUANCE OF WRIT OF EXECUTION, POSSESSION OR SALE**

Code Civ. Proc., § 712.010
Page 2 of 2

000036

EJ-130

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO.: | FOR COURT USE ONLY |
|---|---|---|
| NAME: Linda T. Hollenbeck 145048/Tania K. Cardoso 244473 | | |

FIRM NAME: Hollenbeck & Cardoso, LLP
STREET ADDRESS: 7755 Center Avenue, Suite 1100
CITY: Huntington Beach    STATE: Ca    ZIP CODE: 92647
TELEPHONE NO.: 562-912-7712    FAX NO.: 562-912-7728
E-MAIL ADDRESS: Lhollenbeck@hollenbecklaw.com
ATTORNEY FOR (name): NP Parc Chateaux, LLC
[X] ORIGINAL JUDGMENT CREDITOR   [ ] ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 9425 Penfield Avenue
MAILING ADDRESS: 9425 Penfield Avenue
CITY AND ZIP CODE: Chatsworth, CA 91311
BRANCH NAME: Chatsworth Courthouse

Plaintiff: NP Parc Chateaux, LLC
Defendant: Moshe Perry, Et al.

CASE NUMBER: 20CHUD00033

|  | EXECUTION (Money Judgment) | | [X] Limited Civil Case (including Small Claims) |
|---|---|---|---|
| WRIT OF | [X] POSSESSION OF | [ ] Personal Property | [ ] Unlimited Civil Case (including Family and Probate) |
|  | [ ] SALE | [X] Real Property | |

1. To the Sheriff or Marshal of the County of: Los Angeles
   You are directed to enforce the judgment described below with daily interest and your costs as provided by law.
2. To any registered process server: You are authorized to serve this writ only in accordance with CCP 699.080 or CCP 715.040.
3. (Name): NP Parc Chateaux, LLC
   is the [X] original judgment creditor [ ] assignee of record whose address is shown on this form above the court's name.
4. Judgment debtor (name, type of legal entity if not a natural person, and last known address):

   Moshe Perry

   24979 Constitution Avenue #225,
   Stevenson Ranch, Ca. 91381

   [ ] Additional judgment debtors on next page.
5. Judgment entered on (date):
6. [ ] Judgment renewed on (dates):
7. Notice of sale under this writ
   a. [X] has not been requested.
   b. [ ] has been requested (see next page).
8. [ ] Joint debtor information on next page.

[SEAL]

9. [X] See next page for information on real or personal property to be delivered under a writ of possession or sold under a writ of sale.
10. [ ] This writ is issued on a sister-state judgment.
For items 11-17, see form MC-012 and form MC-013-INFO.
11. Total judgment (as entered or renewed) .......... $ Possession Only
12. Costs after judgment (CCP 685.090) .......... $ Possession Only
13. Subtotal (add 11 and 12) .......... $ Possession Only
14. Credits to principal (after credit to interest) .......... $ Possession Only
15. Principal remaining due (subtract 14 from 13) .......... $ Possession Only
16. Accrued interest remaining due per CCP 685.050(b) (not on GC 6103.5 fees) .......... $ Possession Only
17. Fee for issuance of writ .......... $40.00
18. Total (add 15, 16, and 17) .......... $40.00
19. Levying officer:
   a. Add daily interest from date of writ (at the legal rate on 15) (not on GC 6103.5 fees) .......... $ Possession Only
   b. Pay directly to court costs included in 11 and 17 (GC 6103.5, 68637; CCP 699.520(i)) .......... $ Possession Only
20. [ ] The amounts called for in items 11-19 are different for each debtor. These amounts are stated for each debtor on Attachment 20.

Issued on (date): _____   Clerk, by _____, Deputy

NOTICE TO PERSON SERVED: SEE PAGE 3 FOR IMPORTANT INFORMATION.

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
EJ-130 [Rev. January 1, 2016]

WRIT OF EXECUTION

Code of Civil Procedure, §§ 699.520, 712.010, 715.010
Government Code, § 6103.5
www.courts.ca.gov

000037

000038

| | CASE NUMBER: |
|---|---|
| Plaintiff: NP Paro Chateaux, LLC<br>Defendant: Mosha Perv, Et al. | 20CHUD00033 |

EJ-130

21. ☐ Additional judgment debtor (name, type of legal entity
if not a natural person, and last known address):

22. ☐ Notice of sale has been requested by (name and address):

23. ☐ Joint debtor was declared bound by the judgment (CCP 989-994)
   a. on (date):
   b. name, type of legal entity if not a natural person, and
      last known address of joint debtor:
   a. on (date):
   b. name, type of legal entity if not a natural person, and
      last known address of joint debtor:

c. ☐ Additional costs against certain joint debtors are itemized: ☐ Below ☐ On Attachment 23c

24. ☒ (Writ of Possession or Writ of Sale) Judgment was entered for the following:
   a. ☒ Possession of real property: The complaint was filed on (date): 01/09/2020
      (Check (1) or (2). Check (3) if applicable. Complete (4) if (1) or (3) have been checked.)
      (1) ☒ The Prejudgment Claim of Right to Possession was served in compliance with CCP 415.46. The judgment includes
         all tenants, subtenants, named claimants, and other occupants of the premises.
      (2) ☐ The Prejudgment Claim of Right to Possession was NOT served in compliance with CCP 415.46.
      (3) ☐ The unlawful detainer resulted from a foreclosure sale of a rental housing unit. (An occupant not named in the
         judgment may file a Claim of Right to Possession at any time up to and including the time the levying officer returns
         to effect eviction, regardless of whether a Prejudgment Claim of Right to Possession was served.) (See CCP 415.46
         and 1174.3(a)(2).)
      (4) ☐ If the unlawful detainer resulted from a foreclosure (item 24a(3)), or if the Prejudgment Claim of Right to Possession was
         not served in compliance with CCP 415.46 (item 24a(2)), answer the following:
         (a) The daily rental value on the date the complaint was filed was    $58.00
         (b) The court will hear objections to enforcement of the judgment under CCP 1174.3 on the following dates (specify):

   b. ☐ Possession of personal property.
      ☐ If delivery cannot be had, then for the value (itemize in 24e) specified in the judgment or supplemental order.
   c. ☐ Sale of personal property.
   d. ☐ Sale of real property.
   e. The property is described: ☒ Below ☐ On Attachment 24e
      24979 Constitution Avenue #225, Stevenson Ranch, Ca. 91381

EJ-130

| Plaintiff: NP Parc Chateaux, LLC | CASE NUMBER: |
| Defendant: Moshe Perry, Et al. | 20CHUD00033 |

## NOTICE TO PERSON SERVED

WRIT OF EXECUTION OR SALE. Your rights and duties are indicated on the accompanying *Notice of Levy* (form EJ-150).

WRIT OF POSSESSION OF PERSONAL PROPERTY. If the levying officer is not able to take custody of the property, the levying officer will demand that you turn over the property. If custody is not obtained following demand, the judgment may be enforced as a money judgment for the value of the property specified in the judgment or in a supplemental order.

WRIT OF POSSESSION OF REAL PROPERTY. If the premises are not vacated within five days after the date of service on the occupant or, if service is by posting, within five days after service on the property, the levying officer will remove the occupants from the real property and place the judgment creditor in possession of the property. Except for a mobile home, personal property remaining on the premises will be sold or otherwise disposed of in accordance with CCP 1174 unless you or the owner of the property pays the judgment creditor the reasonable cost of storage and takes possession of the personal property not later than 15 days after the time the judgment creditor takes possession of the premises.

EXCEPTION IF RENTAL HOUSING UNIT WAS FORECLOSED. If the residential property that you are renting was sold in a foreclosure, you have additional time before you must vacate the premises. If you have a lease for a fixed term, such as for a year, you may remain in the property until the term is up. If you have a periodic lease or tenancy, such as from month-to-month, you may remain in the property for 90 days after receiving a notice to quit. A blank form *Claim of Right to Possession and Notice of Hearing* (form CP10) accompanies this writ. You may claim your right to remain on the property by filling it out and giving it to the sheriff or levying officer.

EXCEPTION IF YOU WERE NOT SERVED WITH A FORM CALLED PREJUDGMENT CLAIM OF RIGHT TO POSSESSION. If you were not named in the judgment for possession and you occupied the premises on the date on which the unlawful detainer case was filed, you may object to the enforcement of the judgment against you. You must complete the form *Claim of Right to Possession and Notice of Hearing* (form CP10) and give it to the sheriff or levying officer. A blank form accompanies this writ. You have this right whether or not the property you are renting was sold in a foreclosure.

EJ-130 [Rev. January 1, 2016]   **WRIT OF EXECUTION**   Page 3 of 3



**000039**



000040

MICHAEL (MOSHE) PERRY
23705 VANOWEN ST. # 262
WEST HILLS, CA, 91307
(747) 224-9515



CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

FEB 26 2020

Sherri R. Carter, Executive Officer/Clerk
By Gina Zucco, Deputy

COPY

**THE SUPERIOR COURT**
**OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES**
**(Chatsworth Courthouse)**

| | |
|---|---|
| NP PARC CHATEAUX, LLC., A SUBSIDIARY OF ALLIANCE RESIDENTIAL & COMMERCIAL, INC., (ALLRESCO) <br><br> Plaintiff/Cross-Defendant, <br><br> Vs. <br><br> MOSHE PERRY <br><br> Defendant/Cross- Complainant, | Case No.: **20CHUD00033** <br> Before Judge   Tricia Taylor <br><br> **DEFENDANT'S ANSWER** <br><br> *Jury trial requested* |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

TO THE COURT, ALL PARTIES HEREIN, AND THEIR ATTORNEYS OF RECORD:

Defendant Michael (Moshe) Perry (hereafter sometimes "Defendant"), hereby answers the complaint of Parc Chateaux Inc., the plaintiff, and admits, denies and alleges as follows:

Defendant hereby answers the Complaint pursuant to Code of Civil Procedure §431.30(d) and denies, generally and specifically, each and every, all and singular, allegation contained in the Complaint. Defendant further specifically denies that Plaintiff was damaged in the amount alleged, or in any amount, or in any manner whatsoever by any act or omission on the part of the answering Defendant.

(1)   Defendant generally and specifically denies each and every allegations in the complaint.

(2)   Plaintiff had breached the rental agreement warranty to provide habitable partly and totally.

(3)   Plaintiff waived, changed, or canceled the notice to quit. Plaintiff served defendant with the notice to quit or filed the complaint to retaliate against defendant.

1

(4)     Defendant generally and specifically denies each and every allegation in paragraph 1 of the complaint.

(5)     Defendant generally and specifically denies each and every allegation in paragraph 2 of the complaint.

(6)     Defendant generally and specifically denies each and every allegation in paragraph 3 of the complaint.

(7)     Defendant generally and specifically denies each and every allegation in paragraph 4 of the complaint.

(8)     Defendant generally and specifically denies each and every allegation in paragraph 5 of the complaint.

(9)     Defendant generally and specifically denies each and every allegation in paragraph 6 of the complaint.

(10)     Defendant generally and specifically denies each and every allegation in paragraph 7 of the complaint.

(11)     Defendant generally and specifically denies each and every allegation in paragraph 8 of the complaint.

(12)     Defendant generally and specifically denies each and every allegation in paragraph 10 of the complaint.

(13)     Defendant generally and specifically denies each and every allegation in paragraph 11 of the complaint.

(14)     Defendant generally and specifically denies each and every allegation in paragraph 13 of the complaint.

(15)     Defendant generally and specifically denies each and every allegation in paragraph 17 of the complaint.

(16)     Defendant PERRY had offered Plaintiff Karin to discuss the rent abated resulted from the delay of fixing the heating and air conditioning problem, but plaintiff had refused and initiated the unlawful detainer.

i.     **The Court Lacked General And Personal Jurisdiction Over Defendant In Rulings/Orders Over Demurrer/Motion to Strike/Oral Motion to Quash/Motion On January 31, 2020:**

(17)     Defendant moved orally motioned on January 31, 2020 to quash service of summons under CCP. §415.20(b) and failed to comply with CCP. §1161(2)(a), on the grounds that he was not

2

**000041**

personally served, and that no summons and complaint was ever served to him by mail. The substitute

service filed on February 11, 2020, was backdated to January 10, 2020 was false as to service by mail

and was ineffective.

(18)     The service of the unlawful detainer summons and complaint was inadequate to

effectuate valid service on the defendant. Code Civ. Proc. §415.20(b) (emphasis added). A substituted

service is valid only if a good faith, reasonable effort at personal service on the party to be served is

first attempted.   See Lebel v. Mai 210 Cal.App.4th 1154, 1164 (2012); "[s]ervice of process is essential

to establish that court's personal jurisdiction over a defendant. [Fn. omitted.]

(19)     Code Civ. Proc. §418.10(e)(1): "**A defendant or cross-defendant may make a motion**

**under this section and simultaneously answer, demur, or move to strike the complaint or cross-**

**complaint.** (1) Notwithstanding Section 1014, no act by a party who makes a motion under this

section, including filing an answer, demurrer, or motion to strike constitutes an appearance, unless the

court denies the motion made under this section.   If the court denies the motion made under this

section, the defendant or cross-defendant is not deemed to have generally appeared until entry of the

order denying the motion. (2) If the motion made under this section is denied and the defendant or

cross-defendant petitions for a writ of mandate pursuant to subdivision (c), the defendant or cross-

defendant is not deemed to have generally appeared until the proceedings on the writ petition have

finally concluded."

(20)     Plaintiff violated CCP. §417.20(c): "**Subject to any additional requirements that may**

**be imposed by the court in which the action is pending, in the manner prescribed by the law of**

**the place where the person is served for proof of service in an action in its courts of general**

**jurisdiction."**

(21)     When a defendant challenges that jurisdiction by bringing his oral motion to quash and

the demurrer with motion to strike the complaint.  However, the plaintiff on January 31, 2020, failed to

provide a proof of service and prove the existence of jurisdiction by proving, inter alia, the facts

requisite to an effective service." [Dill v. Berquist Construction Co. (1994) 24 Cal.App.4th 1426, 1439-

1440 [29 Cal.Rptr.2d 746] (Dill), italics added; accord, Coulston v. Cooper (1966) 245 Cal.App.2d 866,

868 [54 Cal.Rptr. 302]; Floveyor Internat., Ltd. v. Superior Court (1997) 59 Cal.App.4th 789, 793 [69

Cal.Rptr.2d 457] (Floveyor); American Express, supra, 199 Cal.App.4th at p. 387.)" ("Citation").

(22)     Plaintiff violated CCP. §417.20(e): "**If served by posting pursuant to Section 415.45,**

**by the affidavit of the person who posted the premises, showing the time and place of posting, and**

**an affidavit showing the time and place copies of the summons and of the complaint were mailed**

000042

3

to the party to be served, if in fact mailed."

(23)    Therefore, service is not deemed based on CCP. §1161(2)(b): "Service of a summons in this manner is deemed complete on the 10th day after the mailing." Therefore, in this case service was complete 10 days after February 11, 2020 filing of the substitute service.

(24)    All rulings made the court without personal jurisdiction over the defendant not based on a valid proof of substitute service which was finally filed on February 11, 2020, must be set aside.

ii.    **The Court Lacked General And Personal Jurisdiction And Defendant Impeach Plaintiff's Substitute Service on January 10, 2020 Substitute Proof of Service Was Filed Late On February 11, 2020 After The Court Order on the Demurrer On January 31, 2020; And The Personal Service o 02/25/2020 Are Both False And Misleading. The Orders of February 7, 2020 Are Voided For Removal And Lack of General Jurisdiction, And Could Be Cured Nunc Pro Tunc:**

(25)    The court on January 31, 2020 had no personal jurisdiction to make any rulings on plaintiff's demurrer. The court on February 7, 2020 had no personal jurisdiction to issue rulings on Mr. Perry's motion to compel discovery, and to issue an order striking Defendant's cross complaint, while the case was removed to the United Stated District Court on February 6, 2020.

The plaintiff violated the California's substitute service law permits substitute service on a defendant if the plaintiff, acting with reasonable diligence, cannot serve process by ordinary methods. See Cal. Code. Civ. Proc. § 415.20(b). The statute provides that:

> "If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served...**a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address...in the presence of...a person apparently in charge of his or her office, place of business, or usual mailing address...and by thereafter mailing a copy of the summons and of the complaint by first class mail**...served at the place where a copy of the summons and complaint were left.

> The court on January 31, 2020 should have granted Defendant's oral motion to quash and the demurrer and motion to strike lack for the lack of proper service, based on common law rule of personal delivery." (Hunstock v. Estate Development Corp., supra, 22 Cal.2d at p. 211.)

iii.    **The Plaintiff Failed to Satisfy All Elements of The Sole Cause of Action For The Unlawful Detainer Action**

4

**000043**

000044

**Pursuant To CCP. §1161(2);**

(26)    Plaintiff failed entirely to timely file his proof of service with no amended return, and with no proper affidavit that now could be filed nunc pro tunc, before the court have heard defendant's demurrer based on CCP. §418.10(e)(1), and before hearing on the other motions and cross-complaint. "Such proof presumptively establishes the fact of proper service, but it may be impeached and the lack of proper service shown by contradictory evidence. (Los Angeles v. Morgan (1951) 105 Cal App 2d 726, 731, 234 P2d 319; see Section 418.10.) (7) Jurisdiction depends on the fact of service, rather than the proof thereof. (Herman v. Santee (1894) 103 Cal 519, 523, 37 P. 509; Drake v. Duvenick (1873) 45 Cal 455, 463.)."

(27)    See also Courtney v. Abex Corp., 221 Cal. Rptr. 770 (Cal. Ct. App. 1986): "[i]t is the fact of service which gives the court jurisdiction, not the proof of service.'" (Herman v. Santee (1894) 103 Cal. 519, 523 [37 P. 509]; M. Lowenstein & Sons, Inc. v. Superior Court (1978) 80 Cal. App. 3d 762, 770 [145 Cal. Rptr. 814], disapproved on other grounds in Johnson v. Superior Court, supra, 38 Cal.3d at p. 254, fn. 7.)"

(28)    Plaintiff's lack of due diligence, the waiting until later to present the substituted proof of service until February 11, 2020 is inadequate and its content misleading in section 5.(b)(4), because plaintiff had never personally served the defendant and never mailed him any copy of the summons and complaint. Plaintiff only posted the summons and complaint on defendant's front door during defendant's 10 days absence.

(29)    CCP. §1161(2) Elements: "[t]he elements of the action are set forth in Code of Civil Procedure section 1161, subdivision (2). The statute provides, in relevant part, that the tenant may be evicted "When he or she continues in possession,...without the permission of his or her landlord,...after default in the payment of rent, pursuant to the lease or agreement under which the property is held, and three days' notice, in writing, requiring its payment, stating the amount which is due...shall have been served upon him or her...." (Italics added.) ["Citations"]; Bawa v. Terhune, IAD19-01 (Cal. Ct. App. 2019) (Precedential).

(30)    First, defendant, Mr. Perry did not defaulted, and had paid his all his rent since August 9, 2019 when he lease was deemed renewed CCP. §1946.1. Second, Mr. Perry did not fail to pay rent pursuant to the terms of the lease, and as required to establish an unlawful detainer. Third, Mr. Perry was a 3 ½ years resident and as a month to month tenant was entitled to 60 days notice to pay or quite, not a 3-day notice for nonpayment of rent based on CCP.§§1946.1, 1946.5 and 1161(2). Fifth,

landlord cannot retroactive rent increase 4 months back using a 3- day notice.

(31)   See Borsuk v. Appellate Div. of the Superior Court of L. A. Cnty., 242 Cal.App.4th 607, 195 Cal. Rptr. 3d 581, 2015: "These provisions, considered alone or in combination, do not suggest that service of the three day notice confers personal jurisdiction or that a motion to quash service of the summons is the proper vehicle to raise a factual challenge to the service of the three-day notice."

(32)   "A landlord must serve a tenant with a valid three-day notice in order to prevail in an unlawful detainer action. (Code Civ. Proc., § 1161. subd. (2); Bevill v. Zoura (1994) 27 Cal. App. 4th 694, 697.) "'It has long been recognized that the unlawful detainer statutes are to be strictly construed and that relief not statutorily authorized may not be given due to the summary nature of the proceedings. [Citation.] The statutory requirements in such proceedings "'must be followed strictly…'" [Citations.] 'The remedy of unlawful detainer is a summary proceeding to determine the right to possession of real property.  Since it is purely statutory in nature, it is essential that a party seeking the remedy bring himself clearly within the statute.' [Citation.]" (Dr. Leevil, LLC v. Westlake Health Care Center (Dec. 17, 2018, No. S241324) Cal.5th [2018 Cal. Lexis 9546, *7-*8].) ["Citations"] Bawa v. Terhune, JAD19-01 (Cal. Ct. App. 2019) (Precedential).

### iv. Landlord Had Decreased Mr. Perry's Rent From $1648 To $1553, On October 24, 2019, And Increased Utility Allowances:

(33)   Landlord had decreased Mr. Perry's rent from $1648 to  $1553, on October 24, 2019, on a new lease agreement but demanded Mr. Perry pay all utilities.  However, landlord cannot file an unlawful detainer alleging Mr. Perry defaulted on the rent due when Mr. Perry already paid all his rents $1648 for each month, more than $1553 per month promised on October 24, 2019.

### v. The Landlord Waiver Pursuant To Paragraph #57 of The Lease Agreement By Accepting The Rents:

(34)   "The three-day notice must demand that payment of rent be delivered to a person specified in the notice, deposited in a specified account at a financial institution identified in the notice, or transferred electronically if the parties have established a procedure for the electronic transfer of funds. (§ 1161, subd. 2.) A three-day notice under section 1161, subdivision 2 cannot demand payment by any other method.  (See WDT-Winchester v. Nilsson (1994) 27 Cal.App.4th 516, 526 [stating that a landlord invoking the summary procedures of unlawful detainer must strictly comply with the statutory notice requirements]; Baugh v. Consumers Associates, Ltd. (1966) 241 Cal.App.2d 672, 674 ["it is

**000045**

000046

essential that a party seeking the remedy bring himself clearly within the statute'.) A complaint for unlawful detainer based on a defective notice fails to state a valid cause of action. (Baugh, supra, at p. 675.) We conclude that the sustaining of the demurrer to the count for unlawful detainer was proper to the extent that the count is based on the nonpayment of rent." ["Citation"] Bawa v. Terhune, JAD19-01 (Cal. Ct. App. 2019) (Precedential).

Parc Chateaux accepted Mr. Perry's full rent payment on December 2, 2019, did not inform Mr. Perry he owed any due rent, and deposited it in their checking account on December 3, 2019. See Cal. Civ. Code §1500 prescribes: "An obligation for the payment of money is extinguished by a due offer of payment, if the amount is immediately deposited in the name of the creditor, with some bank or savings and loan association within this state, of good repute, and notice thereof is given to the creditor."

"Neither section 1161 nor any other statute or legal authority provides that the failure to deposit money in the manner stated in Civil Code section 1500 pursuant to a demand constitutes an unlawful detainer." Katsh v. Murphy, B207238, October 27, 2009.

"The court pointed out that the renter could have extinguished the rent obligation by depositing the rent in a bank account..." (Ibid.) Bawa v. Terhune, JAD19-01 (Cal. Ct. App. 2019) (Precedential). In this case the landlord deposited the rent and extinguished the rent obligation.

**vi.    The Landlord Waiver of The Unlawful Detainer By Payment of Money Is Extinguished By The Due Offer, Acceptance, And Deposit of All Rent Payments From Defendant From September 2019 Through December 2019:**

(35)    Parc Chateaux issued the three-day notice after Mr. Perry had already paid his rent. But the landlord never gave Mr. Perry any notice of any rent increase until the notice of retroactive rent due from September through December 2019, on a December 3, 2019 notice. When Mr. Perry requested the rent increase notice, the manager Christina Romero promised that she will give him the notice of rent increase, but she did not. (See email from November 11, 2019; "I will have him pull your letter **from the file and sent it to you again."**

(36)    The landlord manager Christina Romero did not pull any letter or mailed it to Mr. Perry. Instead, she instituted the unlawful detainer, while she accepted all of Mr. Perry's rent check payments and deposited them in their bank. "[A]n obligation for the payment of money is **extinguished** by a due offer of payment, if the amount is immediately deposited in the name of the creditor. [See Cal. Civ. Code §1500 prescribes.] Bawa v. Terhune, JAD19-01 (Cal. Ct. App. 2019) (Precedential).

7

## AFFIRMATIVE DEFENSES
## FIRST AFFIRMATIVE DEFENSE

Neither the Complaint nor any claim of relief asserted therein states facts sufficient to constitute a claim for relief against Defendant. Each purported cause of action fails to state facts sufficient to constitute a basis for relief against this answering Defendant.

### vii.     Mr. Perry Was Never In Default For Payment of Rent Within The Meaning of CCP. §1161(2):

(37)     "Under the clear words of the statute, a three-day notice may only be served, "after default in the payment of rent." (See United Riggers & Erectors, Inc. v. Coast Iron & Steel Co. (2018) 4 Cal.5th 1082, 1089-1090 [statutory interpretation begins with examining the words used in a statute].) The word "default" is not defined by the statute. But, given the context in which it is used, it is apparent the common definition, "failure to do something required by duty or law," was intended….; See People v. Whitlock (2003) 113 Cal. App. 4th 456, 462 ["To ascertain the common meaning of a word, 'a court typically looks to dictionaries'"].)" A tenant has a duty to timely pay rent, and when the tenant fails to do so, the tenant defaults in the duty." ["Citation"] Bawa v. Terhune, JAD19-01 (Cal. Ct. App. 2019) (Precedential).

### viii.     Mr. Perry Did Not Breach The Rental Agreement And Landlord's Forfeiture Is Waived By Landlord Accepting And Deposit Of Rents And Breaching The Rental Agreement By Filing A Frivolous Unlawful Detainer:

(38)     "[A] "'trivial" or "de minimis" breach [of a rental obligation] is not sufficient ground for termination …' [Citation.]" (Boston, supra, 245 Cal.App.4th at p. 83; accord, Civ. Code, § 3533 ["[t]he law disregards trifles"]; Medico-Dental Bldg. Co. v. Horton & Converse (1942) 21 Cal. 2d 411, 433 ["a breach of contractual right in a trivial or inappreciable respect will not justify rescission of the agreement by the party entitled to the benefit in question"].) "Permitting landlords…with superior bargaining power to forfeit leases based on minor or trivial breaches would allow them to strategically circumvent LARSO's 'good cause' eviction requirements and disguise pretext evictions under the cloak of contract provisions." (Boston, supra, 245 Cal.App.4th at p. 85.)"…"'It is quite true that the payment of the rent in accordance with the terms of the lease is

(39)     one of the essential obligations of the lessee, and the failure of the lessee to properly discharge this obligation is a legal cause for dissolving the lease. But this presupposes that the lessor is

8

**000047**

000048

6

desirous and willing that the lessee should pay his rent promptly, and will facilitate and not hinder him
in doing so; that the lessor is not endeavoring merely to entrap his lessee into a technical breach of the
lease.' [Citation.]" (Strom, supra, 88 Cal.App.2d at p. 81.)" ["Citation"] Bawa v. Terhune, JAD19-01
(Cal. Ct. App. 2019) (Precedential)."

## SECOND AFFIRMATIVE DEFENSE
### (Waiver)

(40)    Defendant is informed and believes and thereon alleges that Plaintiff has engages in
conduct and activities sufficient to constitute a waiver of any claim or demand for relief which they
may otherwise have against Defendant.  The claims being advanced by Plaintiffs are barred by
virtue of the Plaintiff's acts and/or omissions that amount to a waiver, including but, not limited to
attempting to enforce part of the rental agreement, while ignoring the rest of the rental agreement
pertaining to Plaintiff's responsibilities.

### ix.    Landlord Had Accepted All Rent Payment Checks And Deposit Them Into His Business Checking Account:

(41)    The Effect of Payment by Check: When, as here, the form of payment used is an
uncertified check (see Cal. U. Com. Code, § 3104, subd. (f) [personal check is an uncertified
check]), California Uniform Commercial Code section 3310, subdivision (b), provides, in relevant
part, "Unless otherwise agreed... if...an uncertified check is taken for an obligation, the obligation
is suspended to the same extent the obligation would be discharged if an amount of money equal to
the amount of the instrument were taken, and the following rules apply: [¶] (1).... suspension of the
obligation continues until dishonor of the check or until it is paid or certified. Payment or
certification of the check results in discharge of the obligation to the extent of the amount of the
check." (Italics added.) While a debt or obligation is "suspended," a debtor is not in default in the
paying of the obligation. ("Suspended" means "to hold in an undetermined or undecided state
awaiting further information"....Once the tendered check is negotiated by the payee and honored
by the bank, the obligation is discharged; if it is dishonored, the obligation is revived. (Cal. U.
Com. Code, § 3310, subd. (b)(1).)

(42)    The language in California Uniform Commercial Code section 3310 — "[i]f an
uncertified check is taken for an obligation —" "refers to a situation in which the debtor has
delivered an instrument with the intention that it constitute conditional payment for the underlying
obligation and the creditor has accepted it as conditional payment for the underlying obligation."

(Canal-Randolph Anaheim, Inc. v. Wilkoski (1978) 78 Cal. App. 3d 477, 490 [discussing similarly worded predecessor statute, former Cal. U. Com. Code, § 3802].) Thus, in order for California Uniform Commercial Code section 3310 to apply to suspend an obligation, there must be both a delivery by the debtor and an acceptance by the creditor, which then results in "'a surrender of the right to sue on the obligation until the instrument is due, but if the instrument is not paid on due presentment the right to sue on the obligation is "revived."'"(Id. at p. 487.) "

        **x.**   **Mr. Perry Did Not Breach The Rental Agreement And Landlord's Forfeiture Is Waived By Landlord Accepting And Deposit Of Rents And Breaching The Rental Agreement By Filing A Frivolous Unlawful Detainer:**

(43)   "[A] "'trivial' or "de minimis" breach [of a rental obligation] is not sufficient ground for termination ….' [Citation.]" (Boston, supra, 245 Cal.App.4th at p. 83; accord, Civ. Code, § 3533 ["[t]he law disregards trifles"]; Medico-Dental Bldg. Co. v. Horton & Converse (1942) 21 Cal. 2d 411, 433 ["a breach of contractual right in a trivial or inappreciable respect will not justify rescission of the agreement by the party entitled to the benefit in question"].) "Permitting landlords…with superior bargaining power to forfeit leases based on minor or trivial breaches would allow them to strategically circumvent LARSO's 'good cause' eviction requirements and disguise pretext evictions under the cloak of contract provisions." (Boston, supra, 245 Cal.App.4th at p. 85.)"

(44)   "'It is quite true that the payment of the rent in accordance with the terms of the lease is one of the essential obligations of the lessee, and the failure of the lessee to properly discharge this obligation is a legal cause for dissolving the lease. But this presupposes that the lessor is desirous and willing that the lessee should pay his rent promptly, and will facilitate and not hinder him in doing so; that the lessor is not endeavoring merely to entrap his lessee into a technical breach of the lease.' [Citation.]" (Strom, supra, 88 Cal.App.2d at p. 81.)" ["Citation"] Bawa v. Terhune, JAD19-01 (Cal. Ct. App. 2019) (Precedential)."

        **xi.**   **Mr. Perry Paid His Rent On January, 2, 2020 And Was Not In Default And When Landlord Withheld Rent Payment In Bad Faith To Initiate Unlawful Detainer:**

10

**000049**

000050

11

(45)     "[E]ven though a tenant defaults in the payment of rent, equity will not countenance forfeiture of a lease when the default is both de minimis and the product of the landlord's unreasonable refusal to accept rent."....

(46)     "Thus, when a landlord refuses to accept rent that is one penny short of the required amount, without any legitimate intent other than to manufacture a default in order to evict a tenant, a tenant may assert the landlord's bad faith as an unlawful detainer defense. (Strom, supra, 88 Cal.App.2d at pp. 82-83; see Nork v. Pacific Coast Medical Enterprises, Inc. (1977) 73 Cal. App. 3d 410, 414 ["equitable defenses which can be used in an unlawful detainer action relate to improper acts on the part of the landlord such as: refusal to accept timely payment of rent"]; North 7th Street Associates v. Constante (2001) 92 Cal.App.4th Supp. 9, 10-11 ["[d]efenses available in unlawful detainer are limited to those which, if proven, would maintain the defendant's right to possession," including "refusal of the landlord to accept tender of rent"]; Randal v. Tatum (1893) 98 Cal. 390, 396 [a landlord's refusal to accept a tenant's timely tender of rent is affirmative defense to unlawful detainer based notice to pay or quit].) "Frustration of purpose [of a lease] is [also] a legitimate defense to an unlawful detainer action which, if established, results in the tenant's retention of the premises. [Citations.]" (Underwood v. Corsino (2005) 133 Cal. App. 4th 132, 135-136.) ["Citation"] Bawa v. Terhune, JAD19-01 (Cal. Ct. App. 2019) (Precedential)."

xii.     **Landlord Accepted All of Mr. Perry's Rent Payments And Waiver Forfeiture of The Lease Agreement:**

(47)     EDC Associates LTD v. Gutierrez, 153 Cal.App.3d 167 (1984), 200 Cal. Rptr. 333 (F002869). Decided: March 16, 1984: "It is a general rule that the right of a lessor to declare a forfeiture of the lease arising from some breach by the lessee is waived when the lessor, with knowledge of the breach, accepts the rent specified in the lease. (Bedford Investment Co. v. Folb (1947) 79 Cal.App.2d 363, 366, 180 P.2d 361.) While waiver is a question of intent, the cases have required some positive evidence of rejection on the landlord's part or a specific reservation of rights in the lease to overcome the presumption that tender and acceptance of rent creates."

xiii.   **Landlord Retaliated Against Mr. Perry's After He Complaint**
**They Illegally Towed His 2007 Range Rover, After He Paid $50**
**For Carport #410, When Mr. Perry Was Away On A Disability**
**Retreat In Israel:**

(48)   Retaliatory Rent Increase and Eviction, Cal. Civ. Code § 1942.5. A landlord has a retaliatory motive if the landlord seeks to evict the tenant (or takes other retaliatory action) within six months after the tenant has exercised any of the tenant rights. [Kriz v. Taylor, 92 Cal. App. 3d 302, 1979),154 Cal. Rptr. 824.]

(49)   CCP §1942.5(a): "If the lessor retaliates against the lessee because of the exercise by the lessee of his or her rights under this chapter or because of his complaint…, and if the lessee of a dwelling is not in default as to the payment of his or her rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days…"

(50)   CCP§1942.5(d):"Notwithstanding subdivision (a), it is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because he or she has lawfully…has lawfully and peaceably exercised any rights under the law. In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory."

xiv.   **As Plaintiff Only Served Defendant Four Months Retroactive Three-**
**Day Notice To Pay or Quite Instead of 60 Day, Possession Is No**
**Longer An Issue And The Cross-Complaint Is Proper When**
**Landlord Is Not Entitled To A Judgment Of Possession After Failing**
**To Properly Serve Tenant With A Valid 60 Days Notice To Terminate**
**Pursuant To CCP.§§1946.1, 1946.5:**

(51)   Defendant, Mr. Perry month to month tenant lived on the premises for over 3 ½ years entitled to 60 days notice.   Mr. Perry paid all his rent, and he did not fail to pay rent pursuant to the terms of the lease, as required to establish an unlawful detainer based on 60 days notice, not a 3-day notice for a month to month tenant for nonpayment of rent based on CCP.§§1946.1, 1946.5  and 1161(2).

(52)   **A tenant must be properly served with a valid notice to terminate before a landlord is entitled to a judgment of possession. The landlord must allege and prove proper service of the notice before you can issue such a judgment. [See Leibovich v Shahrokhkhany (1997) 56 CA4th**

12

**000051**

000052

§11, §13.] If the tenant contests the fact of service, the landlord must show compliance with one of the statutory methods of service by offering testimony of the person who made the service, rather than an affidavit—unless the service was made by a sheriff, marshal, or registered process server. [56 CA4th at 513–514; EC §647; GC §§26662; 71265.]

(53)     §31.2 California Judges Benchguide 31–6. **JUDICIAL TIP: When possession is no longer at issue, and the case becomes a regular civil action, the defendant is relieved from the prohibition against cross complaints and other relief. The best practice is to continue the case for at least 30 days to a case management conference, allowing both sides to amend their pleadings if desired.**

**xv.     Mr. Perry Exercised His Rights In Requesting The Sewer Accounting Based On The Utilities Addendum RUBS Formula:**

(54)     Mr. Perry's motion to strike comes under the anti-SLAPP (strategic lawsuit against public participation) statute. (Code Civ. Proc., §425.16.) He contends that although the acts on which the bogus cause of action of filing the unlawful detainer was filed, they may constitute activity protected by the statute. But Mr. Perry also contends that he exercised his rights in requesting the sewer accounting based on the Utilities Addendum RUBS formula, and the actions of the landlord were merely incidental to the unlawful detainer cause of action because of the retaliation against Mr. Perry. [Wallace v. McCubbin, 196 Cal.App.4th 1169 (2011), 128 Cal.Rptr.3d 205].

**xvi.     Mr. Perry Served Form Interrogatories, Special Interrogatories, Request For Admission On January 16, 2020, And Request For Production Of Documents And Things Was Served On January 20, 2020. Plaintiff Responses on January 30, 2020 Were Late, Boiler Plate" Objections And Patently Inadequate And Evasive:**

(55)     Mr. Perry's discovery was timely served the Form interrogatories, special interrogatories, request for admission on January 16, 2020, and and request for production of documents and things was served on January 20, 2020. [Korea Data 10 Systems Co. v. Superior Court (1997) 51 Cal.App.4th 1513, 1516] noted that our courts "recognize the use of "boiler plate" objections as were provided in this case may be sanctionable ...."

### THIRD AFFIRMATIVE DEFENSE
### (Estoppel)

This answering defendant is informed and believes and thereupon alleges that Plaintiffs have engaged in conduct and activities, and by reason of said activities and conduct are estopped

13

from asserting any claims for damages or seeking any other relief against this answering Defendant.

## FOURTH AFFIRMATIVE DEFENSE
### (Laches)

Defendant is informed and believes and thereon alleges that Plaintiff has delayed for an unreasonable period of time in asserting their claims against the Defendant, by waiting 4 months to apply a retroactive rent increase of $92 without providing defendant notice of any of the rent increase.  Therefore, Plaintiffs claims or demands for relief against Defendant are barred under the Doctrine of laches.

## FIFTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

Defendant is informed and believes and thereon alleges that each alleged claim or demand for relief against Defendant is barred under the Doctrine of Unclean Hands.(Failure to Mitigate Damages).  To the extent Plaintiff was damages as alleged in his complaint, Plaintiffs was due to Plaintiff's failure to act reasonably to mitigate his damages.

## SEVENTH AFFIRMATIVE DEFENSE
### (Defendant's Privilege And The Right of Freedom Of Speech And The Right To Petition The Government For The Redress of Grievances)

Defendant was privileged to do any act which was done because he was given consent in the rental agreement of August 9, 2016 which was deemed renewed by operation of law pursuant to CCP.§§1946.1, 1946.5 and 1161(2), and to seek sewer charges based on the RUBS formula, which landlord failed to provide for over 1 ½ years, and for defendant's pre-lawsuit letter of 08/30/2019, for the loss of this 2007 Range Rover caused by the illegal towing of the landlord on 07/27/2019 after Mr. Perry paid $50 for a carport # 410.

## EIGHTH AFFIRMATIVE DEFENSE
### (Consent of Plaintiff)

Plaintiff consented to all acts which were done by Defendant, as consented in the rental agreement of August 9, 2016, which was deemed renewed by operation of law pursuant to CCP.§§1946.1, 1946.5 and 1161(2).

14

**000053**

000054

15

## NINTH AFFIRMATIVE DEFENSE
(Active Fault of Plaintiff)

Defendant is informed and thereon alleges that Plaintiff if it is held liable for any damages caused to Plaintiff was negligent and otherwise actively at fault, and that Plaintiff is liable to Defendant for any damages by the Plaintiff illegal towing loss of Defendant's 2007 Range Rover due Plaintiff's maliciousness, which diminish Plaintiff's damages in proportion to the degree of fault attributable to Plaintiff.

## TENTH DEFENSE
(Full Performance)

Defendant has fully performed all obligations required of it pursuant to the terms and conditions of any obligations existing between the parties as sued upon by Plaintiff in his Complaint as consented in the rental agreement of August 9, 2016.

## ELEVENTH AFFIRMATIVE DEFENSE
(Set off and Abated Rent Excessive Rent Increase Pursuant to the Rental Agreement of August 9, 2016 As Noted In Paragraph 32 and 57 Inclusive, And Decreased Utilities Allowances and Inflated Sewer Charges)

Defendant is informed and thereon alleges that it is entitled to set off from Plaintiff breach of contract for refusal to install security lighting, have security guards around the premises or have security camera against any damages arising from the claims of Plaintiff as set forth in the Complaint.

## TWELFTH AFFIRMATIVE DEFENSE
(Ratification)

That the Complaint is barred by the doctrine of ratification and as consented in the rental agreement of August 9, 2016, pursuant to the HUD Affordable Housing Program Affordable Housing program and Regulations, that Defendant has been enrolled in since August 9, 2016.

## THIRTEENTH AFFIRMATIVE DEFENSE
(Justification)

Those any and all actions taken by the Defendant with respect to the matters alleged by the Plaintiff Complaint were justified, and as consented in the rental agreement of August 9, 2016.

## FOURTEENTH AFFIRMATIVE DEFENSE
(Back Credit for and Lowering the HUD Utilities Allowances and Inflated Sewer Charges)

Defendant is informed and believes and thereon alleges that it is entitled to a set off, recoupment of rent paid for since August 9, 2017 until August 9, 2019 and after for safe premises (night and day) Plaintiff was promised. Defendant may seek damages in an amount according to proof at trial against Plaintiff for any damages Plaintiff may recover pursuant to the Complaint on file herein.

### FIFTEENTH AFFIRMATIVE DEFENSE
(Unjust Enrichment)

Defendant is informed and believes, and thereon alleges, that Plaintiff is barred from any recovery under the doctrine of unjust enrichment.  The tenant wants a safe habitable dwelling and one that meets his or her financial restrictions.  The landlord; on the other hand, wants to make a profit from the property owned co-owned and operated by HUD Affordable Housing program and Regulations.

### SIXTEENTH DEFENSE
(Inequitable Conduct)

Defendant is informed and believes, and thereon alleges, that Plaintiff is guilty of inequitable conduct and retaliation against the defendant, thereby barring Plaintiff from recovery of any damages.

### SIXTEENTH DEFENSE
(Inequitable Conduct)

Defendant hereby reserves all defenses unknown at the time of filing this response.

### EIGHTEENTH AFFIRMATIVE DEFENSE
(Breach of Contract)

Defendant performed all conditions and covenants required to be performed under contract of August 9, 2016, until further performance was excused and discharged by Plaintiff Breach of Contract, refusal to provide sewer charges based on RUBS formula, and lowering the HUD Utilities Allowances.  The existence of a contract between the litigating parties is a necessary element to an action based on contract, and st matters as unlawful detainer. [Roth v. Malson, 67 Cal.App. 4th 552,557 (1998).]  Landlord's breach of the rental agreement is all but related to the issues here.

Moreover, no California decision, however, prohibits a tenant from interposing a defense which directly relate to the issue of possession and which, if established, would result in the tenant

16

**000055**

000056

17

retention of the premises. [Fn. omitted.]'" (Green v. Superior Court, supra, to Cal. 3d 616, 6, 633.)

"These defective conditions constituted a nuisance, depriving plaintiff of the safe, healthy, and

comfortable use of the premises....'"

Code of Civil Procedure section 731 specifically authorizes an action by any person whose

property is injuriously affected, or whose enjoyment of property is lessened by a nuisance, as the

same is defined in Civil Code section 3479 (see also 47 Cal.Jur.3d, Nuisances, § 59, p. 299). Civil

Code section 3479 defines a nuisance as "[a]nything which is injurious to health, or is indecent or

offensive to the senses, or an obstruction to the free use of property, so as to interfere with the

comfortable enjoyment of life or property."

A complaint that alleges a contract which demonstrates the mutual intent of the part

indicated by their assent to the same terms and plaintiff refusal to install security lighting, have

security guards around the premises or have security camera is an indication of negligence. (See,

e.g., Gil v. Mansano (2004) 121 Cal.App. 739, 743).(Landlord False Promises)

Defendant alleges that landlord made oral and written promises and warranties, and

guarantees, expressed and implied, and apparent, upon which the Defendant relied and breached

the contract for nearly 10 months. See Green v. Superior Court, 517 P. 2d 1168 - Cal: Supreme

Court 1974:

"'In the past, California courts have increasingly recognized the largely

contractual nature of contemporary lease agreements and have frequently

analyzed such leases' terms pursuant to contractual principles. (See, e.g.,

Medico-Dental etc. Co. v. Horton & Converse (1942) 21 Cal.2d 411, 418-419

[132 P.2d 457]; Groh v. Kover's Bull Pen, Inc. (1963) 221 Cal. App.2d 611

[34 Cal. Rptr. 637]. See generally Note, The California Lease-Contract or

Conveyance? (1952) 4 Stan.L.Rev. 244. Similarly, leading legal scholars in

the field have long stressed the propriety of a more contractually oriented

analysis of lease agreements. (1 American Law of Property (Casner ed. 1952)

§ 3.11, pp. 202-205; 2 Powell, Real Property (rev. ed. 1967) ¶ 221 [1], p. 179;

6 Williston, Contracts (3d ed. 1962) § 890A, pp. 592-613.) Our holding in this

case reflects our belief that the application of contract principles, including the

mutual dependency of covenants, is particularly appropriate in dealing with

residential leases of urban dwelling units.'"

These enormous factual changes in the landlord-tenant filed have been

paralleled by equally dramatic changes in the prevailing legal doctrines

governing commercial transactions. Whereas the traditional common law "no

duty to maintain or repair" rule was steeped in the caveat emptor ethic of an

earlier commercial era (see, e.g., Nelson v. Meyers (1928) 94 Cal. App. 66,

75-76 [270 P. 719]), modern legal decisions have recognized that the

consumer in an industrial society should be entitled to rely on the skill of the supplier to assure that goods and services are of adequate quality.

In seeking to protect the reasonable expectations of consumers, judicial decisions, discarding the caveat emptor approach, have for some time implied a warranty of fitness and merchantability in the case of the sale of goods. (See Klein v. Duchess Sandwich Co., Ltd. (1939) 14 Cal.2d 272, 276-283 [93 P.2d 799]; Escola v. Coca Cola Bottling Co. (1944) 24 Cal.2d 453, 461-468 [150 P.2d 436] (Traynor, J., concurring.) Peterson v. Lamb Rubber Co. (1960) 54 Cal.2d 339, 341-348 [5 Cal. Rptr. 863, 353 P.2d 575]. See generally Jaeger, Warranties of Merchantability and Fitness for Use (1962) 16 Rutgers L.Rev. 493.)

In recent years, moreover, California courts have increasingly recognized the applicability of this implied warranty theory to real estate transactions; prior cases have found a warranty of fitness implied by law with respect to the construction of new housing units. (See Aced v. Hobbs-Sesack Plumbing Co. (1961) 55 Cal.2d 573, 582-583 [12 Cal. Rptr. 257, 360 P.2d 897]; cf. Kriegler v. Eichler Homes, Inc. (1969) 269 Cal. App.2d 224, 227-229 [74 Cal. Rptr. 749]; Avner v. Longridge Estates (1969) 272 Cal. App.2d 607, 609-615 [77 Cal. Rptr. 633].)[11]

In most significant respects, the modern urban tenant is in the same position as any other normal consumer of goods. (See Note, The Tenant as Consumer (1971) 3 U.C. Davis L.Rev. 59.) Through a residential lease, a tenant seeks to purchase "housing" from his landlord for a specified period of time. The landlord "sells" housing, enjoying a much greater opportunity, incentive and capacity than a tenant to inspect and maintain the condition of his apartment building.

A tenant may reasonably expect that the product he is purchasing is fit for the purpose for which it is obtained, that is, a living unit. Moreover, since a lease contract specifies a designated period of time during which the tenant has a right to inhabit the premises, the tenant may legitimately expect that the premises will be fit for such habitation for the duration of the term of the lease. It is just such reasonable expectations of consumers which the modern "implied warranty" decisions endow with formal, legal protection. (Cf. Gray v. Zurich Insurance Co. (1966) 65 Cal.2d 263, 269-271 [54 Cal. Rptr. 104, 419 P.2d 168]. See generally Leff, Contract as a Thing (1970) 19 Am. U.L. Rev. 131.)

Finally, an additional legal development casts significant light upon the continued vitality of the traditional common law rule. The past half century has brought the widespread enactment of comprehensive housing codes throughout the nation; in California, the Department of Housing and Community Development has established detailed, statewide housing

**000057**

000058

19

regulations (see Health & Saf. Code, § 17921; Cal. Admin. Code, tit. 25, §§ 1000-1090), and the Legislature has expressly authorized local entities to impose even more stringent regulations. (See Health & Saf. Code, § 17951.) These comprehensive housing codes affirm that, under contemporary conditions, public policy compels landlords to bear the primary responsibility for maintaining safe, clean and habitable housing in our state. As the Supreme Court of Wisconsin declared with respect to that state's housing code: "[T]he legislature has made a policy judgment — that it is socially (and politically) desirable to impose these duties on a property owner — which has rendered the old common law rule obsolete. To follow the old rule of no implied warranty of habitability in leases would, in our opinion, be inconsistent with the current legislative policy concerning housing standards." (Pines v. Perssion (1961) 14 Wis.2d 590, 596 [111 N.W.2d 409, 412-413]; see Buckner v. Azulai (1967) 251 Cal. App.2d 1013, 1015 [59 Cal. Rptr. 806, 27 A.L.R.3d 920].)

## NINETEENTH AFFIRMATIVE DEFENSE
### (Novation)

That the complaint is barred by the doctrine of Novation.

## TWENTIETH AFFIRMATIVE DEFENSE
### (No Duty)

(1)     That Defendant owed no duty To the Plaintiff as may alleged in the complaint.

(Ineffective notice posting but not mailing). Defendant is informed and believes and thereon alleges that Plaintiff posted a three-day notice but did not mail it. Posting alone in the case was insufficient to provide notice. California has long held that service of a three-day notice by posting alone does not comply with section 1162. (Davidson v. Quinn (1982) 138 Cal.App.3d Supp. 9 [188 Cal.Rptr. 421; Jordan v. Talbot (1961) 55 Cal.2d 597 [12 Cal.Rptr. 488, 361 P.2d 20, 6 A.L.R.3d 161].)

(2)     The United States Supreme Court, in a recent decision, held that "merely posting notice on an apartment door does not satisfy minimum standards of due process" in an unlawful detainer proceeding. (Greene v. Lindsey (1982) 456 U.S. 444 [72 L.Ed.2d 249, 102 S. Ct. 1874].) The notice required by section 1161 must be served pursuant to section 1162. Section 1162 provides for service by (a) personal service to the tenant or (b) leaving a copy with some person of "suitable age and discretion" at his residence or business and sending a copy by mail to his

residence or (c) "affixing a copy in a conspicuous place on the property ...; and also sending a copy through the mail addressed to the tenant at the place where the property is situated."

(3)     This last method of service, "post and mail," was the form used by respondent in the instant case. Posting, and holds that it is insufficient to give the actual notice and opportunity to be heard required by <u>Mullane v. Central Hanover Tr. Co.</u> (1950) 339 U.S. 306 [94 Ltd. 865, 70 S.Ct. 652] and <u>Shaffer v. Heinter</u> (1977) 433 U.S. 186 [53 L.Ed.2d 683, 97 S.Ct. 2569]. The problem arises when the constitutional requirement of notice set forth in Greene is applied to the statutory requirement of section 1161(2), inclusive.

(4)     How to measure the three days' notice required by section 1161 if the three days does not commence with posting claimed on July 18, 2012? Greene v. Lindsey (1982) 456 U.S. 444, stated that posting is not notice. The question is whether the "three days' notice" required by the statute is three days of actual notice, i.e. three days which do not begin to run until notice is actually served upon the tenant, thus providing the tenant with three full days in which to cure the default and prevent forfeiture.

(5)     The statute appears to so provide on its face and where "the meaning of the law on its face is plain and unambiguous the Court will not go behind the statute ...." (White, Sources of Legislative Intent in California (1972) 3 Pacific L.J. 63, 65; citing Kesler v. Department of Motor Vehicles (1969) 1 Cal.3d 74, 77 [81 Cal.Rptr. 348, 459 P.2d goo].)The statute provides not merely notice but three days in which to cure the default. "If payment is made by the tenant within the three-day notice period, the right to possession remains in effect as if there had been no default." (Briggs v. Electronic Memories, supra, 53 Cal.App.3d at p. 905.) [138 Cal.App.3d Supp. 13].

## TWENTY-FIRST AFFIRMATIVE DEFENSE
(Reservation of Right to Add Additional Affirmative Defenses)

Defendant presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated affirmative defenses Greene addresses the constitutional adequacy of a form of notice, namely, available. Defendant reserves the right to insert additional affirmative defenses in the event discovery indicates they would be appropriate.

WHEREFORE, Defendant prays for judgment as follows:

1. That Plaintiff take nothing by way of his Complaint against Defendant;
2. For reasonable attorney's fees and costs incurred herein;

**000059**

**090000**

3. For the cross-complaint to be litigated in 30 days on the issue of retaliation and for damages for the illegal towing and loss of defendant's 2007 Range Rover;

4. For any such other and further relief as this court deem just and proper and recoupment of excessive, unauthorized rent increase from August 9, 2017 to the present;

5. Pursuant to HUD program and regulations, for refunds and reimbursements of utilities allowances and excessive rent payments paid for a premises that are neither partially or totally uninhabitable.

## FACTS SUPPORTING AFFIRMATIVE DEFENSES

That Plaintiff must fulfill what he had promised Defendant on August 9, 2016, and stop harassing defendant and stop violating the duty he owes to defendant that the law imposed in the making or performance of the contact.   For protection from eviction without good cause pursuant to HUD regulations.   Government-subsidized housing, including housing projects and Section 8 voucher housing, is governed by HUD regulations. [See 42 USC §§1437, 1437f; 24 CFR pts 941, 960, 964-970, 990.]

A landlord, whether a housing authority or a private person or entity, is contractually bound to adhere to the HUD program and regulations.  You should be aware an eviction involving government-subsidized housing has some procedural differences from regular unlawful detainer (UD) actions. Of special note: Tenants in federally subsidized housing in California are entitled to at least 90 days' notice before eviction when the landlord is dropping out of the federal program, even when the property is not subject to a local rent control ordinance. [Cal. Civ. Code §1954.535; Wasatch Property Mgmt. v. Degrate (2005) 35 C4th 1111, 1118, 1121–1123.][1]  There are other procedural differences:

- For nonpayment of rent by a public housing tenant, there is a 14-day notice period.
- In most other cases, 30 days' notice is required.
- The tenant may be entitled to an administrative hearing before the UD is filed.
- Good cause is required for eviction in every case.
- The lessor's receipt of a housing assistance payment on behalf of the tenant does not constitute a waiver.
- Drug use in violation of a zero-tolerance drug policy is grounds for eviction under federal regulations.

[1] See 24 CFR §§966.4(l), 966.50-966.57, 247.3; Savell v Davis (1994) 29 CA4th Supp 13, 15; City of South San Francisco Housing Auth. v Guillory (1995) 41 CA4th Supp 13, 19-20.

Defendant is entitled to protection from eviction without cause. (See DeZerega v Meggs, supra, 83 CA4th at 38-43.) The failure of the tenant to pay rent does not ipso facto work a forfeiture of the leasehold; it merely gives the lessor the right to terminate the lease in the manner provided by law ...' (Lamey v. Masciota (1969) 273 Cal.App.2d 709, 714 [78 Cal.Rptr. 344]; Briggs v. Electronic Memories and Magnetics Corp. (1975) 53 Cal.App.3d goo [126 Cal.Rptr. 34].) The essential element, therefore, is the notice and whether or not it comports with the fundamental requirements of the law and rules of contract.

### Defendant's Request To Take Judicial Notice

Defendant request for the Court to Take Judicial Notice in the aforementioned action of exhibits submitted, as well controverted facts as plaintiff did not appear at the demurrer hearing or filed an opposition, thereby waiving their right to oppose all that said in the demurrer.

### Conclusion

For the foregoing reasons, defendant is entitled for the Court to reconsider the order overruling the demurrer/motion to strike, and enter judgment for the Defendant and order a declaratory, injunctive and equitable relief and Defendant is entitled to retain possession of the premises (not to be vacated from the premises) and a fair retroactive set-off and abetment of unauthorized rent increases and utilities allowance decrease, and inflating of sewer charges from August 9, 2016 to present, pursuant to the lease agreement of august 9, 2016, for the defendant and against the plaintiff.

### Verification

I am the Defendant in the aforementioned action. I have read the foregoing Defendant's answer Response to the Unlawful Detainer and knows all the facts are stated in answer I know them to be true.   The same is true of my own knowledge, except as to those matters that are therein stated on information and belief, and concerning those matters, I believe it to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Respectfully submitted,

DATED: February 25, 2020

Michael (Moshe) A. Perry in Pro Se

22

**000061**

000062

23

### Declaration of Michael (Moshe) Perry

I am the Defendant, Moshe Perry ("Mr. Perry"), will and hereby declare as follows: I have read the foregoing as to the defendant's demurrer and motion to strike Unlawful Detainer summons and complaint on January 31, 2020, defendant's his oral motion to quash for failure to show proper service of summons and complaint; (after Unlawful Detainer case was already removed to the United States District Court on February 6, 2020, when possession was no longer an issue).

The proof of substitute service dated 1/10/2020, and the proof of personal service dated 02/25/2020 are false and misleading, and was filed late with the court after rulings on the demurrer and motion to strike service and oral motion to quash late service made on January 31, 2020, was late and was not returned or amended, and it was served late with the court and the defendant on 02/11/2020. (See **exhibits 3-4**).

All the orders issued on February 7, 2020, after the removal to the district court on February 6, 2020 are void as matter of removal and are not voidable or capable of being reinstated. The court had no authority to issue any orders on February 7, 2020, or striking and dismissing defendant's cross-complaint. As matter of removal, the order of February 7, 2020, denying defendant's motion to compel discovery are also void. The request for default judgment may be taken while the case was removed, and remanded to the superior court. (Code Civ. Proc., §430.90, subd. (a)(2) [providing 30 days to respond to the complaint upon remand after removal].)"

The defendant's cross-complaint, and defendant's motion to compel from plaintiff's inadequate responses/the content of a discovery responses, the inadequate responses to the request for admission, the form and special interrogatories, and the plaintiffs inadequate responses to such a request for admission, and production of documents are still pending the remand from the district court.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct and that this declaration was executed this 25th day of February, 2020, at West Hills, California.

Executed: February 25, 2020



_____
Michael (Moshe) Perry in Pro Se

28
27
26
25
24
23
22
21
20
19
18
17
16
15
14
13
12
11
10
9
8
7
6
5
4
3
2
1

**Proof of Service**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am over 18 years of age and am not a party to the within action or proceeding.   My address is 5815 Donna Ave. Tarzana Ave.  CA 91356.

On February 25, 2020, I served the foregoing document/s described as: DEFENDANT'S ANSWER, on the interested party in this action.

☒  By placing ☐ the original ☒ a true copy thereof enclosed in a sealed envelope Addressed as follows:

| Hollenbeck & Cardoso LLP. 7755 Center Ave. Suite 1100 Huntington Beach, CA, 92647 O/B: NP Parc Chateaux, LLC. | | |
|---|---|---|

☒ **(BY MAIL)** as follows:
I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid at Tarzana, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one **(1)** day after date of deposit for mailing in affidavit.

☐ **(BY FACSIMILE)** I caused to be transmitted to the facsimile   number(s) above a true and correct copy of the document.

☒ **(BY EMAIL)** I caused to be transmitted to the email( s) mentioned above a true and correct copy of the document.

☐ **(PERSONAL SERVICE)** I delivered such envelope by hand to the offices of the addressee.

☒ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 25, 2020, at Tarzana, California,

Roni Asseraf

24

**000063**

000064

1   TANIA K. CARDOSO, SBN 244473
2   HOLLENBECK & CARDOSO, LLP
    7755 Center Avenue, Suite 1100
    Huntington Beach, CA 92647
3   (562) 912-7712
4   (562) 912-7728 Facsimile
5
6
7   ATTORNEY FOR PLAINTIFF
8
9   SUPERIOR COURT OF CALIFORNIA
10  COUNTY OF LOS ANGELES, CHATSWORTH COURTHOUSE – NORTH VALLEY
    DISTRICT
11
12  NP PARC CHATEAUX, LLC,                      Case No.: 20CHUD00033
13                      Plaintiff,              EX PARTE APPLICATION TO
14  vs.                                         REINSTATE THE COURT'S RULING OF
                                                FEBRUARY 7, 2020; PROPOSED
15  MOSHE PERRY, DOES 1 through 10              ORDER
16  inclusive                                   Date:   February 26, 2020
                                                Time:   F44
17                      Defendant               Dept:   8:30 a.m.
18
19
20
21
22          To Defendant(s), MOSHE PERRY, and to his attorney of record, if any:
23          PLEASE TAKE NOTICE that on February 26, 2020, at 8:30 a.m., or as soon
24  thereafter as the matter may be heard in Department F44 of the above entitled court
25  located at 9425 PENFIELD AVENUE, CHATSWORTH, CA 91311, Plaintiff, NP PARC
26  CHATEAUX, LLC (hereinafter "Plaintiff"), by and through its counsel, HOLLENBECK &
27  CARDOSO, LLP, will and does hereby make application to this Court to reinstate the
28

EX PARTE APPLICATION FOR ORDER SHORTENING TIME

1   Court's ruling of February 7, 2020, immediately at the time this Application is made.

2        This Motion will be based on the attached Memorandum of Points and Authorities

3   and Declaration of Tania K. Cardoso, all pleadings, records and files in this action, and

4   on such other oral and documentary evidence as may be produced at the hearing

5   thereon.

6   Dated: February 24, 2020                    HOLLENBECK & CARDOSO, LLP

7

8

9                                              By: Tania K. Cardoso
10                                             Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    2

3

## STATEMENT OF FACTS

1

2    On or about August 9, 2018, Plaintiff and Defendant entered into a six month

3    lease agreement for the premises located at 24979 Constitution Avenue #225,

4    Stevenson Ranch, CA 91381.   Said agreement called for rent in the amount of

5    $1,556.00 to be paid on the first day of every month.  Rent was thereafter increased to

6    $1,740.00 effective September 1, 2019.  Defendant failed to tender the full rent for the

7    months of September, October, November, and December 2019 in the amount of

8    $368.00. Defendant was served with a Notice to Pay Rent or Quit on December 3, 2019.

9    Defendant failed to comply with said notice during the notice period by either paying the

10   rent or vacating.

11   Plaintiff filed an unlawful detainer action against Defendant on January 9, 2020

12   based upon the Notice to Pay Rent or Quit.  Defendant was personally served with said

13   unlawful detainer on January 10, 2020.  Defendant then filed a Demurrer with Motion to

14   Strike on January 16, 2020 and Cross-Complaint, which is inappropriate in the unlawful

15   detainer setting.   The Demurrer was overruled on January 31, 2020 at that hearing

16   Defendant's motion to compel discovery responses was set for for February 7, 2020.

17   Plaintiff further filed an ex parte motion to strike the cross complaint for the same day.

18   On February 7, 2020 Plaintiff appeared and argued before the court the motion to

19   strike and the motion to compel.  Defendant did not appear.  The Court made Plaintiff's

20   counsel aware of a filing called "Defendant's Warrant for Petition for Removal to Federal

21   Court," after argument the Court denied said Warrant for Petition.

22   On or about February 12, 2020 Plaintiff received in the mail notice of a federal

23   removal filed by Defendant on February 6, 2020.  The California Central U.S. District

24   Court remanded the case back to this Court on February 18, 2020. Defendant did not file

25   a notice of stay with the court, therefore not perfecting his stay.

26   However, Plaintiff has not proceeded with this case so as not to inadvertently

27   violate a federal stay.  Plaintiff has not received rent from the Defendant and possession

28   is still at issue in this case.  Plaintiff wishes to proceed with the Unlawful Detainer action.

<div align="center">

**POINTS AND AUTHORITIES**
**I.   THERE ARE STRICT TIME LIMITES SET FOR**
**UNLAWFUL DETAINER ACTIONS**

</div>

The California Legislature enacted the Unlawful Detainer Statues in order to provide an adequate, expeditious and summary procedure for redeeming possession of real property unlawfully withheld by a tenant. De La Vara v. Municipal Court of Los Angeles (1979) 98 CalApp. 3d 638.

For this reason, the time within which to respond to an unlawful detainer is five (5) days rather than the thirty (30) days of a general civil action (CCP §1167.3), the time to set a Motion to Quash Service of Summons is three (3) to seven (7) days after serving notice (CCP §1167.4), and a Motion for Summary Judgment may be heard upon five (5) days notice (CCP §1170.7).

Based on the legislative intent, and the summary nature of an Unlawful Detainer it is requested that Defendant's Cross-Complaint be stricken immediately so as not to interfere with the remaining litigation.

<div align="center">

**II. THE COURT MAY ORDER A SHORTER**
**TIME THAN PRESCRIBED BY CODE**

</div>

Although a hearing on a Motion for New Trial must be set a least 21 calendar days after giving a notice, plus the requisite days necessary for the method of giving notice, the court may prescribe a shorter time (CCP §1005, as amended July 1, 1999).

As discussed supra, the good cause necessary for shortening time for the hearing is found in the summary intent of the Unlawful Detainer Statutes (CCP §1005(b); CRC 325(b)).

<div align="center">

**III. THE COURT SHOULD REINSTATE THE FEBRUARY 7, 2020 COURT**
**ORDERS GRANTING THE MOTION TO STRIKE CROSS-**
**COMPLAINT AND DENYING MOTION TO COMPEL**

</div>

On February 7, 2020 Plaintiff appeared and argued both Plaintiff's Motion to Strike the Cross Complaint as well as Defendant's Motion to Compel.  During argument, the Court advised Plaintiff's counsel that Defendant had filed something

<div align="center">

4

</div>

1  called "Defendant's Warrant for Petition for Removal to Federal Court," after argument

2  the Court denied said Warrant for Petition.

3  The Court considered the argument, read the moving papers and ruled as follows:

4    • Defendant's Motion to Compel denied.

5    • Plaintiff's Motion to Strike Cross-Complaint granted.

6    • Defendant's Warrant for Petition for Removal to Federal Court denied.

7  On February 11, 2020 Plaintiff prepared a notice of ruling on the above, mailed

8  the notice of ruling and uploaded it.

9  On or about February 12, 2020 Plaintiff received in the mail notice of a federal

10  removal filed by Defendant on February 6, 2020.  Defendant did not file a notice of stay

11  with the court, therefore not perfecting his stay.  The California Central U.S. District

12  Court remanded the case back to this Court on February 18, 2020.

13  However, Plaintiff has not proceeded with this case so as not to inadvertently

14  violate a federal stay.

15  Neither Plaintiff nor the Court acted in any manner but good faith when arguing

16  and ruling on the February 7, 2020 matters before the court.  However in the interests of

17  justice, the Plaintiff now requests that the court reaffirm or reinstate the orders described

18  above in order for Plaintiff to further prosecute its case.

19  **CONCLUSION**

20  For the foregoing reasons it is respectfully requested that this Court reinstate its

21  February 7, 2020 orders.

22

23  Dated:  February 24, 2020        Respectfully submitted,

24                                  HOLLENBECK & CARDOSO, LLP

25

26

27                                  By: Tania K. Cardoso,
                                    Attorneys for Plaintiff

28

5

EX PARTE APPLICATION FOR ORDER SHORTENING TIME

## DECLARATION OF TANIA K. CARDOSO

I, Tania K. Cardoso, do hereby declare and state as follows:

1. That I am a partner with the law firm of Hollenbeck & Cardoso, LLP, attorneys for the Plaintiff in the above matter and am duly admitted to practice law in the Superior Court for the State of California. That the facts contained herein are within my personal knowledge, and if called upon to testify thereto I can competently do so.

2. There is good cause for granting the Motion on an Ex Parte basis because Possession is still at issue in this case.

3. On February 7, 2020 my partner, Linda Hollenbeck appeared before this court on Plaintiff's ex parte motion to strike Defendant's Cross Complaint and Defendant's Motion to Compel. Defendant did not appear at the hearing, however the Court heard argument and ruled accordingly. During that hearing, the Court notified Ms. Hollenbeck that Defendant filed a Warrant for Petition for Removal to Federal Court. It did not appear a notice of stay was filed but some sort of request for the court to remove the case to federal court *sua sponte*. The Court subsequently denied the warrant for petition for removal to federal court.

4. On February 11, 2020 I personally prepared the Notice of Ruling, mailed it to the Defendant and uploaded it with the court. A true and correct copy of the remand order is attached hereto as Exhibit A.

5. On or about February 12, 2020 I received in the mail notice of a federal removal filed by Defendant on February 6, 2020. Defendant did not file a notice of stay with the court, therefore not perfecting the stay.

6. The California Central U.S. District Court remanded the case back to this Court on February 18, 2020. A true and correct copy of the remand order is attached hereto as Exhibit B.

1

000070

7. However, Plaintiff has not proceeded with this case so as not to inadvertently violate a federal stay.

8. Neither Plaintiff nor the Court acted in any manner but good faith when arguing and ruling on the February 7, 2020 matters before the court. However in the interests of justice, the Plaintiff now requests that the court reaffirm or reinstate the orders described above in order for Plaintiff to further prosecute its case.

9. The Defendant is still in possession of the premises and my client is losing money every day. My client is seeking to regain possession of the premises. Therefore, there is good cause for this motion to be heard on an ex parte basis.

I declare under penalty of perjury under the law of the State of California that the foregoing is true and correct and that this declaration was executed on February 24, 2020 at Huntington Beach, California.

Tania K. Cardoso

2

DECLARATION OF TANIA K. CARDOSO

Linda T. Hollenbeck, SBN 145048
Tania K. Cardoso, SBN 244473
HOLLENBECK & CARDOSO, LLP
7755 Center Avenue, Ste. 1100
Huntington Beach, CA 92647
(562) 912-7712
(562) 912-7728 fax

Attorney for Plaintiff

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, CHATSWORTH COURTHOUSE – NORTH VALLEY

DISTRICT

|  |  |
|---|---|
| NP PARC CHATEAUX, LLC, | Case No.: 20CHUD00033 |
| Plaintiff, | NOTICE OF RULING |
| vs. | Date: February 7, 2020 |
| | Time: 8:30 AM |
| | Dept: F44 |
| MOSHE PERRY, and Does 1 to 10 inclusive, | |
| Defendant(s) | |

PLEASE TAKE NOTICE that Defendant's Motion to Compel and Plaintiff's Ex Parte

Application to Strike Defendant's Cross-Complaint was heard on February 7, 2020, at 8:30

AM, in Dept. F-44 of the CHATSWORTH COURTHOUSE before JUDGE TRICIA

TAYLOR.   The Court DENIED Defendant's Motion to Compel.   Further, the Court

GRANTED Plaintiff's Ex Parte Application to Strike Defendant's Cross-Complaint.   The

Court also DENIED Defendant's Warrant for Petition for Removal to Federal Court.

Dated: February 11, 2020

HOLLENBECK & CARDOSO, LLP
BY: TANIA K. CARDOSO, ESQ.
ATTORNEY FOR PLAINTIFF

1

NOTICE OF RULING

EXHIBIT A
0000PT11
Ex. 11

000072

## PROOF OF SERVICE

I, TANIA K. CARDOSO, declare

I am, and was at the time of service of the papers herein referred to, over the age of eighteen (18) years, and not a party to the within action. I am employed in the County of Orange, California, in which county the within mentioned mailing occurred. My business address is 7755 CENTER AVENUE, SUITE 1100 HUNTINGTON BEACH, CA 92647.

On February 11, 2020, I served the following documents(s):

**Notice of Ruling**

on the following parties:

Mil of ael (Moshe) Perry
23705 VanOwen Street #282
West Hills, CA 91307

**(BY PERSONAL DELIVERY)** I delivered in hand to the place where the property is situated. I declare under penalty of perjury that the foregoing is true and correct and if called as a witness could testify completely.

xx    **(BY MAIL)** I placed a true and correct copy of the documents(s) in a sealed envelope addressed as follows and I caused the envelope to be deposited in the mail at Huntington Beach, California. The envelope was mailed with postage thereon fully prepaid.

**(BY FACSIMILE)** I transmitted the documents by facsimile machine [from telephone number: (562) 912-7712, to each person listed in the above service list. The transmission(s) were reported as complete and without error. A copy of the transmission report is attached to this Proof of Service. This transmission report was properly issued by the transmitting facsimile machine.

**(BY OVERNIGHT MAIL)** I placed a true and correct copy of the documents(s) in a sealed envelope addressed as follows and I caused the envelope to be deposited with USPS at Huntington Beach, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 11, 2020, at Huntington Beach, California.

TANIA K. CARDOSO, ESQ.

1



**United States District Court**
Central District of California
**Office of the Clerk**

**Kiry K. Gray**
District Court Executive / Clerk of Court
350 West 1st Street, Suite 4311
Los Angeles, CA 90012

**Cristina M. Squieri Bullock**
Chief Deputy of Administration
350 West 1st Street, Suite 4311
Los Angeles, CA 90012

**Sara Tse Soo Hoo**
Chief Deputy of Operations
255 East Temple Street, Suite TS-134
Los Angeles, CA 90012

February 19, 2020

Los Angeles County Superior Court – Chatsworth Courthouse
9425 Penfield Ave
Chatsworth, CA 91311

Re:   Case Number:   2-20-cv-01207-DSF-SK
Previously Superior Court Case No.   20CHUD00033
Case Name:   NP Parc Chateaux, LLC v. Moshe Berry et al

Dear Sir/Madam:

Pursuant to this Court's ORDER OF REMAND issued on ___2/18/2020___, the above-referenced case is hereby remanded to your jurisdiction.

Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to the location shown below. Thank you for your cooperation.

United States Courthouse
255 East Temple Street, Suite TS-134
Los Angeles, CA 90012

Respectfully,

Clerk, U.S. District Court

By: /s/ Jenny Lam
Deputy Clerk
(Jenny_Lam@cacd.uscourts.gov)

Encls.
cc: Counsel of record

Receipt is acknowledged of the documents described above.

Clerk, Superior Court

By: _____
Deputy Clerk

_____
Date

# EXHIBIT B

CV-103 (05/18)   LETTER OF TRANSMITTAL – REMAND TO SUPERIOR COURT (CIVIL)

**000073**

000074

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| NP Parc Chateaux, LLC | CASE NUMBER |
| --- | --- |
| PLAINTIFF(S) | 2:20-cv-01207-DSF (SKx) |
| v. | |
| Moshe Perry et al. | ORDER RE REQUEST TO PROCEED |
| DEFENDANT(S) | IN FORMA PAUPERIS |

IT IS ORDERED that the Request to Proceed *In Forma Pauperis* is hereby GRANTED.

Date _____   United States Magistrate Judge _____

IT IS RECOMMENDED that the Request to Proceed *In Forma Pauperis* be DENIED for the following reason(s):

☐ Inadequate showing of indigency
☐ Legally and/or factually patently frivolous
☒ District Court lacks jurisdiction        ☐ Immunity as to
☐ Other:

Comments:

Date February 12, 2020   Steve Kim, United States Magistrate Judge _____

IT IS ORDERED that the Request to Proceed *In Forma Pauperis* is hereby:

☐ GRANTED
☒ DENIED (see comments above). IT IS FURTHER ORDERED that:
  ☐ Plaintiff SHALL PAY THE FILING FEES IN FULL within 30 days or this case will be dismissed.
  ☐ This case is hereby DISMISSED immediately.
  ☐ This case is hereby REMANDED to state court.

Date February 18, 2020   United States District Judge _____

CV-73 (08/16)                    ORDER RE REQUEST TO PROCEED IN FORMA PAUPERIS

Linda T. Hollenbeck, Bar #145048
Tania K. Cardoso, Bar #244473
Hollenbeck & Cardoso, LLP
7755 Center Avenue, Suite 1100
Huntington Beach, CA 92647
Telephone: (562) 912-7712
Facsimile: (562) 912-7728

Attorney for Plaintiff

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES – CHATSWORTH COURTHOUSE – NORTH VALLEY DISTRICT

| | |
|---|---|
| NP PARC CHATEAUX, LLC | Case No.: 20CHUD00033 |
| Plaintiff, | **DECLARATION OF TELEPHONIC NOTICE** |
| vs. | |
| MOSHE PERRY, and DOES 1 to 10 inclusive, | Date: February 26, 2020 |
| | Time: 8:30 AM |
| Defendant. | Dept: F-44 |

I, Tania K. Cardoso, declare:

1. I am over the age of 18 and not a party to this case. I am employed by the attorney of record for the Plaintiff in this action. I have personal knowledge of the statements made herein. If called upon to testify, I would and could competently testify to the facts stated herein.

2. On February 25, 2020 at 7:56 AM I called Defendant Moshe Perry called me at (747) 224-9515, the same number he has called me from several times. Mr. Perry answered the phone.

3. I informed the Defendant that we would be appearing ex parte on Wednesday, February 26, 2020 at 8:30 A.M. in Department F-44 of the Chatsworth Courthouse on my Ex Parte Motion to Reinstate the February 7, 2020

1

DECLARATION OF TELEPHONIC NOTICE

000075

000076

rulings immediately at the time of the ex parte motion on Wednesday. I stated
that the courthouse was located at 9425 Penfield Avenue, Chatsworth CA 91311
and that the motion would be heard in Department F-44.

4.     Mr. Perry explained to me that he had filed a new writ. I asked him if there
was a stay based on the writ, he could not provide me any proof that a stay is in
place. He merely stated that the writ meant there was a stay. I disagreed with
him. He advised me that I was stupid because I had gone in to the court on
February 7, 2020 even though the case had been removed. I told him that he did
not advise my office or the court and that he had not filed a notice of stay with the
court so the judge did not have notice of the stay. He confirmed that he would be
in court to oppose my motion. I left him my phone number of 562-912-7712 but he
said he did not need it.

I declare that the foregoing is true and correct under penalty of perjury under the
laws of the State of California and that this declaration was executed on Tuesday,
February 25, 2020 at Huntington Beach, California.

Tania K. Cardoso

DECLARATION OF TELEPHONIC NOTICE

2

1  TANIA K. CARDOSO, SBN 244473
   HOLLENBECK & CARDOSO, LLP
2  7755 Center Avenue, Suite 1100
   Huntington Beach, CA 92647
3  (562) 912-7712
   (562) 912-7728 Facsimile
4
   ATTORNEY FOR PLAINTIFF
5

6

7

8                    SUPERIOR COURT OF CALIFORNIA

9      COUNTY OF LOS ANGELES, CHATSWORTH COURTHOUSE – NORTH VALLEY
                                DISTRICT
10

11

12  NP PARC CHATEAUX, LLC,              )  Case No.: 20CHUD00033
                                        )
13              Plaintiff,              )  PROPOSED ORDER ON EX PARTE
                                        )  MOTION
14       vs.                            )
                                        )  Date:   JANUARY 30, 2020
15  MOSHE PERRY, DOES 1 through 10      )  Time:  8:30AM
                                        )  Dept:  F-44
16  inclusive                          )
                                        )
17              Defendant               )
                                        )
18  _____

19       Application having been made by Plaintiff, NP PARC CHATEAUX, LLC, with proof

20  having been made to the satisfaction of the Court, and GOOD CAUSE APPEARING

21  THEREFORE,

22  IT IS HEREBY ORDERED that:

23       The February 7, 2020 rulings made by this court are reinstated and reaffirmed.

24

25  Dated: _____

26                                      _____
                                        Judge/Commissioner of the Superior Court
27

28
                                        1

000077

# Electronic Service Notification

Guest User

You have received this notification at the request of the submitting attorney or party as a means to electronically serve you a copy of the documents described below, and associated with **20CHUD00033 - NP PARC CHATEAUX, LLC vs MOSHE PERRY** in the *North Valley District Chatsworth Courthouse Department F44* .

**Like this e-service feature. Click here to try Attorney Service of San Dimas to e-file and e-serve your documents too!**

Served Documents

The following documents have been electronically served. Click the document name / title, or the print icon on the right to open then print or download.

| Document Name / Title | Status | Actions |
|---|---|---|
| Ex Parte Application TO REINSTATE THE COURTS RULING OF FEBRUARY 7, 2020 (https://efile.asosdinc.com/ca/GuestFileDownload/CCF_002298.pdf?idType=service&id=E8R7LNH-EFUXYC4&a=6158375) | Served - 02/25/2020 10:15 AM PST (Opened) | (https://efile.asosdinc.c idType=service&id=E8I |
| Order RE: EX PARTE (https://efile.asosdinc.com/ca/GuestFileDownload/CCF_002299.pdf?idType=service&id=E8R7LNH-EFUXYC4&a=6158379) | Served - 02/25/2020 10:26 AM PST (Opened) | (https://efile.asosdinc.c idType=service&id=E8I |
| Request for Entry of Default / Judgment (https://efile.asosdinc.com/ca/GuestFileDownload/CCF_002300.pdf?idType=service&id=E8R7LNH-EFUXYC4&a=6158380) | Served - 02/25/2020 10:11 AM PST (Opened) | (https://efile.asosdinc.c idType=service&id=E8I |

000078

2/25/2020                    h... ...efile.asosdinc.com/ca/#guest_ViewEnhancedServic.    3R7LNH-EFUXYC4

📄 Proof of Personal Service
(https://efile.asosdinc.com/ca/GuestFileDownload/CCF_002301.pdf?
idType=service&id=E8R7LNH-EFUXYC4&a=6158381)

| Served - 02/25/2020 10:11 AM PST (Opened) | 🖨 (https://efile.asosdinc.c idType=service&id=E8f |



**Electronic Service Status Report**

Electronic service notifications have been sent to the following service contacts. The status column will indicate whether or not the contact has opened the document.

| Service Contact | Document | Status |
| --- | --- | --- |
| Tania Cardoso (t...@hollenbecklaw.com) | Ex Parte Application TO REINSTATE THE COURTS RULING OF FEBRUARY 7, 2020 Order RE: EX PARTE Request for Entry of Default / Judgment Proof of Personal Service | Served - 02/25/2020 10:10 AM PST (Not Opened) Served - 02/25/2020 10:10 AM PST (Not Opened) Served - 02/25/2020 10:10 AM PST (Not Opened) Served - 02/25/2020 10:10 AM PST (Not Opened) |

**Status Key:**

**Served** - Email was sent to service contact, and service contact clicked Accept Service button to view this page.
**Served (Opened)** - Service contact opened document to view or print.
**Served (Not Opened)** - Service contact has NOT opened the document to print or view.

Ex. 1-5

080000

1  Linda T. Hollenbeck, SBN 145048
2  Tania K. Cardoso, SBN 244473
   HOLLENBECK & CARDOSO LLP
3  7755 Center Avenue, Ste. 1100
   Huntington Beach, CA 92647
4  (562) 912-7712
   (562) 912-7728 fax
5  Attorney for Plaintiff

6

7                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                    COUNTY OF LOS ANGELES, CHATSWORTH COURTHOUSE – NORTH VALLEY

9                                      DISTRICT

10

11 NP PARC CHATEAUX, LLC,                )  Case No: 20CHUD00033
                                         )
12                      Plaintiff,       )  NOTICE OF RULING
                                         )
13      vs.                              )  Date: February 7, 2020
                                         )  Time: 8:30 AM
14 MOSHE PERRY, and Does 1 to 10 inclusive, )  Dept: F44
                                         )
15                                       )
                                         )
16                      Defendant(s)     )

17      PLEASE TAKE NOTICE that Defendant's Motion to Compel and Plaintiff's Ex Parte

18 Application to Strike Defendant's Cross-Complaint was heard on February 7, 2020, at 8:30

19 AM, in Dept. F-44 of the CHATSWORTH COURTHOUSE before JUDGE TRICIA

20

21 TAYLOR.   The Court DENIED Defendant's Motion to Compel.   Further, the Court

22 GRANTED Plaintiff's Ex Parte Application to Strike Defendant's Cross-Complaint.   The

23 Court also DENIED Defendant's Warrant for Petition for Removal to Federal Court.

24

25

26 Dated: February 11, 2020

27                                       HOLLENBECK & CARDOSO, LLP
                                         BY: TANIA K. CARDOSO, ESQ.
28                                       ATTORNEY FOR PLAINTIFF

                              NOTICE OF RULING

**PROOF OF SERVICE**

I, TANIA K. CARDOSO, declare

I am, and was at the time of service of the papers herein referred to, over the age of eighteen (18) years, and not a party to the within action. I am employed in the County of Orange, California, in which county the within mentioned mailing occurred. My business address is 7755 CENTER AVENUE, SUITE 1100 HUNTINGTON BEACH, CA 92647.

On February 11, 2020, I served the following document(s):

**Notice of Ruling**

on the following parties:

| |
|---|
| Michael (Moshe) Perry |
| 23705 VanOwen Street #262 |
| West Hills , CA 91307 |

**(BY PERSONAL DELIVERY)** I delivered in hand to the place where the property is situated. I declare under penalty of perjury that the foregoing is true and correct and if called as a witness could testify completely.

**XX**    **(BY MAIL)** I placed a true and correct copy of the document(s) in a sealed envelope addressed as follows and I caused the envelope to be deposited in the mail at Huntington Beach, California. The envelope was mailed with postage thereon fully prepaid.

**(BY FACSIMILE)** I transmitted the documents by facsimile machine [from telephone number: (562)912-7712, to each person listed in the above service list. The transmission(s) were reported as complete and without error. A copy of the transmission report is attached to this Proof of Service. This transmission report was properly issued by the transmitting facsimile machine.

**(BY OVERNIGHT MAIL)** I placed a true and correct copy of the document(s) in a sealed envelope addressed as follows and I caused the envelope to be deposited with USPS at Huntington Beach, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 11, 2020, at Huntington Beach, California.

TANIA K. CARDOSO, ESQ.

1

**000081**  Ex. **2**

MICHAEL (MOSHE) PERRY
23705 VANOWEN ST. # 262
WEST HILLS, CA, 91307
(747) 224-9515

RECEIVED
Superior Court of California
County of Los Angeles

COPY

FILED
FEB 06 2020

Sherri R. Carter, Executive Officer/Clerk

FILED
2020 FEB -6  PM 12: 22

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

District Court Case No.:   CV 20 - 01207 -DSF-SS

State Case No.:  20CHUD00033

Before State Judge: Tricia Taylor/Michael Mink

NP PARC CHATEAUX, LLC., A SUBSIDIARY
OF ALLIANCE RESIDENTIAL &
COMMERCIAL, INC., (ALLRESCO)

Plaintiff/Cross-Defendant,

vs.

MICHAEL (MOSHE) PERRY

Defendant/Cross- Complainant,

MEMORANDUM OF LAW REGARDING
RETENTION OF JURISDICTION AFTER
REMOVAL PURSUANT TO NOTICE UNDER
28 U.S.C. §§ 1443 and 1446(e)

1.     COMES NOW THE PETITIONER, Michael (Moshe) Perry, and in direct support of his memorandum supporting retention of jurisdiction in this cause, alleges, states, and provides the following:

2.     Under 28 U.S.C. Sec. 1443[1] may allow removal to seek relief available only for deprivation of a right guaranteed under federal law providing for specific civil rights stated in terms of racial equality. Further, a litigant must show that he has been "denied or that he cannot enforce" the specific right in state court. Johnson v. Mississippi. 421 U.S. 213, 95 S.Ct. 1591, 44 L.Ed.2d 121 (1975).

3.     In the present case, Mr. Perry paid all his rent on his tenancy with Parc Chateaux LLC., who filed a frivolous unlawful detainer against Mr. Perry, and he filed a demurrer under California Code, Code of Civil Procedure - CCP § 418.10(e), but which did not generally appear, and who filed a writ of mandate:

---

[1]     28 U.S.C. §1443: "Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending: (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof; (2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."  (June 25, 1948, ch. 646; 62 Stat. 938.)

1

000083

RECEIVED
Superior Court of California
County of Los Angeles

FILED

FEB 06 2020

COPY

Sherri R. Carter, Executive Officer/Clerk

2020 FEB -6  PM 12: 22

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

1  MICHAEL (MOSHE) A. PERRY
2  23705 VANOWEN ST. # 262
   WEST HILLS, CA. 91307
3  (747) 224-9515

4       IN THE UNITED STATES DISTRICT COURT
5         FOR THE CENTRAL DISTRICT OF CALIFORNIA

6                                          District Court Case No.:  CV 20 - 01207-DSF-SK

7  NP PARC CHATEAUX, LLC., A SUBSIDIARY      State Case No.: 20CHUD00033
   OF ALLIANCE RESIDENTIAL &                 Before State Judge: Tricia Taylor/Michael Mink
8  COMMERCIAL, INC., (ALLRESCO)

9           Plaintiff/Cross-Defendant,       NOTICE OF PETITION AND VERIFIED
                                             PETITION OF WARRANT FOR REMOVAL TO
10  Vs.                                      THE UNITED STATES DISTRICT COURT
                                             UNDER 42 U.S.C. § 1437 et seq.;28 U.S.C. §
11  MOSHE PERRY                              1446(B)(3); AND 42 U.S.C. § 1981 ENFORCED
                                             AGAINST STATE ACTORS BY MEANS OF
12         Defendant/Cross- Complainant,     §1983; 28 U.S.C. § 1343;  FOR A STAY OF STATE
                                             COURT PROCEEDINGS; FOR
13                                           DECLARATORY; EQUITABLE AND
14                                           MONETARY RELIEF, AND ANY OTHER
                                             AVAILABLE RELIEF; PRELIMINARY
15                                           INJUNCTION ENJOINING THE STATE'S
16                                           COURTS DEEP SEATED HOSTILITY
                                             PREJUDICE AND DISCRIMINATION AGAINST
17                                           MR. PERRY, EVEN AS A DEFENDANT IS
18                                           ROOTED IN HIM BEEN DESIGNATED BY
19                                           STATE LAW VLS UNDER (CCP. §§ 391 et. seq.):
20                                           1) The Spending Clause to condition the receipt
                                                of federal Grant funds (HUD) to California
21                                              Bond Programs Given to Bond Recipient
22                                              Parc Chateaux LLC., as a waiver of
                                                Immunity. Ibid.; at 678-679 n.2[1];
23

24

25  _____
    [1]    See Premo v. Martin. 119 F.3d 764, 770-771 (9th Cir. 1997) (State participation in Randolph-Sheppard
26  Vending Stand Act constitutes a waiver of Eleventh Amendment Immunity), cert. denied, 522 U.S. 1147 (1998);
    Alden v. Maine, 527 U.S. 706, 755 (1999), the Court cited South Dakota v. Dole, 483 U.S. 203 (1987), a case
27  involving Congress's Spending Clause authority, noted that "the Federal Government [does not] lack the authority or
    means to seek the States' voluntary consent to private suits." of Petty v. Tennessee-Missouri Bridge Commission,
28  359 U.S. 275 (1959).

                                          1

                                                              000084        1-2